UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11009-RGS

LYNNEL COX, as the administrator of the estate of Shayne R. Stilphen

v.

BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, and JOHN/JANE DOES NOS. 1-2

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTIONS TO DISMISS

December 7, 2022

STEARNS, D.J.

Lynnel Cox brings this action against the Boston Police Department (BPD), and BPD officers Ismael Almeida, Paulmichael Bertocchi, Catia Freire, and John/Jane Does 1-2. Cox seeks damages for the wrongful death of her son, Shayne Stilphen, who died of an opioid overdose while in BPD custody.

The Complaint sets out three counts: (1) against all defendants, for depriving Stilphen of his Fourteenth Amendment right to due process in violation of the Federal Civil Rights Act, 42 U.S.C. § 1983; (2) against BPD, for a violation of Title II of the Americans with Disabilities Act, 42 U.S.C.

§ 12132; and (3) against the individual BPD officers, for wrongful death, Mass. Gen. Laws ch. 229, § 2.

Stilphen's booking officers, Bertocchi and Freire, move to dismiss Counts I and III of the Complaint. For the following reasons, the motion will be denied.

## BACKGROUND

Accepting all well-pleaded facts as true, the relevant facts are as follows. On July 14, 2019, Stilphen was arrested by BPD officers after it was determined that he matched the description of an individual who had allegedly broken into a car. He was arrested in an area of Boston known as "Mass and Cass," notorious for open-air opioid use and other criminal activity. Bertocchi and Freire were both present during Stilphen's arrest. A third officer at the scene had previously interacted with Stilphen and knew of his history of opioid use. While being arrested, Stilphen told this officer that he had taken opioids thirty minutes earlier and had been recently discharged from a detoxification treatment center. Bertocchi also observed that Stilphen "'appeared to have 'tendencies' of someone who used drugs." Compl. (Dkt # 1) ¶ 47.

Freire and another officer placed Stilphen in a group holding cell prior to his booking. In the cell, Stilphen spoke with Bertocchi while

2

swaying side-to-side. Later, Bertocchi walked into the holding cell and found Stilphen slumped in a contorted position.

Bertocchi and Freire assisted Almeida with Stilphen's booking. During this twenty-three-minute process, Bertocchi and Freire had to steady Stilphen multiple times by placing their hands on his back or holding his arm. Bertocchi also physically moved Stilphen's hand to assist him with fingerprinting and tapped him to keep him awake. Bertocchi and Freire also watched as Stilphen struggled to stand upright while the booking photos were taken.

After the booking process, Bertocchi and Freire placed Stilphen in a single-person cell. He slumped over into a contorted position almost immediately after he entered the cell. Ten minutes later, at 2:33 a.m., he began taking drugs from a baggie hidden in his shorts. He continued to do so over the next two hours, fading in and out of consciousness. Stilphen ingested drugs for the last time at 4:42 a.m., after which he slumped forward over his crossed legs. He remained in this position until 5:39 a.m. Multiple officers walked past his cell during this time without intervening.

At 5:51 a.m., an officer who was new to the cellblock walked past Stilphen's cell and observed that he was "in a position that looked as if it would be of extreme discomfort for most individuals." Compl. ¶ 82. Upon

3

entering the cell, he observed that Stilphen was limp, pale, and unresponsive. The attending officers then administered CPR and Narcan. Boston Emergency Medical Service arrived shortly thereafter. Stilphen died en route or soon after he arrived at Tufts Medical Center. The medical examiner concluded that Stilphen's cause of death was an accidental opioid overdose.

Stilphen's death on June 14, 2019, followed a fatal suspected overdose of another individual in BPD custody at the same police station on May 27, 2019.

