# Exhibit C



**Boston Police**
DEPARTMENT                                     1 Schroeder Plaza, Boston, MA 02120-2014

**To:** Deputy Superintendent Courtney Matthews
Assistant Chief, Bureau of Professional Standards

**From:** Sergeant Detective Lucas E. Taxter
Internal Investigations Unit

**Date:** November 7, 2019

**Subject:** SA2019-014

**Victim:** Shayne R. Stilphen (Deceased)
141 Village Road
East Bridgewater, MA 02333

**Violation:** Rule 318 § 3 – Prisoners; Sickness or Injury
Rule 318 § 13 – Prisoner Inspection

## Summary of Incident

On Sunday, July 14, 2019, Shayne Stilphen ingested a controlled substance while in custody at District 4 and was later found unresponsive in cell 19. Officers and Emergency Medical Technicians performed life-saving measures and resuscitated Stilphen, however he was pronounced deceased after his arrival at Tufts Medical Center.

## Investigation

On Sunday, July 14, 2019, at 6:09 am, this investigator was notified by the Operations Division that *"full notifications"* had been made concerning a prisoner at District 4 who apparently overdosed while in custody. (Attachment 1) After notifying Lieutenant Detective Williams, I responded to District 4 and met with Homicide and Crime Scene investigators. I learned that several officers had administered nasal Naloxone to Shayne Stilphen and performed CPR until the arrival of Boston EMS personnel who applied an automatic defibrillator. These life-saving efforts resuscitated Stilphen and he was transported to Tufts Medical Center (TMC). At 6:48 am, I was notified that Stilphen was pronounced deceased at TMC.

I examined cell 19 and observed several items strewn about, including Naloxone applicators, plastic wrappers, and food wrappers. I stood by while CSRU officers photographed the cellblock. Sergeant Detective Garrett Mitchell and Detective Jessica Wagner then brought a prisoner from the cell across from cell 19 upstairs to be interviewed. At that time, I spoke with Lieutenant James Foley and requested Form 26 Administrative Reports from all involved officers.

A review of cell 19 video evidence revealed that Stilphen was placed into the cell at 2:21 am. At 4:40 am, while seated on the bench with his legs crossed in front of him, Stilphen tore off a piece of paper from a sandwich wrapper and proceeded to manipulate it with his hands into a straw. At 4:43 am, Officer David Marshall walked by the cell and Stilphen simultaneously reached his right hand behind himself. Marshall did not look into cell 19 at that time. A few seconds later, Marshall looked into cell 19 as he walked by again. Stilphen still had his right hand behind his waist and likely inside his pants, although the angle of the camera inhibited a clear view of Stilphen's right hand. Stilphen appeared to nod-off again for about 3 minutes until 4:46 am at which point he removed his right hand from his pants and appeared to remove a plastic bag from his buttocks. (Attachment 13) Stilphen manipulated the bag and leaned forward at 4:48 am. His legs were still crossed in front of him. Although out of sight, this is likely when Stilphen ingested the drugs. He remained in this seated position, hinged forward at the waste with his legs crossed before him, for approximately one hour until 5:52 am. During that time, Almeida walked past the cell 5 times: 4:56 am, 5:06 am, 5:21 am, 5:35 am, and 5:37 am. A review of the video evidence from cell 19 showed that Stilphen showed signs of possible agonal breathing at 5:06:30 am. Stilphen showed no further signs of breathing or movement after that.

At 5:39 am, Marshall placed a sandwich and a carton of milk in the meal slot of cell 19 and appeared to look into the cell. At 5:51 am, Officer Sean Doolan looked into the cell and observed Stilphen. Doolan wrote in his Form 26 that Stilphen was *"... resting in a position that looked as if it would be of extreme discomfort for most individuals."* Doolan kicked the cell door five times in an attempt to get a reaction from Stilphen. When Stilphen did not react, Doolan kicked the door five more times and summoned Almeida. Almeida and Doolan entered the cell at 5:52 am. Almeida attempted to evoke a response from Stilphen by lifting his right shoulder, however Stilphen's body slumped to the left. Almeida motioned for Doolan to go get help. Almeida then picked up the makeshift straw from the bench directly in front of Stilphen and examined it. Realizing Stilphen had likely overdosed, Almeida moved Stilphen into a rescue position and began chest compressions.

At 5:53 am, Doolan and Bertocchi entered the cell and assisted Almeida. Doolan administered a dose of Naloxone while Almeida continued chest compressions. Sergeant Michael Aziz and Lieutenant James Foley entered the cell at this time. Bertocchi relieved Almeida and continued chest compressions at that time. At 5:54 am, Officer Michael Pankievich entered the cell with a bag valve mask and handed it to Doolan who in turn used it to administer rescue breaths to Stilphen while Bertocchi continued chest compressions. At 5:55 am, Bertocchi administered a second dose of Naloxone and CPR continued. At 5:57 am, Bertocchi administered a third dose of Naloxone and CPR continued. At 5:57:30, Doolan administered a fourth dose of Naloxone and CPR continued. At 5:57:45, three Boston EMS EMT's arrived at cell 19, relieved Doolan and Bertocchi, and continued to administer first aid to Stilphen. At 5:59 am, EMT's applied an automatic defibrillator to Stilphen. At 6:01 am, two Boston EMS paramedics arrived at cell 19. Stilphen was transferred to a gurney and into the booking area. Aziz and Doolan secured cell 19 with crime scene tape. EMT's and paramedics were able to resuscitate Stilphen and transport him to the hospital where he was later pronounced deceased.

