# Exhibit C



**BostonPolice**
DEPARTMENT                1 Schroeder Plaza, Boston, MA 02120-2014

| | |
|---|---|
| **To:** | **Deputy Superintendent Eddy Chrispin**<br>**Assistant Chief, Bureau of Professional Standards** |
| **From:** | **Lieutenant Detective Michael J. Connolly**<br>**Internal Affairs Unit** |
| **Date:** | **March 14, 2021** |
| **Subject:** | **IAD2019-0519** |
| **Employee:** | **Lieutenant James M. Foley**<br>**ID# 12260** |
| **Violation:** | **Rule 318 § 03 – Prisoners; Sickness or Injury**<br>**Rule 318 § 13 – Prisoner Inspection**<br>**Rule 106 § 12 – Duty Supervisor** |
| **Employee:** | **Police Officer Ismael L. Almeida**<br>**ID# 99715** |
| **Violation:** | **Rule 318 § 03 – Prisoners; Sickness or Injury**<br>**Rule 318 § 4 – Booking Procedures**<br>**Rule 318 § 13 – Prisoner Inspection** |

Sir,

I, Lieutenant Detective Michael J. Connolly, respectfully submit the following investigative report regarding IAD Complaint No. IAD2019-0519

### Incident Summary

On Sunday, July 14, 2019, Shayne Stilphen ingested a controlled substance while in custody at District 4 and was later found unresponsive in cell 19. Officers and Emergency Medical Technicians performed life-saving measures and resuscitated Stilphen, however, he was pronounced deceased after his arrival at Tufts Medical Center. Stilphen's mother, Lynnel Cox, alleged that Stilphen's clothing was lost sometime after he was brought to the hospital. A preliminary investigation into Stilphen's death revealed potential violations of Rule 318 – Prisoners and Rule 102 § 4 – Neglect of Duty.

### Investigation
The following individuals were interviewed relative to this investigation:

-Police Officers Michael Pankivich, Alex Rosa, Catia Freire, David Marshall, Paul Bertocchi, Detective Jessica Wagner, Sergeant Detective Gary Mitchell, Sergeant Paul Deleo, and Lieutenant James Foley.

Mayor Martin J. Walsh                                    **COB 02281**

This Complaint was investigated by Sergeant Detective Lucas E. Taxter.

**Investigation**

In summary, the following investigation revealed the following:

At approximately 1:00 am on Sunday, July 14, 2019, Police Officers Kevin Butcher and Paul Bertocchi responded to a 911 call for a breaking and entering into a motor vehicle at 666 Massachusetts Avenue in the South End of Boston. Their investigation resulted in the arrest of 28-year-old Shayne Stilphen who was subsequently charged with breaking and entering a motor vehicle at night (MGL 266 § 16). Stilphen was transported back to District 4 where he was searched, booked, and remanded to cell 19.

A review of the D-4 sally port video evidence revealed that at 1:30 am, Officer Kevin Zarnoch escorted Stilphen from his cruiser into the booking area.

A review of the holding cell video evidence revealed that Stilphen was first placed into a holding cell at 1:31 am where he was searched by the booking officer, Officer Ismael Almeida, while Zarnoch stood by. Stilphen's belt and sneakers were removed. At 1:35 am, Officer Paulmichael Bertocchi uncuffed Stilphen and searched his socks. At 1:42 am, Bertocchi gave Stilphen a cup of water. At 1:51 am, Stilphen, now alone in the holding cell, hinged forward at the waist and appeared to fall asleep, or *"nod-off."* At 1:53 am, Bertocchi entered the cell and gave Stilphen a container of milk. Stilphen sat up immediately. Bertocchi testified that because Stilphen sat up immediately when he entered the holding cell, he was not concerned that he had been leaning forward. At 1:55 am, Stilphen hinged forward and appeared to nod-off a second time. At 1:58 am, the cell door opened, Stilphen stood up, and exited the holding cell.

A review of the booking area video evidence revealed that Zarnoch escorted Stilphen from the holding cell to the booking desk at 1:58 am. Two officers assisted Almeida with the booking process: Bertocchi and Freire. Officers Bertocchi, Freire, and Almeida testified that Stilphen spoke coherently, followed instructions, and answered all questions asked of him. A review of the video evidence showed that Stilphen was swaying and appeared to have some difficulty standing still. After Stilphen was printed and photographed, he signed the booking forms and was escorted to cell 19 by Freire and Bertocchi.

A review of cell 19 video evidence revealed that Stilphen was placed into the cell at 2:21 am. A short time later, Stilphen leaned forward at the waist and appeared to fall asleep. Bertocchi appeared at the door and knocked on it. Stilphen lifted his head, stood up, walked to the cell door, and accepted the milk. After drinking it, Stilphen looked at the video camera, reached into the back of his shorts, and removed an item. Stilphen then manipulated the item, leaned forward at the waist, and although not viewable in the shot, appeared to ingest an unknown substance. Stilphen repeated this several times until he apparently fell asleep while seated on the bench, legs crossed in front of him, hinged

COB 02282

forward at the waist. Stilphen remained in this position for approximately an hour before waking up.

