# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, DAVID MARSHALL, and JOHN/JANE DOE NO. 1,<br><br>Defendants. | Civil Action No. 1:22-cv-11009-RGS |

## DEFENDANT CITY OF BOSTON'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all investigations by the IAU, IIU, HIU and/or any other department of BPD or the City relating to Shayne Stilphen's arrest, detention, death or otherwise arising out of the BPD's interactions with him, including but not limited to the investigations associated with Sergeant Detective Lucas Taxter's investigative report, Lieutenant Detective Michael Connolly's March 2021 report, and Sergeant Schroeder-Withington's report, referenced in COB 000032, and describe each investigation in detail, including without limitation: (a) any number or other nomenclature used to identify the investigation; (b) the manner in which the investigation was ordered or otherwise initiated, including the date of its initiation and the name of the person who ordered or initiated it; (c) the names of all persons who conducted and reviewed the investigation; (d) the manner in which the investigation was conducted, including the names of

1

all persons who were required to file reports and/or who were interviewed as part of the investigation, and who determined which people were required to do so; (e) the complete results of the investigation, including the date it concluded, any findings of fact or conclusions regarding rules violations, any reports or other written results, and any discipline, training or re-training imposed on any BPD officer or employee, including without limitation any discipline, training and/or re-training of Defendants.

**ANSWER NO. 1:**

**Objection**. The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing objection, the City states that a preliminary suicide attempt investigation of Mr. Stilphen's death, with case number SA2019-014, was conducted by Sergeant Detective Lucas Taxter of the Internal Affairs Division. Sergeant Detective Taxter's report in SA2019-014 was dated November 7, 2019, and was addressed to Deputy Superintendent Courtney Matthews, Assistant Chief of the Bureau of Professional Standards.

Following the submission of the report in SA2019-014, Deputy Superintendent Matthews asked Sergeant Detective Taxter to begin an Internal Affairs investigation into Mr. Stilphen's death. That Internal Affairs investigation had case number IAD 2019-0519. Sergeant Detective Taxter's report in IAD 2019-0519 was dated February 16, 2020, and was addressed to Deputy Superintendent Eddy Chrispin, who became Assistant Chief of the Bureau of Professional Standards following the retirement of Deputy Superintendent Matthews.

Following the submission of Sergeant Detective Taxter's report, Lieutenant Detective Michael Connolly, Sergeant Detective Taxter's supervisor, submitted a report to Deputy Superintendent Chrispin in IAD 2019-0519 on March 14, 2021.

Following the submission of Lieutenant Detective Connolly's report, Detective Erin Schroeder was assigned to conduct a supplemental investigation and write a supplemental report in IAD 2019-0519, as Sergeant Detective Taxter had left Internal Affairs earlier in 2021. Sergeant Schroeder submitted her report to Deputy Superintendent Chrispin on December 16, 2021.

Following the submission of Sergeant Schroeder's report, Lieutenant Detective Timothy Gaughan, Sergeant Schroeder's supervisor, submitted a report to Deputy Superintendent Chrispin on December 17, 2021, that adopted the findings and conclusions of Lieutenant Detective Connolly's March 14, 2021, report.

In addition, the Homicide Unit conducted an investigation into Mr. Stilphen's death. The detectives assigned to the Homicide Unit investigation were Sergeant Detective Garrett Mitchell, Detective Philip Bliss, and Detective Jessica Wagner. The case number of the Homicide Unit investigation was 192054058.

The City further responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including the reports of Sergeant Detective Taxter, the report of Lieutenant Detective Connolly, the report of Sergeant Schroeder, and the report of Lieutenant Detective Gaughan.

**INTERROGATORY NO. 2:**

For each investigation identified in response to Interrogatory No. 1, describe in detail what occurred between the dates listed below, including but not limited to any re-assignments of the investigation and the basis for such re-assignments:

- February 2020, following the submission of Sergeant Detective Taxter's investigative report, and March 2021, leading up to the submission of Lieutenant Detective Connolly's report referenced in COB 000032;

- March 2021, following the submission of Lieutenant Detective Connolly's Report, referenced in COB 000032, and December 2021, leading up to the submission of Sergeant Erin Schroeder's IIU Report dated December 16, 2021 (COB 000040–61) and the submission of Lieutenant Detective Connolly and Lieutenant Detective Timothy Gaughan's IAU Report dated December 17, 2021 (COB 000032–40); and

- December 2021, following the submission of Sergeant Erin Schroeder's IIU Report and Lieutenant Detective Connolly and Lieutenant Detective Gaughan's IAU Report,   and June 2022, leading up to when Plaintiff received audio recordings of interviews taken as part of the IAU investigation, including interviews of Almeida, Bertocchi, and Freire taken by Sergeant Detective Taxter.

