# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,<br><br>    Plaintiff,<br><br>v.<br><br>BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, and JOHN/JANE DOES NOS. 1–2,<br><br>    Defendants. | Civil Action No. 1:22-cv-11009-RGS |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
TO DEFENDANT BOSTON POLICE DEPARTMENT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Rule 34.1 of the Local Rules for the U.S. District Court for the U.S. District Court for the District of Massachusetts, Plaintiff Lynnel Cox ("Plaintiff"), as administrator of the estate of Shayne R. Stilphen ("the Estate"), hereby requests that Defendant Boston Police Department ("BPD")[1] produce the documents and electronically stored information described below that are in its possession, custody, or control, including without limitation, the possession, custody, or control of any of its attorneys, agents, employees, or representatives, for inspection and copying within thirty (30) days from the date of service of this request at the offices of the ACLU of Massachusetts, One Center

---

[1] BPD denied in its Answer that it is the proper named defendant in this suit as it is a department of the City of Boston. Boston Answer, ¶ 18. Plaintiff does not dispute that BPD is a department of the City of Boston, and agrees to substitute the City of Boston as the named Defendant. Because that substitution has not yet occurred, the BPD is still listed here as a Defendant, but it should be understood that these document requests are directed to the City of Boston, within which the BPD is a department.

1

Plaza, Suite 850, Boston, MA 02108, and Goodwin Procter, 620 Eighth Avenue, New York, NY 10018.

## INSTRUCTIONS

1. These Requests for Production are subject to the requirements of Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the District of Massachusetts (the "Local Rules"), including Federal Rule of Civil Procedure 26(e) and Local Rule 34.1.

2. The Defendants are not required to produce again any documents already produced with their Rule 26 Initial Disclosures.

3. To the extent Defendants previously produced redacted versions of reports and documents responsive to the Requests below, Defendants should produce the complete and unredacted version of all such documents.

4. Any document responsive to the Requests for Production but not produced because of a claim of privilege or any other claimed protection from disclosure should be identified in a privilege log describing (a) the kind of document or information withheld (e.g., memorandum, letter, e-mail), (b) its date, (c) the document or information's author and all of its recipients, (d) a brief statement of the document or information's subject matter, and (e) the grounds or reasons asserted for withholding the document or information, including without limitation the particular privilege rule that is being invoked.

5. Any documents responsive to the Requests for Production but not produced because any such documents have been destroyed, please describe such document in complete detail and state the: (i) date of its destruction; (ii) name of the author; (iii) name of the person who destroyed it; (iv) reasons for its destruction.

6.      These Requests for Production are continuing in nature, including pursuant to Fed. R. Civ. P. 26(e).

## DEFINITIONS

1.      The Uniform Definitions in Discovery Requests set forth in Local Rule 26.5 shall apply as if fully restated herein.

2.      The term "document(s)" has the same meaning as under Local Rule 26.5 and Federal Rule of Civil Procedure 34(a), and includes electronically stored information as specified in Federal Rule of Civil Procedure 34.  For the avoidance of doubt, "document(s)" includes, without limitation, any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including but not limited to letters, electronic mail, reports, text messages, posts to any social media platform such as WhatsApp, Instagram, Facebook, Snapchat, LinkedIn and any similar application, other written communications, correspondence, telegrams, memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, travel records or itineraries, forecasts, analyses, photographs, models, graphs, statistical statements, notebooks, plans, drawings, summaries of negotiations, press releases, lists of persons attending meetings or conferences, reports and summaries of investigations, studies, evaluations, records, presentations, sound recordings, videos, and/or photographs.  Document(s) also includes documents provided by and/or obtained from third parties within Defendants' possession, custody, and/or control.

3.      The term "communication(s)" has the same meaning as under Local Rule 26.5.  For the avoidance of doubt, communication shall include, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail, and text messages.

4. The term "BPD" refers to the Boston Police Department, including without limitation its officers, commissioner, officials, bureaus, squads, divisions, internal investigation unit, employees, agents, representatives, and any person acting for it or on its behalf.

