# EXHIBIT D

| | |
|---|---|
| **From:** | Ginther, Matthew |
| **To:** | Edward Whitesell; Randall Maas; Lauren Rey |
| **Cc:** | Valenti, Alexandra D; Potkay, Christine; DG-Cox |
| **Subject:** | Re: 22-0779 - Cox, Lynnel v. City of Boston, et al |
| **Date:** | Friday, April 14, 2023 1:08:31 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |
| | Valenti April 14 2023 Letter to Whitesell.pdf |

Counsel – Please see the attached correspondence.

Thank you,

Matt

**Matthew Ginther**



Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
o  +1 202 346 4324
f   +1 202 478 0929
MGinther@goodwinlaw.com





Alexandra D. Valenti
+1 212 459 7351
AValenti@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018

goodwinlaw.com
+1 212 813 8800

April 14, 2023

Edward Whitesell
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201

Re:     *Cox v. City of Boston et al.*, No. 1:22-cv-11009-RGS

Dear Ted:

I write on behalf of Plaintiff Lynnel Cox, as administrator of the estate of Shayne R. Stilphen, (the "Estate") regarding deficiencies in the City of Boston (the "City"), Ismael Almeida ("Almeida"), Paulmichael Bertocchi ("Bertocchi"), and Catia Freire's ("Freire") (collectively the "Responding Defendants") Responses to the Estate's First Set of Interrogatories and Requests for Production served on January 3, 2023.  Based on Plaintiff's initial review, Plaintiff requests that the Responding Defendants supplement their Responses to the following Interrogatories by April 26, 2023, and produce documents responsive to the following Requests.  To the extent Defendants are not willing to supplement their Responses by April 26, 2023, and also confirm by that date that Defendants will produce the requested documents sufficiently in advance of the close of fact discovery to facilitate deposition scheduling, please provide your availability for a meet and confer to discuss these issues.  By identifying deficits in certain of the Responses, Plaintiff is not suggesting that the remaining Responses are otherwise complete as Plaintiff's review is ongoing.

### The City's Objections to Request Nos. 7, 14, and 15

Request No. 7 to the City seeks the production of documents concerning complaints alleging denial of medical care or treatment of a person held in Boston Police Department ("BPD") custody and records of the investigation and adjudication of those complaints since January 1, 2014.  Request No. 14 to the City seeks the production of documents sufficient to show the number of people in BPD custody requiring treatment or medical care due to suspected and/or confirmed drug intoxication, over-intoxication, and/or overdose since January 1, 2014.  Request No. 15 to the City seeks the production of documents sufficient to show the number of people in BPD custody requiring treatment or medical care due to illness, a medical condition, and/or injury since January 1, 2014.

The City submits two boilerplate objections to these Requests, neither of which provide a basis for the City's refusal to produce documents responsive to these Requests.



Edward Whitesell
April 14, 2023
Page 2

*First*, the City states that Request Nos. 7, 14, and 15 are "overly broad, unreasonably cumulative, and unduly burdensome" but does not state *why* they are so. Indeed, the City's statements that it would be burdensome to search for and collect documents relating to allegations of denial of medical care, the number of people in the City's custody suffering from drug over-intoxication and/or overdose, and the number of people in the City's custody who require medical care suggests that the City has no central repository for such information, supporting Plaintiff's point that the City has failed to address prior instances of denied medical care, and thereby created a policy and practice that deprives individuals of their protected rights while in the City's care. To the extent that the City is maintaining its objection that such records would be burdensome to collect, Plaintiff requests that the City explain how these records are maintained and accessed.

*Second*, the City states that Request No. 7 "seeks information that is not reasonably calculated to lead to the discovery of admissible evidence." That makes no sense. As an initial matter, under the current Federal Rules, information need not be admissible to be discoverable. Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The documents requested are *highly* relevant to Plaintiff's claims. Namely, the Complaint alleges that the City has a policy, practice, and custom of failing to train, supervise, investigate or discipline their officers and that this policy, practice, and custom caused the Defendant Officers to deny Shayne's constitutional right to medical care. Compl. ¶¶ 111–45. Documents concerning other detainees who were denied medical care are thus directly relevant to establishing Plaintiff's proof of its claims at trial.

