# EXHIBIT J

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, DAVID MARSHALL, and JOHN/JANE DOE NO. 1,<br><br>Defendants. | Civil Action No. 1:22-CV-11009 |

### NOTICE OF DEPOSITION UNDER FED. R. CIV. P. 30(b)(6)

Pursuant to Federal Rule of Civil Procedure 30(b)(6), you are hereby notified that counsel for Plaintiff Lynnel Cox, as administrator of the estate of Shayne R. Stilphen, will take the deposition of the City of Boston through its designated representative(s) on July 27, 2023 at 9:00 AM, at the office of Goodwin Procter LLP, located at 100 Northern Avenue, Boston, Massachusetts 02210. Examination of the designated representative(s) will be directed, but not limited, to the topics described in the attached Schedule A. The deposition will be taken before a notary public or other person authorized by law to administer oaths and will be recorded by stenographic means and/or by video. The deposition will continue from day to day until completed. You are invited to attend and cross-examine.

Plaintiff requests that the City of Boston identify in writing, at least one week in advance of the deposition, the name(s) of the representative(s) who will testify on its behalf, and the topic(s) on which each representative will testify.

1

May 31, 2023

**LYNNEL COX,** *as administrator of the estate of Shayne R. Stilphen*
By her attorneys,

*/s/ Robert Frederickson III*
Robert Frederickson III (BBO #670111)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570-1000
rfrederickson@goodwinlaw.com

Matthew R. Segal (BBO #654489)
Jessie J. Rossman (BBO # 670685)
Alexandra Arnold (BBO #706208)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
Tel.: (617) 482-3170
msegal@aclum.org
jrossman@aclum.org
aarnold@aclum.org

Alexandra D. Valenti (*Pro hac vice*)
Christine Armellino (*Pro hac vice*)
Gabriella Montes (*Pro hac vice*)
Wrenne Bartlett (*Pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 459-7351
avalenti@goodwinlaw.com
carmellino@goodwinlaw.com
gmontes@goodwinlaw.com
wbartlett@goodwinlaw.com

Matthew Ginther (*Pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
mginther@goodwinlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 31, 2023, a true and correct copy of the foregoing was served on counsel of record for all parties by electronic mail.

<em>/s/ Robert Frederickson III</em>

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. The timeframe for each topic is from January 1, 2017, to the present unless otherwise specified.

2. "The City" refers to the City of Boston.

3. "BPD" means the Boston Police Department, a component of the City.

4. "District 4" refers to the area within Boston designated by the BPD as District D-4.

5. "City Employee" means any employee of the City, including BPD officers of all ranks and titles.

6. "Detainee" means any person in BPD's custody including arrestees, regional lockups, pretrial detainees, and sentenced prisoners.

## TOPICS

1. The duties and responsibilities of City Employees working in the BPD's police station(s), including the intake and booking of detainees and 15-minute cell visits.

2. The BPD's policies, procedures, practices, and training since January 1, 2016, both of cadets at the BPD Academy and to officers through continuing education and/or recertification, concerning:

   a. Booking and intake of Detainees;

   b. Cell visits and monitoring of Detainees;

   c. The collection, preservation, and return of Detainee property;

   d. Identifying and responding to sick or injured Detainees and medical emergencies of Detainees, including when and how to obtain medical evaluations and medical assistance for Detainees;

   e. The custody and care of potentially suicidal Detainees;

4

      f.    Identifying and responding to suspected intoxication or overdose of Detainees;

      g.    The custody and care of Detainees believed to have consumed opioids or other substances and Detainees believed to be experiencing overdose from opioids or other substances;

      h.    Substance use disorder, including opioid use disorder, in the context of Detainees;

      i.    The requirements of the Americans with Disabilities Act in the context of Detainees;

      j.    The investigation of in-custody deaths; and

      k.    If any of the policies, procedures, practices, and training in subsection (a) – (j) changed during this period of time and the reasons for such changes.

