UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-11009-RGS

LYNNEL COX, as Administrator of the Estate of Shayne R. Stilphen,

Plaintiff,

v.

BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE and BRIAN PICARELLO,

Defendants.

### DEFENDANTS' MOTION TO BIFURCATE TRIAL AND INCORPORATED MEMORANDUM OF LAW

Now come Defendants City of Boston (the "City"), Ismael Almeida, Paulmichael Bertocchi, Catia Freire, and Brian Picarello ("Defendants") and hereby move this Honorable Court to bifurcate the trial in this matter. Plaintiff's claims against the City concern prior bad act evidence that would normally be inadmissible against the individual officers, thus causing the individual officers enormous prejudice if the two sets of claims were tried together. Moreover, a trial of both the claims against the individual officers and the claims against the City would unduly complicate the evidence presented to the jury. Bifurcation is necessary to ensure that the individual officers receive a fair trial, as well as to promote judicial economy.

Defendants have conferred about this motion with Plaintiff, who opposes it and intends to submit an opposition.

1

I.      **Factual Background**

Plaintiff's § 1983 and wrongful death claims against the individual defendants concern events that occurred in a five-hour span on one day—July 14, 2019. The decedent, Shayne Stilphen, was stopped and arrested for breaking and entering into a car at around 1:00 AM. He was brought back to the D-4 station at around 1:30 AM, placed in a group holding cell, booked, and then placed in an individual cell around 2:20 AM. After ingesting drugs in his cell and overdosing, Stilphen was discovered unresponsive at around 5:50 AM.

By contrast, Plaintiff's *Monell* claim against the City of Boston, regarding the City's customs or policies with respect to the provision of medical care for arrestees, concerns incidents that took place at the D-4 station in the months prior to Stilphen's death. Specifically, Plaintiff's Opposition to Defendants' Motion for Summary Judgment cites an incident involving an arrestee named Cristhian Geigel, who died of a drug overdose in his cell at D-4 in May 2019.  The Opposition states that "[d]espite suffering a lethal overdose, Mr. Geigel was left face down on his cell bench for more than thirteen hours after he took his last breath without receiving any attention from the BPD officers on duty." (Opp. 24). The Opposition also mentions an incident involving an arrestee named Elbert Copeland, who was brought to the D-4 station for operating under the influence of alcohol in April 2019. The Opposition asserts that "[a]lthough [Copeland] was experiencing a stroke, the officers, including Officer Almeida, assumed that his symptoms were due to alcohol intoxication." (Opp 37–38).[1] Both the Geigel and Copeland incidents took

---

[1] The introduction of the Copeland incident would bring with it a substantial dispute of fact that would require multiple witnesses and a great deal of time to properly litigate.  Specifically, Plaintiff alleges in her Opposition to Defendants' Motion for Summary Judgment that "[a]lthough [Copeland] was experiencing a stroke, the officers, including Officer Almeida, assumed that his symptoms were due to alcohol intoxication." (Opp. 37–38). But in discovery, Defendants produced reports indicating that even the nurses and physicians who attended to Copeland for a period of six to seven hours thought that he was intoxicated on alcohol. To

2

place at the D-4 station in 2019, and both involved Ismael Almeida, the D-4 booking officer, who is a defendant in this case. Officer Almeida was subsequently investigated and disciplined by internal affairs for the Copeland incident.

In addition to the Monell claim, Plaintiff brings a claim under the Americans with Disabilities Act against the City. This claim alleges that police officers denied Stilphen adequate medical care on the basis of "stereotypes of the disabled rather than an individualized inquiry into the plaintiff's conditions." *Buchanon v. Maine*, 469 F.3d 158, 176 (1st Cir. 2006). In support of her ADA claim, Plaintiff cites the Copeland incident as well as reports and deposition testimony of the internal affairs detectives who investigated Stilphen's death. (Opp. 37–38). Plaintiff contends the internal affairs detectives "switched their conclusions" in the reports based on information they gathered regarding the frequency with which officers in D-4 would see signs and symptoms of drug use.  (Opp. 37).

## II.     Argument

Pursuant to Fed. R. Civ. P. 42(b), this Court may order separate trials of one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Only one of the criteria set forth in Rule 42(b) need be present for the Court to order a separate trial. *See Ricciuti v. New York City Transit Auth'y*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) (it is "established that bifurcation requires the presence of only one of these conditions"). "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants." *Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 658 (D. Colo. 1980).

---

properly defend against the claim involving Copeland, Defendants would have to introduce Copeland's medical records and call officers at the D-4 station and medical staff from Tufts Medical Center to testify regarding their observations about Copeland's apparent intoxication.

