UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-11009-RGS

| |
|---|
| LYNNEL COX, as Administrator of the Estate of Shayne R. Stilphen, <br><br> Plaintiff, <br><br> v. <br><br> ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE and BRIAN PICARELLO, <br><br> Defendants. |

**DEFENDANTS' MOTION *IN LIMINE* TO BAR INTRODUCTION OF EVIDENCE ON GEIGEL INCIDENT, COPELAND INCIDENT, AND OTHER PRIOR ACTS**

Defendants Ismael Almeida, Paulmichael Bertocchi, Catia Freire, and Brian Picarello ("Defendants") hereby move *in limine* to bar Lynnel Cox ("Plaintiff") from introducing evidence related to the Geigel incident, Copeland incident, and other deaths that occurred in BPD custody prior to the subject of this lawsuit. Introducing evidence on these prior events is irrelevant, unduly prejudicial, and acts as impermissible propensity evidence. Moreover, litigating these topics at trial will be time consuming and unduly complicate the evidence presented to the jury.

I.   **Factual Background**

Plaintiff's § 1983 and wrongful death claims against the individual Defendants concern events that occurred in a five-hour span on one day: July 14, 2019. The decedent, Shayne Stilphen, was stopped and arrested for breaking and entering into a car at around 1:00 AM. He was brought back to the D-4 station at around 1:30 AM, placed in a group holding cell, booked,

1

and then placed in an individual cell around 2:20 AM. After ingesting drugs in his cell and overdosing, Stilphen was discovered unresponsive at around 5:50 AM.

In prior briefing, Plaintiff references two particular incidents that took place at the D-4 station in the months prior to Stilphen's death. Plaintiff's Opposition to Defendants' Motion for Summary Judgment cites an incident involving an arrestee named Cristhian Geigel, who died of a drug overdose in his cell at D-4 in May 2019. Opp. to Mot. For Summary Judgment at 24. Geigel consumed drugs that he had smuggled into the cell, lay down on the cell bench, and died within a matter of minutes.  To the officers who conducted cell checks following Geigel's death, it appeared that Geigel was sleeping. In her Opposition to the Motion to Bifurcate, Plaintiff suggests that Geigel's death is relevant to this matter because it serves as evidence that Almeida and Bertocchi were aware of the possibility that an arrestee could fatally overdose while in BPD custody. Opp. To Mot. To Bifurcate at 5-6. In her proposed exhibit list for trial, Plaintiff includes documents related to the Geigel incident including the suicide investigation report, the cell video, officer memos, the prisoner inspection record, an incident report, and the autopsy report.[1] Plaintiff has also included on her witness list Sergeant Detective Charles Cellucci, the internal affairs investigator who investigated Geigel's death.

The opposition to the motion for summary judgment also mentions an incident involving an arrestee named Elbert Copeland, who was brought to the D-4 station for operating a motor vehicle under the influence of alcohol in April 2019. The Opposition asserts that "[a]lthough [Copeland] was experiencing a stroke, the officers, including Officer Almeida, assumed that his symptoms were due to alcohol intoxication." Opp. to Mot. For Summary Judgment at 37–38. Officer Almeida was subsequently investigated and disciplined by internal affairs for the

---

[1] In addition to arguments under Fed. R. Evid. 403 and 404, Defendants would also challenge the admissibility of reports related to the Geigel incident on hearsay grounds.

Copeland incident. Plaintiff lists the Copeland Internal Affairs report as a proposed exhibit for trial.

Defendants now move to preclude Plaintiff from introducing evidence related to the Geigel or Copeland incidents, as well as any other incidents of deaths that occurred in BPD custody prior to the subject of this lawsuit.

**II.    Argument**

To determine whether evidence on prior bad acts committed by a defendant may be admitted under Fed. R. Evid. 404(b), a trial court engages in a two-step analysis. First, it must determine whether the evidence has a "'special relevance' in that it is offered not to show a defendant's evil inclination but rather to establish some material fact," as included in the permissible uses of Rule 404(b)(2). United States v. Jambulat Tkhilaishvili, 926 F.3d 1, 15 (1st Cir. 2019) (quoting United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990)). Second, the court must balance the probative weight of the evidence against the prejudicial effect of such evidence, in accordance with Rule 403. Id. The introduction of evidence regarding prior incidents performs poorly on both elements of this analysis. Introducing evidence on these two prior incidents would add minimal permissible evidentiary value, substantially and unfairly prejudice the jury against Defendants, and lengthen and complicate the scope of litigated issues within the trial.