## DISCUSSION

Bertocchi and Freire move to dismiss Counts I and III of Cox's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The court will dismiss a complaint if, after accepting all well-pleaded facts as true and after drawing all reasonable inferences in favor of the plaintiff, it determines that the complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss, a plaintiff must plead "more than labels and conclusions," and the factual allegations must be sufficient to "raise a right [to] relief above the speculative level." *Morales-Tañon v. P.R. Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008) (internal quotation marks omitted). At the pleading stage, there is no probability requirement,

only a requirement for "enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### A. Fourteenth Amendment Deliberate Indifference Claim Under § 1983 (Count I)

Count I alleges that Bertocchi and Freire violated Stilphen's due process rights by failing to provide adequate medical care while Stilphen was in their custody, amounting to deliberate indifference to his medical needs. Bertocchi and Freire argue that Cox's claim fails because she has not adequately alleged that they were subjectively aware of a serious medical risk, only that their conduct failed an objective standard of reasonableness. While the First Circuit has not addressed whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), should extend to non-excessive force Fourteenth Amendment claims, under existing precedent in *Zingg v. Groblewski*, 907 F.3d 630, 634-635 (1st Cir. 2018), both objective and subjective components are required in Eighth Amendment deliberate indifference cases.[1] Under both standards, the court finds that Cox's allegations are enough to survive a motion to dismiss.

---

[1] A circuit split exists between appellate courts that have extended *Kingsley* to Fourteenth Amendment inadequate medical care claims and those which cabin *Kingsley*'s application to Fourteenth Amendment excessive force claims. *Compare Brawner v. Scott Cnty.*, 14 F.4th 585, 593 (6th Cir. 2021), *Bruno v. City of Schenectady*, 727 F. App'x 717, 720-721 (2d

Cox alleges that Stilphen showed clear signs of opioid overdose during the booking and that Bertocchi and Freire were objectively unreasonable in failing to seek urgent medical care. Compl. ¶¶ 59-64. Under the lenient standard governing a motion to dismiss, the Complaint sufficiently describes and provides examples from surveillance video footage of Stilphen's plight to stand upright – notably his inability to stay awake.[2] This was more than sufficient to alert the officers, whether by a subjective or objective standard, to his urgent need for medical attention. Stilphen's demeanor, the Complaint alleges, was an obvious sign that he was at risk of dying from an opioid overdose. *Id.* ¶¶ 5, 59.

---

Cir. 2018), *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018), *and Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018), *with Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018), *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 & n.4 (5th Cir. 2017), *and Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017). While the reasoning in *Kingsley* rests on the difference between the rights of pretrial detainees and convicted prisoners, 576 U.S. at 400-402, the First Circuit has not addressed the issue and this court will follow *Zingg*.

[2] *See* 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (1990) (noting that court will consider "items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" at the motion to dismiss stage). The parties do not dispute the authenticity of the surveillance video footage from Stilphen's booking process.

Cox further points out that Bertocchi and Freire were assigned to Boston's District 4, which includes the "Mass and Cass" location with its high concentration of opioid use. *Id.* ¶¶ 3-4. Bertocchi and Freire were present when Stilphen was arrested, *id.* ¶ 45, and as alleged in the Complaint, Bertocchi stated that he "believed that Shayne 'appeared' to have 'tendencies' of someone who used drugs." *Id.* ¶ 47. These facts plausibly establish both subjective and objective reasons for the officers to understand that Stilphen faced substantial risk of serious harm unless provided immediate medical care.[3]

### B.  Wrongful Death Claim (Count III)

Bertocchi and Freire also argue that Cox's wrongful death claim should be dismissed because she has not established proximate cause. Even if proximate cause is an element of the tort, that is another factual question that cannot be resolved at this stage. *See Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 102 (1st Cir. 2017), quoting *Jupin v.*

---

[3] Bertocchi and Freire also argue that because they were not aware of the "most pivotal events" leading to Stilphen's death – his intake of additional drugs in his cell after the booking process – Count I must be dismissed against them. But Cox argues that Stilphen clearly required medical care as early as the booking process. To the extent that Bertocchi and Freire argue that Stilphen ingesting drugs in his cell was the actual cause of his overdose, that is a factual question that cannot be resolved at this stage of the litigation.

*Kask*, 447 Mass. 141, 146 (2006) ("Causation, by contrast, generally presents a question of fact within 'the special province of the jury.'").

## ORDER

For the foregoing reasons, the defendants' motion to dismiss is <u>DENIED</u>.

        SO ORDERED.

        /s/ Richard G. Stearns_____
        UNITED STATES DISTRICT JUDGE