**Applicable Rules**
(Attachments 14 and 15)

Rule 318 § 3 – Prisoners; Sickness or Injury

Rule 318 § 3 states in part, *"Any unusual appearance or behavior displayed by a prisoner shall receive immediate attention."* Officer Almeida noted on Stilphen's disposition form that there were no visible injuries. Almeida also wrote in his Form 26 that Stilphen did not request medical attention at any time during or after the booking process.

Although uninjured and cooperative, video evidence showed that Stilphen was unable to stand up straight at times during the booking procedure. At one point, Bertocchi had to physically assist Stilphen keep his balance and stand up straight. Additional video evidence from the holding cell and from cell 19 showed Stilphen nod-off at least three times, twice while in the holding cell and once while in cell 19. When he nodded-off, Stilphen folded over at the waist with his head either between his legs or on his lap.

All video evidence would have been visible on monitors located in the Duty Supervisor's office and in the booking officer's work area. It was apparent that Stilphen was likely under the influence of drugs when he arrived at District 4, at the time of his booking, and after being placed in cell 19. For these reasons, medical attention should have been provided to Stilphen before he was placed in cell 19, or at the very latest, immediately after he ingested the drugs and remained in that unusual and seemingly uncomfortable position.

Rule 318 § 4 – Booking Procedures

Rule 318 § 4 states in part, *"The Duty Supervisor will also designate a Boston Police Officer to conduct a search of the person and be responsible for the removal of all personal property from the prisoner."* The officers involved in the search of Stilphen conducted their searches in accordance with this rule. They removed from Stilphen all of his property, including his belt and shoestrings which could have been used for suicidal purposes. The Booking Form indicated that a suicide query (Q5) was also completed. The only item which was not discovered was the bag of drugs, however it would not be possible for the officers to discover the drugs under Rule 318D § 4 (see below).

Rule 318 § 13 – Prisoner Inspection

Rule 318 § 13 states in part, *"The Duty Supervisor... shall visit, or cause to be visited, all persons in their custody at least once every fifteen minutes, and shall ensure that each visit is recorded in the Prisoner Inspection Record (MGL c. 40 § 36B)."* A review of the Prisoner Inspection Record and the Prisoner Alarm Replay Report showed that this rule was adhered to. However, a review of the video evidence showed that although Almeida and Marshall conducted rounds of the cellblock and disabled the prisoner inspection alarm, they did not take any measures to check on Stilphen and ensure that he

was not in any distress, even though he was seated in a very unusual position for one hour and four minutes.

### Rule 318 § 14 – Suicides and Attempted Suicides

Although this was not a suicide, this rule applies inasmuch as it states in part that, *"...whenever a person in police custody commits suicide, dies, or inflicts self-injury at a lockup facility which subsequently results in his/her death..."* the incident shall be documented in an *"...Incident Report, BPD Form 1.1. and a Special Report (BPD Form 26)"*. This rule was adhered to with the submission of Incident Report I-192054058 and several Form 26's submitted by involved officers.

### Rule 318D § 4 – Strip Search and/or Visual Body Cavity Search

Rule 318D § 4 states in part, *"Strip searches and/or visual body cavity searches MAY NOT be conduced as a routine part of the booking procedure. A strip search and/or a visual body cavity search may ONLY be conducted if the DUTY SUPERVISOR finds that the suspect is in custody, and the officer has PROBABLE CAUSE to believe that the suspect has a weapon, contraband, or the fruits or instrumentalities of the crime that he could not reasonably expect to discover without forcing the suspect to discard all of his/her clothing."* This rule was adhered to. Under the circumstances, the arresting officers did not have probable cause to believe that Stilphen had drugs secreted on or in his body.

**Conclusion**

After a careful review and due consideration of all the facts and evidence, this investigation has proven by a preponderance of the evidence that a violation of Rule 318 § 3 – Prisoners; Sickness or Injury, occurred. The rule states in part that *"Any unusual appearance or behavior displayed by a prisoner shall receive immediate attention."* Based on Stilphen's difficulty standing up straight during the booking process, as well as his nodding-off on three separate occasions, EMS should have been summoned for a medical evaluation.

After a careful review and due consideration of all the facts and evidence, this investigation has also proven by a preponderance of the evidence that a violation of Rule 318 § 13 – Prisoner Inspection, occurred. A careful review of the evidence showed that although Almeida and Marshall conducted rounds of the cellblock, disabled the prisoner inspection alarm, and recorded their inspections in the Prisoner Inspection Log, they did not take any measures to check on Stilphen's wellbeing and ensure that he was not in any distress, even though he was seated in a very unusual position for one hour and four minutes.

This investigation has also proved for a certainty that all other Boston Police Department Rules and Procedures, in particular 318 § 4 – Booking Procedures, Rule 318 § 14 – Suicides and Attempted Suicides, and Rule 318D § 4 – Strip Search and/or Visual Body Cavity Search, were followed and adhered to.

Respectfully Submitted,

*[signature]*
Sergeant Detective Lucas E. Taxter
Internal Investigations Unit

Approved,

*[signature]*
Lieutenant Michael Connolly
Internal Investigation Unit

Contents Noted and Approved,

*[signature]*
Deputy Superintendent Courtney Matthews
Assistant Chief, BPS