Again, at 4:40 am, while seated on the bench with his legs crossed in front of him, Stilphen tore off a piece of paper from a sandwich wrapper and proceeded to manipulate it with his hands into a straw. At 4:43 am, Officer David Marshall walked by the cell and Stilphen simultaneously reached his right hand behind himself. Marshall did not look into cell 19 at that time. A few seconds later, Marshall looked into cell 19 as he walked by again. Stilphen still had his right hand behind his waist and likely inside his pants, although the angle of the camera inhibited a clear view of Stilphen's right hand. Stilphen appeared to fall asleep again for about 3 minutes until 4:46 am at which point he removed a plastic bag from his buttocks. Stilphen manipulated the bag and leaned forward at 4:48 am. His legs were still crossed in front of him. Although out of sight, this is likely when Stilphen ingested an unknown substance. He remained in this seated position, hinged forward at the waist with his legs crossed before him, for approximately one hour until 5:52 am. During that time, Almeida walked past the cell 5 times: 4:56 am, 5:06 am, 5:21 am, 5:35 am, and 5:37 am. A review of the video evidence from cell 19 showed that Stilphen showed signs of possible agonal breathing at 5:06:30 am. Stilphen showed no further signs of breathing or movement.

At 5:39 am, Marshall placed a sandwich and a carton of milk in the meal slot of cell 19 and appeared to look into the cell. Marshall testified that Stilphen did not exhibit any indicators that he had overdosed. Marshall added that his observations of Stilphen were not unusual, based on other prisoners he had observed in District 4.

At 5:51 am, Officer Sean Doolan looked into the cell and observed Stilphen. Doolan wrote in his Form 26 that Stilphen was *"... resting in a position that looked as if it would be of extreme discomfort for most individuals."* Doolan kicked the cell door five times in an attempt to get a reaction from Stilphen. When Stilphen did not react, Doolan kicked the door five more times and summoned Almeida. Almeida and Doolan entered the cell at 5:52 am. Almeida attempted to evoke a response from Stilphen by lifting his right shoulder, however, Stilphen's body slumped to the left. Almeida motioned for Doolan to go get help. Almeida then picked up the makeshift straw from the bench directly in front of Stilphen and examined it. Realizing Stilphen had likely overdosed, Almeida moved Stilphen into a rescue position and began chest compressions.

At 5:53 am, Doolan and Bertocchi entered the cell and assisted Almeida. Doolan administered a dose of Naloxone while Almeida continued chest compressions. Sergeant Michael Aziz and Lieutenant James Foley entered the cell at this time. Bertocchi relieved Almeida and continued chest compressions at that time. At 5:54 am, Officer Michael Pankievich entered the cell with a bag valve mask and handed it to Doolan who in turn used it to administer rescue breaths to Stilphen while Bertocchi continued chest compressions. At 5:55 am, Bertocchi administered a second dose of Naloxone and CPR continued. At 5:57 am, Bertocchi administered a third dose of Naloxone and CPR continued. At 5:57:30, Doolan appeared to administer the fourth dose of Naloxone and CPR continued. At 5:57:45, three Boston EMS EMT's arrived at cell 19, relieved Doolan

COB 02283

and Bertocchi, and continued to administer first aid to Stilphen. At 5:59 am, EMT's applied an automatic defibrillator to Stilphen. At 6:01 am, two Boston EMS paramedics arrived at cell 19. Stilphen was transferred to a gurney and into the booking area. Aziz and Doolan secured cell 19 with crime scene tape. EMT's and paramedics resuscitated Stilphen and transported him to the hospital where he was later pronounced deceased at 6:48 am.

Dr. Atkinson from the Medical Examiner's Office determined the manner of death to be Accidental Substance Abuse.

In addition to the video evidence, a review of the prisoner inspection journal revealed that a cellblock inspection was completed at least once every fifteen minutes.

## Summary of Postmortem Toxicology Report and Cause and Manner of Death

On August 9, 2019, Sergeant Detective Garrett Mitchell received a copy of the toxicology report and subsequently provided a copy of the police reports to the Medical Examiner's Office. After reviewing the police reports, and all medical data, Dr. Atkinson determined the cause of death to be Acute Fentanyl, Despropoinyl Fentanyl, Heroin, Cocaine, and Benzodiazepine Intoxication. Dr. Atkinson determined the manner of death to be Accidental Substance Abuse.