**ANSWER NO. 2:**

**Objection**.  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to and without waiving the foregoing objection, the City states that between the submission of Sergeant Detective Taxter's February 16, 2020, report and Lieutenant Detective Connolly's March 14, 2021, report, Lieutenant Detective Connolly was reviewing Sergeant Detective Taxter's report and writing his own, as well as reviewing and writing reports in several other IAD cases.

The City further states that following March 14, 2021, Lieutenant Detective Connolly's report was reviewed, and eventually the case was reassigned to Sergeant Erin Schroeder for a supplemental investigation and report as Sergeant Detective Taxter had left Internal Affairs earlier in 2021. Sergeant Schroeder's report focused on Mr. Stilphen's clothing.

The City further responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including the reports of Sergeant Detective Taxter, the report of Lieutenant Detective Connolly, the report of Sergeant Schroeder, and the report of Lieutenant Detective Gaughan. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 3:**

Identify all investigations by the IAU, IIU, HIU and/or any other department of BPD or the City relating to Mr. Geigel's arrest, detention, death or otherwise arising out of the BPD's interactions with him and for each investigation, describe the investigation in detail, including without limitation: (a) any number or other nomenclature used to identify the investigation; (b) the manner in which the investigation was ordered or otherwise initiated, including the date of its initiation and the name of the person who ordered or initiated it; (c) the names of all persons who conducted and reviewed the investigation; (d) the manner in which the investigation was conducted, including the names of all persons who were required to file reports and/or who were interviewed as part of the investigation, and who determined which people were required to do so; (e) the complete results of the investigation, including the date it concluded, any findings of fact or conclusions regarding rules violations, any reports or other written results, and any discipline, training or re-training imposed on any BPD officer or employee, including without limitation any discipline, training and/or re-training of Defendants.

**ANSWER NO. 3:**

**Objection**.  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing objection, the City states that Mr. Geigel's death was investigated as a suicide attempt by Sergeant Detective Charles Cellucci of the Internal Affairs Division.  Sergeant Detective Cellucci's report, in case SA2019–08, is dated August 1, 2019, and is addressed to Deputy Superintendent Jeffery Walcott of the Bureau of Professional Standards.

In addition, the Homicide Unit conducted an investigation into Mr. Geigel's death.  The detectives assigned to the Homicide Unit investigation were Sergeant Detective Richard Lewis, Detective Kenneth Autio, Detective Eric McPherson, and Detective Timothy Evans.  The case number of the Homicide Unit investigation was 1920039859.

The City further responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including the report of Sergeant Detective Cellucci.

**INTERROGATORY NO. 4:**

Describe in detail what happened to the audio recorded interviews of Kevin Butcher, James Verderico, and Jeffrey Lynch, taken on May 28, 2019 by Detective Kenneth Audio, Sgt. Charles Cellucci and Detective Timothy C. Evans, as referenced by Detective Timothy C. Evans Homicide Unit Investigation Report CC: 1920039859 "Initial Response" but that were not produced in response to Plaintiff's public records requests, from the time they were recorded until the present, including but not limited to the way in which such interviews were recorded and stored, the chain of custody for the recorded media, and, if destroyed, the date on which such

destruction occurred, the manner in which such destruction was carried out, and the reason for such destruction.

**ANSWER NO. 4:**

**Objection**.  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  The City further objects to this Interrogatory on the grounds that it is vague and ambiguous.  Subject to and without waiving the foregoing objections, the City states that the audio interviews referenced in this Interrogatory were stored in the Homicide Unit's digital case file for the Geigel investigation.  The City further states that it has copies of the audio interviews in its custody and will provide them in the course of discovery.

**INTERROGATORY NO. 5:**

Identify and describe in detail any changes to BPD policies, practices, customs, training, or supervision between May 28, 2019 and July 14, 2019, including but not limited to BPD policies, practices, customs, training or supervision regarding identifying and/or responding to suspected intoxication, identifying or responding to opioid overdose, booking practices, cell checks, and any other changes that form the basis for the denial in Boston Answer ¶¶ 11, 134.