5. The term "City" refers to the City of Boston, including without limitation the BPD, and the City of Boston's officials, departments, officers, directors, employees, agents, representatives, fiduciary, attorney, or any other person or entity acting for it or on its behalf.

6. The term "Complaint" means the Complaint dated June 27, 2022 (Dkt. No. 1), and the contents, averments, statements, and allegations therein, and any amendments thereto.

7. The term "IAU" shall refer to the BPD's Internal Affairs Unit, including without limitations all officers, employees, and officials assigned to it or acting on its behalf.

8. The term "IIU" shall refer to the BPD's Internal Investigations Unit, including without limitations all officers, employees, and officials assigned to it or acting on its behalf.

9. The term "HIU" shall refer to the BPD's Homicide Investigation Unit, including without limitations all officers, employees, and officials assigned to it or acting on its behalf.

10. "Almeida" refers to Defendant Ismael Almeida.

11. "Bertocchi" refers to Defendant Paulmichael Bertocchi.

12. "Freire" refers to Defendant Catia Freire.

13. "Marshall" refers to BPD Officer David Marshall.

14. "Defendants" refers collectively to all Defendants named in the Complaint and any amendments thereto.

15. The terms "Shayne Stilphen" and "Shayne" refer to Shayne R. Stilphen.

16. "OUD" refers to opioid use disorder.

17. "CPR" refers to cardiopulmonary resuscitation.

18.     "EMS" refers to Boston Emergency Medical Services, including without limitations all officers, employees, and officials assigned to it or acting on its behalf.

19.     "Mass and Cass" refers to the intersection of Melnea Cass Boulevard and Massachusetts Avenue in Boston, Massachusetts.

20.     "District 4" refers to the area within Boston designated by the BPD as District D-4.

21.     "Mr. Geigel" refers to Cristhian Geigel, who died in May 2019 while in BPD custody at the District 4 station.

22.     "Interactions" shall refer to any encounter between people, including any in-person and electronic communications, any physical contact and proximity, and any official acts against a person such as arrest or taking a person into another form of custody.

23.     The terms "include" and "including" shall be interpreted in every instance as being illustrative of the information requested, shall be read as meaning "including but not limited to," and shall not be interpreted to exclude any information otherwise within the scope of these Requests.

24.     The term "each" shall include "each and every."

25.     The use of the singular form of any word includes the plural and vice versa so as to bring the unused form within the scope of the Request.

26.     The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request the broadest form of response.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents concerning Shayne Stilphen's arrest, booking, and detention by BPD, including without limitation any and all reports, forms, logs, notes, communications, case files,

database files and search results, electronic mail, photographs, audio recordings, and video recordings.

**REQUEST NO. 2:**

All documents concerning Mr. Geigel's arrest, booking, and detention by BPD, including without limitation any and all reports, forms, logs, notes, communications, case files, database files and search results, electronic mail, photographs, audio recordings, and video recordings.

**REQUEST NO. 3:**

All documents, including all complaints, orders, communications, electronic mail, interview notes, witness statements, draft reports, reports, evidence, case files, forms, minutes, transcripts, recordings, findings, recommendations, and records of any discipline, training or re-training imposed, regarding any inquiry, investigation and/or disciplinary proceedings concerning Shayne Stilphen, his time in the custody of the BPD, and/or the circumstances leading up to his death, including but not limited to documents related to HUI 192054058, IAD 2019-0519, and SA 2019-014.

**REQUEST NO. 4:**

All documents, including all complaints, orders, communications, electronic mail, interview notes, witness statements, draft reports, reports, evidence, case files, forms, minutes, transcripts, recordings, findings, recommendations, and records of any discipline, training or re-training imposed, regarding any inquiry, investigation and/or disciplinary proceedings concerning Mr. Geigel, his time in the custody of the BPD, and/or the circumstances leading up to his death, including but not limited to documents related to SA 2019-008.