**The City's Objections to Request No. 13**

Request No. 13 to the City requests the production of "[d]ocuments sufficient to show the number of arrests made for drug possession or consumption by BPD in District 4 on an annual basis from January 1, 2014 through the present." The City objects on the grounds that the request is overly broad and "is not reasonably calculated to lead to the discovery of admissible evidence." Again, the City fails to explain the basis of its burden objection and cites the outdated standard for discovery in federal court.

Contrary to the City's boilerplate assertion that the request is "overly broad," Request No. 13 is targeted towards obtaining evidence related to Plaintiff's assertion that the City and the Defendant officers were well aware of the endemic drug use taking place in the D4 District and their familiarity with the symptoms of over-intoxication. The City and the Defendant Officers' awareness that Shayne was in a state of intoxication or over-intoxication at the time of his arrest and during his time in BPD custody is central to a number of Plaintiff's claims. If the City believes that responding to the request is somehow burdensome, it should articulate the reason why.

Alternatively, Plaintiff would consider negotiating a stipulation as to the prevalence of opioid use in the D4 District and the City and Defendant Officers' awareness of the same as Plaintiff does not believe there can be any reasonable dispute to this fact given the City of Boston's prior public statements in this regard. *See, e.g.*, City of Boston, Melnea Cass/ Mass Ave 2.0 Strategic Plan and Accomplishments,



Edward Whitesell
April 14, 2023
Page 3

available at https://www.boston.gov/sites/default/files/file/2020/09/CITY%20OF%20BOSTON%20MASS%20CASS%202.pdf (noting Roxbury, South End, South Boston, Dorchester and Newmarket Square "are most acutely impacted by the opioid epidemic").

**The City's Objection to Request No. 22**

Request No. 22 to the City requests the production of documents "sent to or from any BPD or City employee between May 28, 2019 and July 14, 2019, regarding Mr. Geigel, substance use disorder, OUD, Mass and Cass, methadone mile, opioids, fentanyl, intoxication, overdose, booking procedures, monitoring of cells, administration of Narcan, and/or seeking outside medical care or assistance." The City objects on the grounds that the request is overbroad, "not reasonably calculated to lead to the discovery of admissible evidence", and "seeks attorney-client communications and/or work product protected information." The City's objections to Request No. 22 are baseless.

*First*, the requested materials are highly relevant. As the request suggests and as alleged in the Complaint, on May 27, 2019, Mr. Geigel passed away in BPD custody under similar circumstances to Shayne. Moreover, not only was Mr. Geigel also at the District 4 lockup, but Officer Almeida—the same officer who booked Shayne and walked by Shayne's cell throughout the night of his death—was also the officer responsible for conducting cell checks the night of Mr. Geigel's death. In particular, Plaintiff alleges that the BPD "did not implement any new or additional training as a result of Mr. [Geigel]'s death, nor did it change any of its policies or protocols." Compl. ¶ 134. That allegation supports Plaintiff's claim that "the BPD deliberately, unreasonably, and unconstitutionally continued to implement an inadequate training program for their employees that was the moving force in Shayne's death." Compl. ¶ 135. If the City intends to nevertheless maintain its relevancy objection, please articulate the City's position without the use of mere boilerplate language in a manner proscribed by the Federal Rules.

*Second*, Plaintiff's request is on its face not overly broad. Plaintiff requests materials from a limited 47-day period. Moreover, Plaintiff requests a narrow scope of materials relevant to the circumstances of Mr. Geigel's death, which is directly relevant to Plaintiff's claims at issue in this matter as described above.

*Third*, the City's privilege objection is a distraction and does not provide a basis for the City's refusal to produce responsive documents. Plaintiff is not requesting privileged communications. If the City is withholding privileged communications that are otherwise responsive to this request, the City should so state and then comply with its obligations under Rule 26(b)(5).