3.    All investigations into any aspect of BPD's custody of Cristhian Geigel or his death—including but not limited to SA 2019-008, Death Investigation Incident # I192039589, homicide unit investigations, internal affairs investigations, and investigations of individual City Employees and/or the District 4 Station as a whole—for violations of any policies, procedures, practices, rules, orders, guidelines, protocols, customs, or training, including:

      a.    For each investigation, the process for the investigation, including but not limited to the evidence that was reviewed, the people who were interviewed, the person/people who decided which evidence to review and people to interview, the staffing of the investigation, the schedule for the investigation, the findings of the investigation, and any recommendations from the investigation;

      b.    For any investigation that concluded there was a violation, any policy change, additional training, employee discipline, termination or other action taken by BPD in response; and

      c.    For any investigation that concluded there was not a violation or no reason for policy change, additional training, employee discipline, or termination, the reasoning for that finding.

4.    All changes to BPD policies, procedures, practices, rules, orders, guidelines, or training since Cristhian Geigel's death on May 27, 2019.

5.    All BPD trainings or communications prompted by Cristhian Geigel's death.

6. All investigations into any aspect of BPD's custody of Shayne Stilphen or his death—including but not limited to Death Investigation Incident # I192054058, IAD 2019-0519, SA 2019-014, homicide unit investigations, internal affairs investigations, and investigations of individual City Employees and/or District 4 as a whole—for violations of any policies, procedures, practices, rules, orders, guidelines, protocols, customs, or training, including:

    a. For each investigation, the process for the investigation, including but not limited to the evidence that was reviewed, the people who were interviewed, the person/people who decided which evidence to review and people to interview, the staffing of the investigation, the schedule for the investigation, the findings of the investigation, and any recommendations from the investigation;

    b. For any investigation that concluded there was a violation, any policy change, additional training, employee discipline, termination or other action taken by BPD and/or the City in response;

    c. For any investigation that concluded there was not a violation or no reason for policy change, additional training, employee discipline, or termination, the reasoning for that finding; and

    d. Any investigation related to the loss or misplacement of Shayne Stilphen's clothing.

7. All complaints, grievances, investigations, employee discipline, and lawsuits from 2016 to the present in which there was an allegation that City Employees acted in violation of city, state or federal law, or contrary to BPD and/or City policy, related to the same subject matter as topics 2(f)-2(j), above.

8. Any and all lawsuits against the City or any City Employees alleging inadequate medical care for detainees or denial of medical care to detainees from 2016 to the present.

9. The number or approximate number of Detainees held in any BPD facility for any length of time, from 2016 to the present, who:

    a. Were hospitalized each year while in BPD custody as a result of overdose from opioids or other drugs, respectively;

    b.  Died of as a result of opioids or other drugs, respectively, each year while in BPD custody; or

    c.  Died as a result of any other cause each year while in BPD custody.

10.  The circumstances of each death described in 9(b) and 9(c), and any changes to BPD's policies, practices, or procedures as a result or in response.

11.  Communications, reports, or responses to inquiries concerning Cristhian Geigel or Shayne Stilphen with the Mayor's office, Boston City Council, the Suffolk County District Attorney's Office, or any state or federal agency.

12.  BPD and/or the City's method of tracking, compiling, and reviewing incidences of in-custody illness and/or death, including illness and/or death arising from opioids or other drugs.

13.  BPD and/or the City's policies, procedures, and practices related to periodically reviewing or amending BPD and/or City policies, practices, and procedures.

14.  BPD and/or the City's method of collecting, holding, and returning property of Detainees or others in BPD custody.

15.  Discipline and training histories of Ismael Almeida, Paulmichael Bertocchi, Catia Freire, David Marshall, and Brian Picarello.

16.  BPD and/or the City's knowledge of the opioid crisis generally and at the "Mass and Cass" location specifically.

17.  BPD and/or the City's knowledge of the increased nationwide prevalence of in-custody illness and/or death attributed to opioids or other drugs.

18.  BPD and/or the City's knowledge of changes in policies, practices, or procedures related to detention of inmates or pre-trial detainees adopted by other jurisdictions to mitigate the risk of in-custody illness or death resulting from opioids or other drugs.

19. Any discussions, deliberations, or decisions made by BPD and/or the City to revise, amend, enforce, or otherwise change its practices, policies, and procedures to mitigate the risk of in-custody illness or death resulting from opioids or other drugs from 2016 to present.

20. All documents produced by BPD in this litigation, including their custodian, source, and authenticity.