3

A. Bifurcation Is Necessary to Ensure the Individual Defendants Receive a Fair Trial.

Federal Rule of Evidence 404(b)(1) bars the use of any other "crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In addition, under Fed. R. Evid. 403, the court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Bifurcation is warranted when the officers face potential undue prejudice because evidence against the city might contaminate issues relating to the officers. *See Hutchins v. McKay*, 285 F.Supp.3d 420 (D. Mass. 2018) (prior bad acts by the individual officers relevant to the Monell claim, but inadmissible against individual officers). Here, Plaintiff cites evidence in support of the *Monell* claim that includes incidents that took place at the D-4 station in the months prior to Stilphen's death. Both incidents took place at the D-4 station in 2019, and both involved Ismael Almeida, the D-4 booking officer, who is a defendant in this case. The inclusion of this evidence in the trial against Almeida and the other individual officers is exactly what Fed. R. Evid. 404(b)(1) was intended to preclude. *See Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (evidence of prior bad acts excluded from trial of individual officers and separate trial held for claims against the city). There is also a danger that prior bad acts evidence of one officer will influence the jury in their consideration of the liability of the other officer defendants.

In her opposition to Defendants' Motion for Summary Judgment, Plaintiff cites an unpublished decision, *de Tavarez v. City of Fitchburg*, Civ. No. 11-11460-TSH, 2014 WL 533889 (D. Mass. Feb. 6, 2014), for the proposition that the prior incidents are somehow relevant to Officer Almeida's "knowledge of the significant risks of harm facing [Stilphen] based on his

4

opioid intoxication . . . ." (Opp. 24). Here Plaintiff appears to contrive a factual dispute as a transparent pretext for offering illicit propensity evidence about Officer Almeida. There is no evidence in the record that Officer Almeida lacked knowledge that arrestees detained at the police station can die of a drug overdose. To the extent that Officer Almeida's knowledge of the Geigel incident is relevant in some minuscule measure, the probative value of the evidence is massively outweighed by the prejudice he would suffer from the admission of the Geigel incident–a point that goes undiscussed in *de Tavarez*. It would be patently unfair for Plaintiff to use Officer Almeida's limited involvement in the Geigel incident to convince the jury that he and the other defendants must also have engaged in misconduct in this case.

Moreover, the evidence relating to the ADA claim would also contaminate the claims against the individual officers. Not only would the Plaintiff bring evidence of the Copeland incident, but she would also reference the conclusions of the internal affairs investigations regarding violations of Boston police rules. The latter evidence would unduly prejudice the defendants and cause the jury to confuse rule violations with constitutional violations. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005) (trial court properly excluded evidence of police department's standard operating procedures because they would cause jury to mistake violations of procedures as constitutional violation).

Bifurcation is necessary in this case in order to ensure that the individual defendant officers are given a fair trial. No limiting instructions would suffice to cure the prejudice to the defendant officers if the plaintiff were to present evidence of previous incidents as is necessary in order to make the *Monell* claim.

B.  Bifurcation Will Promote Judicial Economy.

The existence of a constitutional injury is an essential element to the *Monell* claim. *See City of Los Angeles v. Heller*, 47 U.S. 796, 799 (1986). An officer's municipality cannot be found liable without first finding that the officer actually caused a constitutional injury in this particular incident. *Id*. Accordingly, Section 1983 requires the jury to engage in a bifurcated analysis of the evidence. Courts often bifurcate Section 1983 claims by first trying the individual defendants, followed by a separate trial against the municipality if the jury finds a constitutional injury has occurred. *See Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002) (the result of the first trial against an officer often makes the second trial against the municipality unnecessary, saving the litigants and the court time and money).

Under the scenario that the officer is not found to have committed a constitutional injury at the first trial, the second trial is unnecessary because the officer actually committing a constitutional harm is an essential element of the Section 1983 claim.[2] *See Heller*, 47 U.S. at 799