   A.  Evidence on the Geigel Incident is Minimally Probative and Highly Prejudicial

Presenting evidence on the Geigel incident as evidence that Defendants Almeida and Bertocchi had knowledge that a detained individual could fatally overdose while in custody adds minimal evidentiary value to Plaintiff's case. Federal Rule of Evidence 404(b)(1) bars the use of propensity evidence, or the use of any prior "crime, wrong, or act […] to prove a person's

3

character in order to show that on a particular occasion the person acted in accordance with the character." Plaintiff argues that introducing evidence on the Geigel overdose in this case falls under the exception of Rule 404(b)(2), which allows the use of prior acts to prove the Defendants had knowledge of a particular fact. Opp. To Motion to Bifurcate at 6. The ostensible argument is that because Almeida and Bertocchi were aware of the Geigel overdose, they had knowledge that an arrestee may fatally overdose while in custody of the police. Id. Plaintiff cites Boucher to support the claim that prior acts are admissible insofar as they relate to a party's knowledge of the probability of a particular event. Opp. To Motion to Bifurcate at 6 (quoting Boucher v. CVS/Pharmacy, Inc., 822 F. Supp. 2d 98, 104 (D.N.H. 2011)). Yet that case turned on a party's knowledge of her *own* past falls, which should have informed her that future falls were more likely. Boucher at 105. Plaintiff expands this principle to argue that since Defendants knew a bad outcome happened to one individual, it could happen to other individuals. This is a departure from the key fact pattern of Boucher, and far more expansive in terms of what can be admitted as evidence of a party's knowledge under Rule 404(b)(2).

Even taking Plaintiff's claims in the most generous light, the purported evidentiary value of introducing the Geigel incident is minimal. This is not a suit in negligence for which prior events are relevant to establishing a reasonable standard of care. The sole permissible evidentiary use of introducing the Geigel incident is to help establish what Defendants actually knew at the time of Stilphen's arrest and detention. Defendants' awareness of the Geigel incident–in which Geigel died while in a recumbent position on the cell bench–does nothing to establish deliberate indifference with respect to Stilphen.

The sole knowledge-related evidentiary value of the Geigel incident is that a fatal overdose while in custody is possible: a fact that no Boston Police Officer needs firsthand

4

knowledge of in order to understand. When courts do allow prior experiences to serve as evidence of a police officer's knowledge, the knowledge in question is typically specific and non-obvious. See, e.g., Burton v. City of Zion, 901 F.3d 772 (7th Cir. 2018) (holding admissible testimony about a prior incident, in which the defendant tased plaintiff, as evidence of defendant's knowledge that plaintiff was likely to be afraid of defendant).

Furthermore, there is no evidence in the record that Officers Almeida nor Bertocchi lacked knowledge that arrestees detained at the police station can die of a drug overdose. Plaintiff cites the unpublished de Tavarez opinion to highlight that an officer's "previous experience with an arrestee who had swallowed narcotics and had required medical treatment" contributed to a finding of deliberate indifference. Opp. To Motion to Bifurcate at 6 (quoting de Tavarez v. City of Fitchburg, No. 11-11460-TSH, 2014 WL 533889, at *4 (D. Mass. Feb. 6, 2014)). But the de Tavarez decision was a grant of summary judgment in which the relevant evidence was not challenged, and the admissibility of the evidence under Rules 403 and 404 was not discussed. Id. Furthermore, the quoted passage only serves to explain the first part of the sentence: "[defendant] was aware that swallowing narcotics was dangerous." Id. Here, there is no real dispute over whether the Officers knew that a fatal overdose while in custody was possible.

Introducing evidence of the Geigel incident would be unduly prejudicial in that it would sway the jury to find against the Defendants on the basis of prior unrelated events. Under Fed. R. Evid. 403, a court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is not to be excluded merely because it is prejudicial, but "prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact by other, non-

prejudicial evidence." United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000). The more similar a prior bad act is to the alleged misconduct, the greater the danger that a jury will infer the Defendant committed the alleged misconduct based on impermissible propensity evidence. Id. at 123. Plaintiff seeks to admit evidence on the Geigel incident as evidence of Defendants' knowledge of the dangers drug users face. But the real benefit to Plaintiff is an impermissible one: to let prior tragedies color the jury's assessment of the Defendants' culpability in this incident. To the extent that Officers Almeida's and Bertocchi's knowledge of the Geigel incident is relevant in some minuscule measure, the probative value of the evidence is massively outweighed by the prejudice they would suffer from the admission of the Geigel incident. It would be patently unfair for Plaintiff to use the Officers' limited involvement in the Geigel incident to persuade the jury that they must have engaged in misconduct in this case. Litigating the scope and nature of the Officers' knowledge of and involvement in the Geigel incident would also send this trial down a confusing, time-consuming, and ultimately irrelevant side issue.