## Missing Clothing

Lynell Cox, Stilphen's mother, alleged in an email that the clothing Stilphen was wearing when he was transported to the hospital was lost. A review of Booking Form 19-01039-04 revealed that Stilphen was wearing a red shirt, grey shorts, and black sneakers when he was booked at District 4. There is no mention of a belt or a ballcap. Video evidence shows that Stilphen was wearing black shorts and black sneakers when he was transported to Tufts Medical Center.

Pankievich testified that after Stilphen was pronounced, he called the Duty Supervisor's office, informed Lieutenant Foley, and asked if he should collect Stilphen's belongings. Foley replied that he would get back to him. A short time later, Foley called Pankievich and instructed him to collect Stilphen's clothing and bring it back to D-4. Rosa observed Pankievich on the phone, but he did not know with whom. Rosa testified they were instructed to collect Stilphen's clothing and bring it back to District 4. Foley testified that Pankievich spoke with Deleo. Foley did not recall instructing Pankievich to take Stilphen's clothing. Deleo testified that he did not answer the phone when Pankievich called the Duty Supervisor's office, nor did he recall being present when the call came in. Deleo was not present for any conversation with Foley or anyone else regarding Stilphen's clothing.

Pankievich testified that he obtained two evidence bags from hospital security. He put Stilphen's sneakers in one bag, and his shorts in the other. At approximately 7:00 am, he and Rosa returned to District 4. Pankievich testified that he brought the bags into the Duty Supervisor's office, and asked Foley where he should put them. Initially, Foley told

COB 02284

Pankievich to hold onto them, but then instructed him to place them on the floor in the back corner of the office. Foley advised Pankievich he would tell Sergeant Detective Mitchell from Homicide that the bags were there. Foley testified that he did not recall speaking with Pankievich on the phone or observe him bring the evidence bags into the Duty Supervisor's office. Rosa testified that he brought the bags into District 4 and left them in the booking area at the request of Sergeant Detective Mitchell. Mitchell testified that he did not recall speaking with Foley, Deleo, or anyone else about Stilphen's clothing. Mitchell did not observe Pankievich arrive at D-4 with Stilphen's clothing, nor was he present when Pankievich asked Foley what to do with the evidence bags. Mitchell did not take custody of Stilphen's clothing that morning.

Deleo's only memory with regard to Stilphen's clothing was from later on that day. Deleo believes Officer Jeffrey Lynch, who was the day tour booking officer, informed him that there was an evidence bag in the booking area that contained Stilphen's sneakers. Deleo believes he called someone at the Homicide Unit sometime after 7:30 am and either had the sneakers brought to Homicide or that someone from Homicide came to D-4 and retrieved them. Deleo could not recall who he spoke with at Homicide, however. Deleo had no memory of a second bag that contained shorts or other items. Lynch vaguely recalled telling Deleo that he found some of Stilphen's belongings in the booking area.

Wagner also testified that an unknown officer brought some of Stilphen's clothing to the Homicide Unit: a pair of black Nike sneakers, a ball cap, and a belt. Wagner provided a photograph of those items. Wagner also provided a Homicide Unit Investigative Report that indicates on August 1, 2019, Wagner turned over the sneakers, belt, and hat to Suffolk County District Attorney Ryan Mingo. Mingo recalled that Wagner gave him a brown evidence bag that contained Stilphen's clothing. Mingo gave the bag to Cox on August 15, 2019. He did not look in the bag to see what it contained however. Victim witness advocate Charlene Luma confirmed Mingo's account.

The black shorts were never recovered.

## Lieutenant James M. Foley, ID# 12260

After a careful review and due consideration of all the facts and evidence, I am unable to prove or disprove the allegation of Rule 318, s.3(Prisoners) by Lieutenant James Foley.

- video evidence from the holding cell and from cell 19 showed that Stilphen nodded-off or fell asleep at least five times, twice while in the holding cell and three times while in cell 19. When he did, Stilphen folded over at the waist with his head either between his legs or on his lap. Stilphen reacted to officers three of those times.

-A review of the Prisoner Inspection Record and the Prisoner Alarm Replay Report showed that prisoner inspections were conducted once every 15 minutes.

- Officer Bertocchi reported that after Stilphen was placed in cell #19, he brought him a sandwich and some milk. Similar to when he was in the holding cell, Stilphen was again sitting down and leaning forward. Under direct questioning, Bertocchi testified that this did not cause any concern because Stilphen stood up immediately and took the food.

COB 02285

-Officer Marshall conducted several prisoner inspections that evening and he reported that his observations of Stilphen were not unusual, based on other prisoners he had observed in District 4.

-Booking Officer Almeida testified that he did not observe Stilphen appear to nod-off while in the holding cell, nor did he observe anything that caused any concern while Stilphen was in cell 19. Almeida stated that he did observe Stilphen leaning forward and believed he was sleeping. Almeida testified that he has seen prisoners in that position before.