**ANSWER NO. 5:**

**Objection.**  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to and without waiving the foregoing objection, the City states that there were likely discussions at District 4 roll calls following Mr. Geigel's death about the need to conduct thorough searches of prisoners who were taken into custody.  The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 6:**

Identify and describe in detail any changes to BPD policies, practices, customs, training, or supervision with respect to the people BPD encountered, arrested, and booked on or after July 14, 2019.

**ANSWER NO. 6:**

**Objection.** The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objection, the City states that in January 2020, Captain Steve Sweeney, the commander of the District 4 police station, highlighted best practices for searching prisoners who are taken into custody. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 7:**

Identify and describe all the ways in which BPD conducts video and audio surveillance activities within District 4, how BPD records such activities, and the procedures for maintaining any such records, including but not limited to the video surveillance software referenced in IAU and IIU reports COB 000062, COB 000041, and COB 000032.

**ANSWER NO. 7:**

**Objection.** The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objection, the City states that video from the individual cells at the District 4 station, as well as from the group holding cell, garage bay, booking area, and the hallway between the individual cells, is displayed on monitors in the Duty Supervisor's office and in the Booking Officer's work area. The video footage is believed to be preserved for 30 days. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 8:**

Identify and describe in detail any BPD rules, policies and/or procedures in place on July 14, 2019 requiring the monitoring of the prison cell monitors located in the Duty Supervisor's office and in the Booking Officer's work area and identify the individual, or individuals, responsible for monitoring the prison cell monitors between the hours of 1:00 a.m. and 6:00 a.m. on July 14, 2019 pursuant to these rules and/or procedures.

**ANSWER NO. 8:**

**Objection.** The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objection, the City states that there is no officer responsible for watching the prison cell monitors in the Duty Supervisor's office or in the Booking Officer's work area at all times.

**INTERROGATORY NO. 9:**

Identify and describe in detail any BPD rules, policies and/or procedures in place on July 14, 2019 that require officers to look directly into the cells during the required cell checks, record what they observed, and/or take action as a result of the cell visits, including but not limited to any rules, policies or procedures that formed the basis for the denial of Boston Answer ¶ 35.

**ANSWER NO. 9:**

The City responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including BPD Rule 318, which states under Section 13 (Prisoner Inspection) that "The Duty Supervisor or the Director of the Juvenile PreArrangment Facility shall visit, or cause to be visited, all persons in their custody at least once every fifteen minutes, and shall ensure that each visit is recorded in the

Prisoner Inspection Record (M.G.L. c. 40 § 36B)." The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 10:**

Identify and describe the basis for the denial of the allegations in Complaint regarding BPD's policies and procedures, including but not limited to the denials in Boston Answer ¶¶ 36, 39, 41, 43, and 114.

**ANSWER NO. 10:**

**Objection.** The City objects to this Interrogatory on the grounds that it seeks information covered by the attorney work product doctrine. Subject to and without waiving the foregoing objection, the City states that it disagrees with Plaintiff's characterization of BPD policies and procedures. Contrary to the Plaintiff's assertions in Paragraphs 39, 41, 43, and 114, BPD Rule 318, § 3, states that "Any unusual appearance or behavior displayed by a prisoner shall receive immediate attention." In addition, there are informal policies that police will call emergency medical services in the event that an arrestee requests medical attention. The City states that discovery is ongoing and it will supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 11:**

Identify and describe in detail every instance since January 1, 2014 in which an individual who was being held in BPD custody experienced an overdose, including but not limited to whether a BPD officer called for outside medical assistance and the outcome of the overdose, and for each instance identified, describe in detail any related investigations, including without limitation: (a) any number or other nomenclature used to identify the investigation; (b) the manner in which the investigation was ordered or otherwise initiated, including the date of its

initiation and the name of the person who ordered or initiated it; (c) the names of all persons who conducted and reviewed the investigation; (d) the manner in which the investigation was conducted, including the names of all persons who were required to file reports and/or who were interviewed as part of the investigation, and who determined which people were required to do so; (e) the complete results of the investigation, including the date it concluded, any findings of fact or conclusions regarding rules violations, any reports or other written results, and any discipline, training and/or re-training imposed on any BPD officer or employee.

**ANSWER NO. 11:**

**Objection.**  The City objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.

**INTERROGATORY NO. 12:**

Identify and describe in detail every instance since January 1, 2014 in which a BPD officer provided medical assistance to or otherwise sought outside medical assistance on behalf of a person who was in BPD custody, including but not limited to calling EMS to diagnose and/or treat the person, calling a doctor or nurse to diagnose and/or treat the person, and/or having the person transported to a hospital for diagnosis and/or treatment, and for each instance identified, identify and describe the reason for seeking outside medical assistance.