**REQUEST NO. 5:**

All documents recording or showing District 4's staffing on May 26-28, 2019 and July 14, 2019, including without limitation, for each day, the name of each officer and employee on duty, their hours of duty, their work assignment, their work location, and activities performed.

**REQUEST NO. 6:**

Documents sufficient to show the District 4 prisoner and detainee roster for May 26-28, 2019 and July 14, 2019, including without limitation, for each day, the names of the prisoners and detainees and their cell assignments.

**REQUEST NO. 7:**

All documents concerning complaints alleging denial of medical care or treatment of a person held in BPD custody from January 1, 2014, to the present, and records of the investigation and adjudication of those complaints, including any findings made and any discipline imposed.

**REQUEST NO. 8:**

All documents recording or showing cell visits, rounds, inspections, and/or other activities of BPD personnel in District 4 on July 14, 2019, including without limitation all logs of periodic staff rounds, cell visits, medication deliveries, meal deliveries, and inspections.

**REQUEST NO. 9:**

All documents recording or showing cell visits, rounds, inspections, and/or other activities of BPD personnel in District 4 on May 26-28, 2019, including without limitation all logs of periodic staff rounds, cell visits, medication deliveries, meal deliveries, and inspections.

**REQUEST NO. 10:**

All policies, procedures, or rules in effect at the BPD at any time from January 1, 2014, to the present, and any drafts, amendments, exhibits, and addenda thereto, concerning each of the following subjects: (a) the intake and booking process for people entering BPD custody; (b) the

housing, care, treatment, and management of persons in BPD custody; (c) providing medical evaluation, treatment, and other medical care to persons in custody at the BPD; (d) the care and treatment of persons in BPD custody with opioid, alcohol, and other substance use disorders, including any policies and procedures for addiction treatment, detoxification, and withdrawal; (e) the care and treatment of persons in BPD custody with any pre-existing medical condition or injury, including any policies or procedures for treating and assisting those conditions; (f) the care and treatment of persons in BPD custody who are or who are suspected to be intoxicated, including any policies regarding monitoring; (g) the care and treatment of persons in BPD custody who experience an opioid overdose, including any policies on the administration of medication used to reverse or reduce the effects of opioids; (h) seeking outside medical assistance for people in BPD custody, including the transport of persons in custody at the BPD to a hospital, medical clinic, or other medical facility; (i) monitoring cells, (j) the collection, retention, and return of property of people held in BPD custody; and (k) internal investigations at the BPD, including into allegations of lack of medical care or treatment of a person in BPD custody.

**REQUEST NO. 11:**

All training materials prepared by the BPD, or presented to BPD recruits, employees, or contractors, concerning the subjects listed in Request 10, since January 1, 2014, including but not limited to drafts of any such training materials, amendments and updates to any such training materials, training bulletins, directives, special orders, commissioner's orders and memoranda, text books, pamphlets, other materials provided at the Academy, and PowerPoint presentations, including the PowerPoint presentation excerpted on COB 000052.

**REQUEST NO. 12:**

All communications concerning the rules, policies, procedures, and training materials provided in response to Request 10 and 11, including any communications regarding changes to the rules, policies, procedures and training materials provided in response to Request 10 and 11.

**REQUEST NO. 13:**

Documents sufficient to show the number of arrests made for drug possession or consumption by BPD in District 4 on an annual basis from January 1, 2014 through the present.

**REQUEST NO. 14:**

Documents sufficient to show the number of people in BPD custody requiring treatment or medical care due to suspected and/or confirmed drug intoxication, over-intoxication, and/or overdose since January 1, 2014, including but not limited to the officer(s) involved, the basis for the treatment, what type of treatment was provided, whether outside medical attention was sought, and the outcome of such treatment or medical care.