**The City's Objections to Request No. 24**

Request No. 24 to the City requests the production of "documents concerning complaints regarding clothing or property that was not returned to people in BPD custody from January 1, 2014, to the present, and records of the investigation and adjudication of those complaints . . . ." The City objects to this request



Edward Whitesell
April 14, 2023
Page 4

as "overly broad, unreasonably cumulative, and unduly burdensome," and as "not reasonably calculated to lead to the discovery of admissible evidence." These objections similarly lack merit.

The City has set forth no basis for its assertion that the Request is "overly broad," "unreasonably cumulative," or "unduly burdensome." In reality, the request is narrowly directed in the subject matter sought and is also limited in time. Further, the information sought is relevant to Plaintiff's claims in this case. As alleged in the Complaint, BPD officers intentionally discriminated against those living with opioid use disorder ("OUD") because of their disease. *Id.* ¶ 10. Namely, Plaintiff alleges that the City treats those who are suffering from OUD and are in need of medical attention worse off compared to other detainees who are in need of medical care simply because of their diagnosis. As the First Circuit has noted, direct "smoking gun" evidence of discrimination is "rarely found" in the record. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 171 n. 13 (1st Cir. 1998); *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000). Accordingly, "discriminatory motive is more often demonstrated through indirect evidence." *Hodgens*, 144 F. 3d at 171 n. 13. It is Plaintiff's position that the fact BPD lost Shayne's possessions while he was in their custody, including the clothes that Shayne wore the night he died, is indirect evidence relevant to proving the City and its employees' intentional discrimination. *See* Compl. ¶¶ 93–94. Likewise, the BPD employees' treatment of the clothing and property of other individuals in BPD custody is relevant to the BPD and its employees' attitudes and views towards such individuals, and in particular towards individuals suffering from OUD.

### The City's Objections to Request No. 25

Request No. 25 to the City requests the production of BPD communications concerning substance use, intoxication, over-intoxication, and/or overdose since January 1, 2014. The City objects on the grounds that the Request is "overly broad" and "is not reasonably calculated to lead to the discovery of admissible evidence." The City fails to explain how the request is purportedly "overly broad" and also relies again on a standard that does not define the scope of permissible discovery.

That aside, the communications requested, which are directed to the BPD and the City's knowledge and views concerning substance use and the City's employees' use of derisive terms when speaking about individuals suffering from disorders such as OUD and are limited in time, are unquestionably relevant to each of Plaintiff's claims. The City's boilerplate copy-and-paste argument that the communications related to substance use, intoxication, over-intoxication, and/or overdose are not relevant to Plaintiff's claims is not persuasive or credible.

### Almeida, Bertocchi, and Freire's Objections to Request No. 6

Request No. 6 seeks documents concerning arrests, made, or assisted, by each respective Defendant in their capacity as a BPD officer, for drug possession. Almeida, Bertocchi, and Freire assert several objections to this Request, each of which lacks merit.



Edward Whitesell
April 14, 2023
Page 5

*First,* Almeida, Bertocchi, and Freire object to Request No. 6 to the extent it seeks "confidential and private information covered by the investigatory privilege." However, to the extent the investigatory privilege is ever applicable, it is a qualified privilege that only applies to documents that would tend to reveal law enforcement investigative techniques or sources where the public interest in nondisclosure outweighs the need of a particular litigant to access the information. *Kelley v. Town of Plymouth*, 2008 WL 11510841, at *4 (D. Mass. Mar. 31, 2008); *see* Mass. R. Evid. 515. The documents requested in Request No. 6 would not reveal law enforcement investigative techniques or sources. In any event, to the extent Almeida, Bertocchi, and Freire have withheld any requested information responsive to any of the Estate's requests under a claim of privilege, please confirm that they will timely provide a privilege log in accordance with the requirements of Rule 26(b)(5).