---

[2] The City acknowledges that a second trial would involve not only the *Monell* claim but also Plaintiff's claim under the Americans with Disabilities Act. However, the City continues to maintain that the ADA claim is barred by the express language of the statute, according to which a person "currently engaging in the illegal use of drugs" does not meet the definition of a "qualified individual with a disability." *See* 42 U.S.C. 42114(a). In the portion of its Order denying the City's motion to dismiss the ADA claim, the Court cited a subregulation, 28 CFR § 35.131(a)(1), but quoted the text of a separate subregulation, 28 CFR § 35.131(b)(1). (Order 15). To the City's knowledge, § 35.131(b) has only ever been referenced in two previous federal decisions, both allowing motions to dismiss of pro se plaintiffs' complaints and offering no interpretation of the regulation's provisions. *See Faircloth v. Timme*, 2013 WL 1232310 (D. Colo. March 27, 2013); *Thorne v. Hale*, 2009 WL 890136 (E.D. Va. Marc 26, 2009). By its own terms, 28 CFR § 35.131(b) applies only to entities that provide health or drug rehabilitation services, as the title of the subsection is "Health and drug rehabilitation services," and the text of the regulation deals with the denial of "health services, or drug rehabilitation services." *See* 28 CFR § 35.131(b)(1). Likewise, Appendix B to Part 35 does not contemplate that the regulation applies to any setting outside of a health care facility or rehabilitation program, let alone to overnight or weekend detention at a police station:

(court found no constitutional violation by officer in first trial was dispositive in case against city); *see also Henderson*, 807 F.3d at 11 (court found no constitutional violation against officers in first trial and dismissed case against city); *Wilson*, 294 F.3d at 7 (bifurcation upheld as classic exercise of court's discretion especially where verdict in first trial forecloses further action against municipality). "In recognition of this principle, courts will commonly bifurcate the consideration of any municipal claim until after the trial of the underlying claim of a constitutional violation. As a matter of judicial economy, this makes sense: a second trial is necessary only if a violation is established and then, only if the municipality declines to satisfy the underlying judgment (which in the court's experience is rarely, if ever, the case)." *Davila-*

---

> Paragraph (b) provides a limited exception to the exclusion of current illegal users of drugs from the protections of the Act. It prohibits denial of health services, or services provided in connection with drug rehabilitation to an individual on the basis of current illegal use of drugs, if the individual is otherwise entitled to such services. **A health care facility, such as a hospital or clinic**, may not refuse treatment to an individual in need of the services it provides on the grounds that the individual is illegally using drugs, but it is not required by this section to provide services that it does not ordinarily provide. For example, **a health care facility that specializes in a particular type of treatment, such as care of burn victims**, is not required to provide drug rehabilitation services, but it cannot refuse to treat a individual's burns on the grounds that the individual is illegally using drugs.
>
> Some commenters pointed out that abstention from the use of drugs is an essential condition of participation in some **drug rehabilitation programs**, and may be a necessary requirement in **inpatient or residential settings**. The Department believes that this comment is well-founded. Congress clearly intended to prohibit exclusion from drug treatment programs of the very individuals who need such programs because of their use of drugs, but, once an individual has been admitted to a program, abstention may be a necessary and appropriate condition to continued participation. The final rule therefore provides that a **drug rehabilitation or treatment program** may prohibit illegal use of drugs by individuals while they are participating in the program.

28 C.F.R. § 35 app. B (2010) (emphasis added).

*Lynch v. City of Brockton*, Civ. No. 09-10817-RGS, 2011 WL 4072092, at *6 (D. Mass. Sep. 12, 2011) (citing *Wilson*, 294 F.3d at 7).

Plaintiff will not be prejudiced if the trial is bifurcated. The burden of proving a constitutional harm on the part of the officers remains an element of the case regardless. *See Town of Mendon*, 294 F.3d at 8. At the very least, Plaintiff cannot point to any prejudice that she would suffer as a result of bifurcation that would outweigh any prejudice that Officer Almeida and the officer defendants would suffer if the trial were not bifurcated.

### III. Conclusion

For the foregoing reasons, Defendants respectfully request that this Court bifurcate the trial in this matter.

> Respectfully submitted,
>
> **CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE and BRIAN PICARELLO**
> By their attorneys:
>
> ADAM CEDERBAUM
> Corporation Counsel
>
> /s/ Randall F. Maas
> Edward F. Whitesell, Jr. (BBO#644331)
> Senior Assistant Corporation Counsel
> Randall Maas (BBO# 684832)
> Assistant Corporation Counsel
> City of Boston Law Department
> City Hall, Room 615
> Boston, MA 02201
> (617) 635-4045 (Whitesell)
> (617) 635-4042 (Maas)
> edward.whitesell@boston.gov
> randall.maas@boston.gov

Dated: June 10, 2024

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

      I hereby certify that on June 10, 2024, I conferred with opposing counsel and attempted in good faith to resolve or narrow these issues.

                          */s/ Randall Maas*
                          Randall Maas

### **Certificate of Service**

      I, Randall F. Maas, hereby certify that on June 10, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to any non-registered participants.

                          /s/ Randall F. Maas
                          Randall F. Maas