> B. Evidence on the Copeland Incident is Irrelevant, Prejudicial, and Time-Consuming

The evidentiary value of introducing the Copeland incident is extremely attenuated. Unlike the events relevant to this lawsuit, the Copeland incident did not involve the use of opioids or result in the death of an arrestee. Copeland was arrested under suspicion of operating a motor vehicle while under the influence of alcohol. Copeland IA Report at 2-3. After symptoms of medical distress continued for several hours, he was transported to a hospital, where he was subjected to extensive testing and eventually diagnosed with a stroke. Id. at 22. Opioid use was not suspected or detected at any point when Copeland was in BPD custody. Id. at 20-22. The only Defendant with any involvement in the Copeland incident is Officer Almeida, who was on booking duty at the station where Copeland was detained. Id at 11.  The permissible evidentiary

6

value added by introducing evidence on the Copeland incident under Rule 404(b)(2) is so minimal as to be irrelevant under Rules 401 and 402.

Plaintiff's potential introduction of the Copeland incident is another transparent attempt to sway the jury based on propensity evidence, without even the fig leaf of a knowledge-related argument for admission. Officer Almeida repeatedly testified that his handling of Copeland was based on his assessment that he was intoxicated on alcohol. The signs and symptoms of alcohol intoxication are well known and differ from the signs and symptoms of intoxication by opioids.

Introducing the Copeland incident would also bring with it a substantial dispute of fact that would require multiple witnesses and a great deal of time to properly litigate. Specifically, Plaintiff alleges in her Opposition to Defendants' Motion for Summary Judgment that "[a]lthough [Copeland] was experiencing a stroke, the officers, including Officer Almeida, assumed that his symptoms were due to alcohol intoxication." Opp. to Mot. for Summary Judgment at 37–38. But in discovery, Defendants produced reports indicating that even the nurses and physicians who attended to Copeland for a period of six to seven hours thought that he was intoxicated on alcohol. Copeland IA Report at 21-22. To properly defend against the claim involving Copeland, Defendants would have to introduce Copeland's medical records and call officers at the D-4 station and medical staff from Tufts Medical Center to testify regarding their observations about Copeland's apparent intoxication. Litigating these issues would involve many additional witnesses and exhibits, consume substantial time at trial, and confuse the jury about the key factual claims most relevant to this matter. In the interest of judicial economy and fairness to Defendants, evidence regarding the Copeland incident should not be admitted at trial.

### III. Conclusion

Plaintiff's introduction of evidence related to the Geigel and Copeland incidents at trial is triply barred: such evidence is impermissible propensity evidence under Rule 404(b), unduly prejudicial and misleading under Rule 403, and irrelevant under Rule 402. Evidence of other deaths that occurred in BPD custody fare no better – the transparent purpose of such evidence is to persuade the jury based on past tragedies that misconduct occurred in this case. Thus, all evidence of such incidents should be omitted from trial.

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant this motion, bar Plaintiff from introducing evidence related to the Geigel incident, Copeland incident, and other deaths that occurred in BPD custody, and grant such other and further relief as this Court deems just and proper.

                                                  Respectfully submitted,

**ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE and BRIAN PICARELLO**
By their attorneys:

ADAM CEDERBAUM
Corporation Counsel

/s/ Randall F. Maas
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Randall Maas (BBO# 684832)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4045 (Whitesell)
(617) 635-4042 (Maas)
edward.whitesell@boston.gov
randall.maas@boston.gov

Dated: July 29, 2024

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

      I hereby certify that on July 26, 2024, I conferred with opposing counsel and attempted in good faith to resolve or narrow these issues.

                                    */s/ Randall Maas*
                                    Randall Maas

**Certificate of Service**

      I, Randall F. Maas, hereby certify that on July 29, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to any non-registered participants.

                                    /s/ Randall F. Maas
                                    Randall F. Maas