- Lieutenant Foley reported that prior to 5:50 am, no one advised him that Stilphen was under the influence of drugs or alcohol or in need of medical attention.

-Once Lieutenant Foley was notified that Stilphen was unconscious every effort was made to restore consciousness and medical assistance was summoned.

-After a review of video evidence and based on Officers interviews who reported that their observations of Stilphen were not unusual for prisoners held at D-4, I am unable to prove or disprove any violations of Rule 318, s.3(Prisoners).
Therefore, I respectfully recommend this allegation be classified as Not Sustained.
**Violation Rule 318, s. 03, Prisoners; Sickness or Injury**          **Not Sustained**


After a careful review and due consideration of all the facts and evidence, the Prisoner Inspections did occur

-A review of the Prisoner Inspection Record and the Prisoner Alarm Replay Report showed that this rule was adhered to.
Therefore, I respectfully recommend this allegation be classified as Exonerated.
**Violation Rule 318, s. 13, Prisoner Inspection**          **Exonerated**


After careful review and due consideration of all the facts and evidence, I am able to prove by a preponderance of the evidence that the allegation of BPD Rule 106, Section 12 (Duty Supervisor Responsibilities) occurred.

- The Duty Supervisor shall ensure that all money or other property taken into custody by a member of the force or which shall have been seized or taken from any person arrested for any cause is properly received, recorded and adequately secured.

-Mr. Stilphens black shorts were never located after he was taken to the hospital.

- Lieutenant Foley was the Duty Supervisor when this property could not be located and it was his responsibility to adequately secure Mr. Stephen's property.
Therefore, I respectfully recommend this allegation be classified as Sustained.
**Violation Rule 106, s. 12 – Duty Supervisor**          **Sustained**


**Police Officer Ismael L. Almeida, ID#99715**

After a careful review and due consideration of all the facts and evidence, I am unable to prove or disprove the allegation of Rule 318, s.3(Prisoners) by Officer Almeida.

- video evidence from the holding cell and from cell 19 showed that Stilphen nodded-off or fell asleep at least five times, twice while in the holding cell and three times

COB 02286

while in cell 19.  When he did, Stilphen folded over at the waist with his head either between his legs or on his lap.  Stilphen reacted to officers three of those times.

- Officer Bertocchi reported that after Stilphen was placed in cell #19, he brought him a sandwich and some milk.  Similar to when he was in the holding cell, Stilphen was again sitting down and leaning forward.  Under direct questioning, Bertocchi testified that this did not cause any concern because Stilphen stood up immediately and took the food.

-Officer Marshall conducted several prisoner inspections that evening and he reported that his observations of Stilphen were not unusual, based on other prisoners he had observed in District 4.

-Booking Officer Almeida testified that he did not observe Stilphen appear to nod-off while in the holding cell, nor did he observe anything that caused any concern while Stilphen was in cell 19.  Almeida stated that he did observe Stilphen leaning forward and believed he was sleeping.  Almeida testified that he has seen prisoners in that position before.

-Once Booking Officer Almeida was notified that Stilphen was unconscious every effort was made to restore consciousness and medical assistance was summoned.

-After a review of video evidence and based on Officer interviews who reported that their observations of Stilphen were not unusual for prisoners held at D-4, I am unable to prove or disprove any violations of Rule 318, s.3(Prisoners).

Therefore, I respectfully recommend this allegation be classified as Not Sustained.

**Violation Rule 318, s. 3, Prisoners; Sickness or Injury**          **Not Sustained**


After a careful review and due consideration of all the facts and evidence, the Prisoner Inspections did occur

-A review of the Prisoner Inspection Record and the Prisoner Alarm Replay Report showed that this rule was adhered to.

Therefore, I respectfully recommend this allegation be classified as Exonerated.

**Violation Rule 318, s. 13, Prisoner Inspection**          **Exonerated**


After a careful review and due consideration of all the facts and evidence, the Booking Procedures were completed in accordance to this rule by Booking Officer Almeida.

-Officers removed from Stilphen all of his property, including his belt and shoestrings which could have been used for suicidal purposes. The Booking Form indicated that a suicide query (Q5) was also completed.  The only item which was not discovered was the bag of drugs, however, it would not be possible for the officers to discover the drugs under Rule 318D § 4, they did not have Probable Cause to complete a Strip Search.

Therefore, I respectfully recommend this allegation be classified as Exonerated.

**Violation Rule 318 § 4 – Booking Procedures**          **Exonerated**

COB 02287

Respectfully Submitted,

Lieutenant Detective Michael J. Connolly
Internal Affairs Division

Contents Noted,

Deputy Superintendent Eddy Chrispin
Assistant Chief, Bureau of Professional Standards

Contents Noted and Approved

Superintendent Sharon Dottin
Chief, Bureau of Professional Standards

For Legal Advisor

IAD2019-0519, Page 8 of 8

COB 02288