**ANSWER NO. 12:**

**Objection.**  The City objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.

**INTERROGATORY NO. 13:**

Identify each officer whose initials are listed as an "inspector" in the BPD Prisoner Inspection Record for District 4 on May 27, 2019, May 28, 2019, and July 14, 2019.

**ANSWER NO. 13:**

**Objection.**   The City objects to this Interrogatory on the grounds that it calls for speculation.  Subject to and without waiving the foregoing objection, the City states that the BPD Prisoner Inspection Record for District 4 on May 27, 2019, and May 28, 2019, appears to show initials "BM" for Brian MacLean, "MK" for Matthew Kulesza, "SM" for Sean Monaghan, "SD" for Sean Doolan, "LW" for Lisa Wright, "IA"for Ismael Almeida, "MM" for Matthew McCabe, and "JL" for Jeffrey Lynch.

The City further states that the BPD Prisoner Inspection Record for District 4 for July 14, 2019, appears to show initials "IA"for Ismael Almeida and "JL" for Jeffrey Lynch.

The City further responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including the prisoner inspection logs and the Form 26 Reports from officers related to Mr. Geigel's death. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 14:**

Identify each officer who appears in the entirety of video surveillance taken when Shayne was in BPD custody on July 14, 2019, including but not limited to, Booking Desk Video (COB 000108), Cell 19 Video (COB 000109), Holding Cell Video (COB 000110), and Sally Port Video (COB 000111) and list the time stamps at which they appear.

**ANSWER NO. 14:**

**Objection.**  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  The City further objects on the grounds that this Interrogatory calls for speculation.

Subject to and without waiving the foregoing objections, the City states that Officer Kevin Zarnoch appears with Mr. Stilphen in the Sally Port Video.

In the Holding Cell Video, Officer Almeida appears at 00:00:56 and is seen speaking with Mr. Stilphen, searching his pockets, and asking him to take off his shoes. Officer Zarnoch also appears at approximately 00:00:56 and is seen standing next to Officer Almeida. Officer Bertocchi appears at 00:03:40 and is seen wearing plainclothes and a baseball cap.

In the Booking Desk Video, Officer Zarnoch appears at the beginning of the video and is seen searching Mr. Stilphen's shoes. Officer Bertocchi also appears at the beginning of the video and is seen fingerprinting and booking Mr. Stilphen. Officer Freire appears at 00:00:39 and is seen fingerprinting Mr. Stilphen.

In the Cell 19 Video, an officer who appears to be Officer Brian Picarello passes by Mr. Stilphen's cell at 00:05:08, 00:42:24, and 01:01:00. Officer Almeida passes by Mr. Stilphen's cell at 00:17:40, 00:27:50, 00:42:28, 00:57:00, and 00:59:07. Officer Sean Doolan passes by Mr. Stilphen's cell at 01:13:15.

The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 15:**

Identify and describe in detail all BPD rules, policies, procedures, and trainings since January 2014 regarding the collection, retention, and return of the clothing and property of people who are held in their custody, including any changes to such rules, policies, procedures, and trainings if any such changes occurred since January 2014.

**ANSWER NO. 15:**

**Objection.** The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, the City responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including BPD Rule 318, training materials, and the defendant Officers' training records. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 16:**

Identify and describe in detail any complaints or grievances regarding the BPD's failure to collect, retain, or return the clothing or property of a person was held in their custody since January 2014, including but not limited to any investigations of such complaints or grievances and any discipline, training, and/or re-training that resulted from complaints or grievances.

**ANSWER NO. 16:**

**Objection.** The City objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.

**INTERROGATORY NO. 17:**

Describe in detail what happened to Shayne Stilphen's clothing and property from the time he was taken into BPD custody on July 14, 2019 until the present, including the chain of custody for such clothing and property, and, if destroyed, the date on which such destruction occurred, the manner in which the destruction was carried out, and the reason for such destruction.