**REQUEST NO. 15:**

Documents sufficient to show the number of people in BPD custody requiring treatment or medical care due to illness, a medical condition, and/or injury since January 1, 2014, including but not limited to the officer(s) involved, the basis for the treatment, what type of treatment was provided, whether outside medical attention was sought, and the outcome of such treatment or medical care.

**REQUEST NO. 16:**

All documents that are referenced in Defendants' initial disclosures and responses to interrogatories in this case.

**REQUEST NO. 17:**

All documents that are considered or relied upon by any testifying expert to develop such expert's opinions in this action.

**REQUEST NO. 18:**

All documents that will be introduced or otherwise displayed or referenced at the trial of this action.

**REQUEST NO. 19:**

All documents that are produced to any other party pursuant to a discovery request or obligation arising from this action.

**REQUEST NO. 20:**

All documents demonstrating the cause of death for Mr. Geigel, including but not limited to Mr. Geigel's report of autopsy and postmortem toxicology report.

**REQUEST NO. 21:**

The complete personnel files for Almeida, Bertocchi, Freire, and Marshall, including without limitation any and all records concerning their interactions with Shayne Stilphen and/or Mr. Geigel, and including without limitation any and all complaints of misconduct against them and the resolution of any such complaints.

**REQUEST NO. 22:**

All documents including but not limited to emails, orders, directives, training bulletins, and commissioners memoranda, sent to or from any BPD or City employee between May 28, 2019 and July 14, 2019, regarding Mr. Geigel, substance use disorder, OUD, Mass and Cass, methadone mile, opioids, fentanyl, intoxication, overdose, booking procedures, monitoring of cells, administration of Narcan, and/or seeking outside medical care or assistance.

**REQUEST NO. 23:**

All documents including but not limited to emails, orders, directives training bulletins, and commissioner memoranda, sent to or from any BPD or City employee about, Shayne Stilphen.

**REQUEST NO. 24:**

All documents concerning complaints regarding clothing or property that was not returned to people in BPD custody from January 1, 2014, to the present, and records of the investigation and adjudication of those complaints, including any findings made and any discipline imposed.

**REQUEST NO. 25:**

All communications sent to or from any BPD or City employee from January 1, 2014 to July 14, 2019 concerning substance use, intoxication, over-intoxication, and/or overdose, including but not limited to communications containing the terms "methadone mile," "mass and cass," "addict," "junkie," "substance abuse," "opioid abuse," "substance abuser," "opioid abuser," "opioid," "opiate," "heroin," and/or "fentanyl."

**REQUEST NO. 26:**

All documents sent from any BPD or City employee concerning Lynnel Cox, including communications to, from, about, and/or otherwise referring to Lynnel Cox or Lynnel Stilphen.

**REQUEST NO. 27:**

All documents concerning Plaintiff's public record requests to BPD, including the public records requests submitted on December 7, 2020 (Reference # B001944-120720), July 1, 2021 (Reference # B001150-070121), and January 4, 2022 (Reference # R000011-010422).

January 3, 2023

**LYNNEL COX,** *as administrator of the estate of Shayne R. Stilphen*
By her attorneys,

*/s/ Robert Frederickson III*
Robert Frederickson III (BBO #670111)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570-1000
rfrederickson@goodwinlaw.com

Matthew R. Segal (BBO #654489)
Jessie J. Rossman (BBO # 670685)
Alexandra Arnold (BBO #706208)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
Tel.: (617) 482-3170
msegal@aclum.org
jrossman@aclum.org
aarnold@aclum.org

Alexandra D. Valenti (*Pro hac vice*)
Christine Armellino (*Pro hac vice*)
Gabriella Montes (*Pro hac vice*)
Wrenne Bartlett (*Pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 459-7351
avalenti@goodwinlaw.com
carmellino@goodwinlaw.com
gmontes@goodwinlaw.com
wbartlett@goodwinlaw.com

Matthew Ginther (*Pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
mginther@goodwinlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 3, 2023, a true and correct copy of the foregoing was served on counsel of record for all parties by electronic mail.

*/s/ Robert Frederickson III*