*Second*, Almeida, Bertocchi, and Freire include the same boilerplate objections that Request No. 6 is "overly broad, unreasonably cumulative, and unduly burdensome" and "not reasonably calculated to lead to the discovery of admissible evidence." Same as the City, the Defendant officers fail to explain the basis of their burden and relevance objections, which similarly rely on an outdated standard. This information is clearly relevant as described above in the context of Request No. 13 to the City. As noted above, Plaintiff would consider negotiating a stipulation as to the prevalence of opioid use in the D4 District.

**Almeida, Bertocchi, and Freire's Objections to Request Nos. 14 and 15**

Request No. 14 requests all documents sent to the Defendant Officers "by any BPD or City employee between May 28, 2019 and July 14, 2019, regarding Mr. Geigel, substance use disorder, OUD, Mass and Cass, methadone mile, opioids, fentanyl, intoxication, overdose, booking procedures, monitoring of cells, administration of Narcan, and/or seeking outside medical care or assistance." Request No. 15 requests all communications set to or by the Defendant Officers since January 1, 2014 "concerning substance use, intoxication, over-intoxication, and/or overdose." The Defendant Officers object to these Requests on the grounds that the Requests are "overly broad" and "not reasonably calculated to lead to the discovery of admissible evidence." Defendant Officers' objections are without merit for the same reasons explained above in the context of the City's objection to Request Nos. 22 and 25.

**Almeida, Bertocchi, and Freire's Objections to Request No. 12**

Almeida, Bertocchi, and Freire object to Request No. 12, which seeks documents concerning tax returns, as being "overly broad, unreasonably cumulative, and unduly burdensome." However, they have failed to explain why this Request is purportedly overbroad, especially given that the Estate limited the time period for the request to January 1, 2019, to the present. Almeida, Bertocchi, and Freire have also failed to explain why it would be too burdensome to collect this information, or how that burden outweighs its relevance. Rule 26(b) permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevancy must be construed broadly at the discovery stage such that information is discoverable if there is any possibility it might be relevant to any issue that is or may be in the case. *Green*, 152 F. Supp. 3d at 34. This Request is relevant to the Estate's claims in



Edward Whitesell
April 14, 2023
Page 6

this litigation, specifically Almeida, Bertocchi, and Freire's ability to pay damages. It is well-settled in the First Circuit that income tax returns are discoverable where the returns are relevant to claims of the parties. *See Baillargeon v. CSX Transp., Inc.*, 2022 WL 1104588, at *2 (D. Mass. Apr. 13, 2022) (quoting *Viscito v. Nat'l Planning Corp.*, 2019 WL 5318228, at *3 (D. Mass. Oct. 21, 2019)). Therefore, documents concerning Almeida, Bertocchi, and Freire's tax returns since January 1, 2019, are discoverable.

### The City, Almeida, Freire, and Bertocchi's Interrogatory Responses Generally

The City, Almeida, Freire, and Bertocchi repeatedly invoke Rule 33(d) in their responses but fail to comply with their obligations when relying on that Rule when responding to an interrogatory.[1] "To rely on Rule 33(d), a party must satisfy four criteria: (1) it must affirm that the information sought by the requesting party is in fact in the specified records; (2) it must specify the actual documents where information will be found; (3) it must show that answering the interrogatory in the conventional manner would impose a burden on it; and (4) it must show that the burden of deriving the answer from the specified records will be substantially the same for both parties." *AMAG Pharms., Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. 21-CV-10618-LTS, 2022 WL 16950437, at *6 (D. Mass. Nov. 15, 2022) (internal citations omitted). The Defendant Officers' responses relying on Rule 33(d) do not meet any of these minimum requirements. "If [the responding party] cannot comply with these requirements, [the responding party] must otherwise answer the interrogatory fully and completely." *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997). Please supplement all interrogatory responses relying on Rule 33(d) to either meet the requirements of the rule or provide a substantive written response.