**ANSWER NO. 17:**

The City responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including the reports on

IAD 2019-0519 written by Sergeant Detective Taxter, Lieutenant Detective Connolly, Sergeant Schroeder Schroeder, and Lieutenant Detective Gaughan, and the emails between Sergeant Detective Taxter and the plaintiff.  The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 18:**

Identify and describe in detail all BPD rules, policies, procedures, and training since January 2014 regarding (a) substance use disorders and OUD, (b) recognizing and reacting to suspected or actual intoxication in an individual held in BPD custody, (c) recognizing and reacting to overdose in an individual held in BPD custody, (d) seeking outside medical assistance for intoxication or overdose of an individual held in BPD custody, (e) monitoring an intoxicated individual held in BPD custody, (f) administering Narcan, including any changes to such rules, policies, procedures, and trainings if any such changes occurred since January 2014.

**ANSWER NO. 18:**

**Objection.**  The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to and without waiving the foregoing objection, the City responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including BPD Rule 318, training materials and the defendant Officers' training records. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 19:**

Identify and describe in detail all BPD rules, policies, procedures, and trainings since January 2014 regarding seeking outside medical assistance for an individual held in BPD

custody, including any changes to such rules, policies, procedures and trainings if any such changes occurred since January 2014.

**ANSWER NO. 19:**

    **Objection.** The City objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objection, the City responds pursuant to Fed. R. Civ. P. 33(d) by referring the Plaintiff to all reports and records produced in discovery and the Parties' Initial Disclosures, including BPD Rule 318, training materials, and the defendant Officers' training records. The City reserves the right to supplement its answer to this Interrogatory as additional information becomes available.

**INTERROGATORY NO. 20:**

    Identify and describe in detail the basis for the contention that Plaintiff has not established *Monell* liability, including but not limited to the basis for the Third Affirmative Defense, Fourth Affirmative Defense, Fifth Affirmative Defense, and Sixth Affirmative Defense in the Boston Answer.

**ANSWER NO. 20:**

    **Objection**. The City objects to this Interrogatory on the grounds that it seeks information covered by the attorney work product doctrine. Subject to and without waiving the foregoing objection, the City states that it denied *Monell* liability because there are no facts to support either the existence of a constitutional violation or a custom or policy that caused one. The City further states that discovery is ongoing and it will supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 21:**

Identify and describe in detail the basis for the Seventh Affirmative Defense in the Boston Answer.

**ANSWER NO. 21:**

**Objection**.   The City objects to this Interrogatory on the grounds that it seeks information covered by the attorney work product doctrine.  Subject to and without waiving the foregoing objection, the City states that discovery is ongoing and it will supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 22:**

Identify and describe in detail the basis for the Eighth Affirmative Defense in the Boston Answer.

**ANSWER NO. 22:**

**Objection**.   The City objects to this Interrogatory on the grounds that it seeks information covered by the attorney work product doctrine.  Subject to and without waiving the foregoing objection, the City states that discovery is ongoing and it will supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 23:**

Identify and describe in detail the basis for the Ninth Affirmative Defense in the Boston Answer.

**ANSWER NO. 23:**

**Objection**.   The City objects to this Interrogatory on the grounds that it seeks information covered by the attorney work product doctrine.  Subject to and without waiving the foregoing objection, the City states that discovery is ongoing and it will supplement this response in accordance with the Federal Rules of Civil Procedure.

AS TO THE OBJECTIONS:

Defendant,
City of Boston
By its attorneys,

Adam Cederbaum
Corporation Counsel


/s/ Randall F. Maas
_____
Edward Whitesell BBO#644331
Senior Assistant Corporation Counsel
Randall F. Maas BBO# 684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
617-635-4045 (Whitesell)
617-635-4042 (Maas)
Edward.whitesell@boston.gov
Randall.maas@boston.gov


## CERTIFICATE OF SERVICE

I, Randall F. Maas, hereby certify that I served a true copy of the above document on all parties of record via email on the date listed below.


3/24/2023                                    /s/ Randall F. Maas
_____                      _____

Date                                    Randall F. Maas

*The undersigned deposes and states that they are an employee and representative of the City of Boston, named Defendant in the above-captioned action, and that they sign the foregoing answers for and on behalf of the City of Boston and is authorized to do so; that the matters stated in the foregoing answers are not all within his personal knowledge and that they are informed that there is no officer or employee of said City of Boston who has personal knowledge of all such matters; that such facts are as stated in said answers which are not within the personal knowledge of the deponent have been assembled by authorized agents, employees and counsel of said Defendant; and the deponent is informed and believes that the facts stated in said answers are true and so states under the penalties of perjury.*

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 24th day of March 2023.

Name: Lanita Cullinane

Position: Superintendent, Bureau of Field Services

Department: Boston Police Department