### Freire's Response to Interrogatory No. 4

Interrogatory No. 4 to Freire seeks information concerning training Freire received at the Academy and during her time at BPD and requests that such training be "describe[d] in detail." In her response, Freire states that during her training, "the rules on monitoring cells were covered in the booking class." Freire also states that she "was trained in recognizing an overdose and what to do in those situations, including watching a training video while at the Academy." However, Freire does not describe these referenced trainings in detail. Please confirm that Freire will supplement her response to Interrogatory No. 4 to discuss the training she received regarding the "rules on monitoring cells" and the training she received "in recognizing an overdose and what to do in those situations" in detail, including, but not limited to, providing a description of who delivered such training and the content and format of such training.

Further, Freire references a "training video" she watched while at the Academy. Documents, including but not limited to training materials and personal notes, concerning this training are responsive

---

[1] These include the City's Responses to Interrogatory Nos. 1, 2, 3, 9, 13, 15, 17, 18, and 19; Almeida's Responses to Interrogatory Nos. 1, 2, 3, 4, 5, and 14; Freire's Responses to Interrogatory Nos. 1, 2, 3, 4, 7, and 8; and Bertocchi's Responses to Interrogatory Nos. 1, 2, 3, 4, 7, 9, and 14.



Edward Whitesell
April 14, 2023
Page 7

to at least Request No. 11.  Please confirm that Freire will produce any documents concerning this training referenced in her response to Interrogatory No. 4.

**Freire's Response to Interrogatory No. 8**

Interrogatory No. 8 to Freire seeks information concerning reports, documents or emails Freire wrote or received, and any conversations, interviews, or communications Freire had, regarding Shayne on or after July 14, 2019.  In her response, Freire states that she received a text message from her supervisor, Lt. Foley, informing her that she had been named in this lawsuit.  This text message is responsive to at least Request No. 1.  Please confirm that Freire will produce the text message referenced in her response to Interrogatory No. 8.

**Bertocchi's Response to Interrogatory No. 10**

Interrogatory No. 10 to Bertocchi seeks information concerning "every instance where a person either in BPD custody or interacting with a BPD officer experienced an overdose while You were working as a BPD officer, *including but not limited to Shayne and Mr. Geigel*." (emphasis added).  As emphasized, the information sought by Interrogatory No. 10 is not limited to Shayne and Mr. Geigel.  If Bertocchi's response to Interrogatory No. 10 is complete, then please confirm that Shayne and Mr. Geigel were the only two individuals that Bertocchi is aware of having overdosed, or suspected to have overdosed, while Bertocchi was working as a BPD officer.  If not, please confirm that Bertocchi will supplement his response to Interrogatory No. 10.

**Bertocchi's Response to Interrogatory No. 11 and Almeida's Response to Interrogatory No. 16**

Interrogatory No. 11 to Bertocchi and Interrogatory No. 16 to Almeida seek information concerning instances in which each has "sought outside medical assistance for a person who was either in BPD custody or interacting with a BPD officer, *including but not limited to the basis for seeking outside medical assistance, and the outcome for the involved person*." (emphasis added).  In response, Bertocchi merely states that there are "too many occasions to list" and Almeida merely states that "he has responded to hundreds of calls in which an individual required outside medical assistance" and "has interacted with hundreds of individuals who required outside medical assistance."  These responses are facially insufficient and do not comply with the Federal Rules.  Rule 33 requires that each interrogatory be answered "*fully*."  Bertocchi and Almeida must supplement their responses to provide the information sought, which Defendants do not and cannot dispute is relevant to the claims at issue in this matter.

**Almeida's Response to Interrogatory No. 18**

Interrogatory No. 18 to Almeida seeks information regarding "any documents or communications You sent to or received from BPD or the City on or after July 14, 2019 regarding Shayne, substance use disorder, OUD, intoxication, overdose, booking procedures, cell monitoring, administration of Narcan, and/or seeking outside medical assistance for people in BPD custody."  Almeida stated that "he refers to



Edward Whitesell
April 14, 2023
Page 8

Answer No. 14." Almeida's response to Interrogatory No. 14 does not identify any documents or communications regarding substance use disorder, OUD, intoxication, overdose, booking procedures, cell monitoring, administration of Narcan, and/or seeking outside medical assistance for people in BPD custody." Please confirm that Almeida is unaware of the existence of any other responsive communications or supplement the response to identify any such communications responsive to Interrogatory No. 18.

**The City's Response to Interrogatory Nos. 11, 12, and 16**

Interrogatory No. 11 calls for information concerning "instance[s] since January 1, 2014 in which an individual who was being held in BPD custody experienced an overdose . . . and for each instance identified, describe in detail any related investigations . . . ." Interrogatory No. 12 calls for information concerning "instance[s] since January 1, 2014 in which a BPD officer provided medical assistance to or otherwise sought outside medical assistance on behalf of a person who was in BPD custody . . . and for each instance identified, identify and describe the reason for seeking outside medical assistance." Interrogatory No. 16 seeks "any complaints or grievances regarding the BPD's failure to collect, retain, or return the clothing or property of a person was held in their custody since January 2014 . . . ."

The City objects to Interrogatory Nos. 11, 12, and 16 as being "overly broad, unduly burdensome, and not proportional to the needs of the case." However, the City has failed to explain why these Interrogatories are purportedly overbroad, especially given that the Estate limited the time period to January 1, 2014, to the present. The City has also failed to explain why it would be too burdensome to collect this information, or how that burden outweighs its relevance. Rule 26(b) permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevancy must be construed broadly at the discovery stage such that information is discoverable if there is any possibility it might be relevant to any issue that is or may be in the case. *Green*, 152 F. Supp. 3d at 34. These Interrogatories are narrowly tailored to subject matter that is directly relevant to the Estate's claims in this litigation, including for the reasons explained above.

Accordingly, please confirm that the City will supplement its responses to Interrogatory Nos. 11, 12, and 16.

**The City's Response to Interrogatory No. 14**

Interrogatory No. 14 seeks an identification of each officer who appears "*in the entirety* of video surveillance taken when Shayne was in BPD custody on July 14, 2019." The City responded by identifying officers that appear in the Booking Desk Video, Cell 19 Video, Holding Cell Video, and Sally Port Video. First, there are individuals that appear in these particular videos that were not identified in the City's response, including at least at the following times: Holding Cell Video at 7:41, 8:42, 11:52, 12:01, 20:19, 23:30; Booking Desk Video at 22:26, 22:33, Cell 19 Video at 2:17, 2:48, 5:28. Additionally, it is evident that these videos, although they lack timestamps, do not make up the entirety of the video surveillance taken while Shayne was in BPD custody. Please confirm that the City



Edward Whitesell
April 14, 2023
Page 9

will supplement the response to Interrogatory No. 14 to identify the officers present in all of the video surveillance taken when Shayne was in BPD custody on July 14, 2019, including at least by identifying the individuals outside of Cell 19 at timestamp 2:22:28 AM, 4:43:15 AM, and 5:38:54 AM.

**The City's Response to Interrogatory Nos. 21–23 and Almeida's Response to Interrogatory Nos. 8–12**

      Interrogatory Nos. 21–23 to the City and Interrogatory Nos. 8–12 to Almeida seek information regarding the bases for the City's Seventh, Eighth, and Ninth Affirmative Defenses and the bases for a number of Almeida's affirmative defenses. The City and Almeida each state that discovery is ongoing and they will supplement these responses in accordance with the Federal Rules of Civil Procedure. While the City and Almeida can supplement the responses at a later date in accordance with the Rules, they must be able to speak now to the basis for asserting the Affirmative Defenses in their Answer.

\*   \*   \*

      As noted above, to the extent Defendants are not willing to supplement their Responses by April 26, 2023, and also confirm by that date that Defendants will produce the requested documents sufficiently in advance of the close of fact discovery to facilitate deposition scheduling, please provide your availability for a meet and confer to discuss these issues next week.

Sincerely,


/s/Alexandra D. Valenti