## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, and BRIAN PICARELLO,<br><br>    Defendants. | Civil Action No. 1:22-cv-11009-RGS |

**Plaintiff's Trial Memorandum**

# TABLE OF CONTENTS

Legal Issues...........................................................................................................................1

    I. Whether the officers' denial of Shayne's constitutional right to adequate medical care should be determined under the objective-reasonableness standard.......................................................1

II. This case presents a potential for juror misunderstanding of principles of causation that warrants particular attention. ................................................................................................6

    A. The applicable principles of causation demonstrate that Shayne's consumption of drugs in cell 19 negates neither factual cause nor scope of liability ..................................................6

    B. Instruction on causation consistent with the Restatement (Third) of Torts will aid the jury in overcoming potential confusion regarding how to determine whether Defendants' failure to take appropriate action caused Shayne's overdose death....................................................11

III. Whether hedonic damages are included in the suite of compensatory damages available for Plaintiff's Section 1983 claim. ................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), *overruled in part on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) ............................................................... 15

*Bell v. Wolfish*, 441 U.S. 520 (1979) ..................................................................................... 2

*Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990).................................................. 15

*Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021) ............................................................ 4

*Burnett v. Grattan*, 468 U.S. 42 (1984). ............................................................................... 14

*Burrell v. Hampshire Cnty.*, 307 F.3d 1 (1st Cir. 2002). ........................................................ 8

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)................................ 4

*Cope v. Cogdill*, 3 F.4th 198 (5th Cir. 2021) ......................................................................... 4

*Couchon v. Cousins*, 2018 WL 4189694 (D. Mass. Aug. 31, 2018) ....................................... 6

*Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272 (11th Cir. 2017) ...................... 4

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) .................................................................. 3, 4

*Davis v. United States*, 670 F.3d 48 (1st Cir. 2012) ............................................................ 8, 11

*Doull v. Foster*, 487 Mass. 1, 7 (2021) ............................................................................ 7, 8, 11

*Durham v. Marberry*, 156 S.W.3d 242 (Ark. 2004) ............................................................. 14

*Farmer v. Brennan*, 511 U.S. 825 (1994)............................................................................... 2

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006) ...................................................... 15

*Gaudreault v. Municipality of Salem*, 923 F.2d 203 (1st Cir. 1990) .................................. 1, 5

*Gonsalves v. City of New Bedford*, 168 F.R.D. 102 (D. Mass. 1996)..................................... 14

*Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) .................................................. 4

*Helling v. McKinney*, 509 U.S. 25 (1993)............................................................................... 2

*Johnson v. Summers*, 411 Mass. 82 (1991)....................................................................... 8, 11

*Jupin v. Kask*, 447 Mass. 141 (2006)............................................................................... 10, 13

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015)........................................................... 1, 2, 3, 5

*Kiniry v. Danbury Hospital*, 439 A.2d 408 (Conn. 1981) ............................................................ 14

*Kligler v. Att'y Gen.*, 491 Mass. 38 (2022) ................................................................................. 7

*Love v. Franklin Cnty.*, 376 F. Supp. 3d 740 (E.D. Ky. 2019) .................................................... 4

*Marcotte v. Timberlane/Hampstead Sch. Dist.*, 733 A.2d 394 (N.H. 1999) ............................. 14

*McFadden v. Sanchez*, 710 F.2d 907 (2d Cir. 1983) ................................................................. 15

*Miranda v. Cnty. of Lake*, 900 F.3d 335 (7th Cir. 2018) ............................................................ 4

*Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64 (1st Cir. 2016) ................................................. 5

*Ozaki v. Ass'n of Apartment Owners of Discovery Bay*, 954 P.2d 652 (Haw. Ct. App. 1998) .... 14

*Robertson v. Wegmann*, 436 U.S. 584 (1978) ......................................................................... 14

*Rodriguez-Cirilo v. Garcia*, 115 F.3d 50 (1st Cir. 1997) ........................................................... 7

*Romero v. Byers*, 872 P.2d 840 (N.M. 1994) .......................................................................... 14

*Ruiz-Rosa v. Rullan*, 485 F.3d 150 (1st Cir. 2007) ................................................................... 2

*Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023) .................................................................. 3, 5

*Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020) ................................................................... 5

*Valenzuela v. City of Anaheim*, 6 F.4th 1098 (9th Cir. 2021) ................................................... 15

*West v. Atkins*, 487 U.S. 42 (1988) ........................................................................................... 1

*Whitney v. City of St. Louis*, 887 F.3d 857 (8th Cir. 2018) ........................................................ 4

*Wilson v. Seiter*, 501 U.S. 294 (1991) ....................................................................................... 2

*Yanes v. Martin*, 464 F Supp. 3d 467 (D.R.I. 2020) .................................................................. 5

**Statutes**

42 U.S.C. § 1983 ....................................................................................................................... 1

Mass. Gen. Laws ch. 229, § 2 ................................................................................................. 13

**Other Authorities**

Black's Law Dict. 446 (9th ed. 2009) ....................................................................................... 13

*Model Jury Instructions on Homicide*, mass.gov/law-library/model-jury-instructions-on-homicide (2018). ............................................................................................................... 12

Restatement (Second) of Torts § 501 (Am. L. Inst. 1965) ........................................................ 12

Restatement (Third) of Torts § 26 ................................................................................................. 7

Restatement (Third) of Torts, § 26, Comment c ........................................................................ 8

Restatement (Third) of Torts, § 29. ....................................................................... 7, 10, 12, 13

Restatement (Third) of Torts, § 29, Reporters' Note, Comment b. ................................. 12

Restatement (Third) of Torts, § 33 ....................................................................................... 8, 11

Restatement (Third) of Torts, § 33 comment e ........................................................................ 11

Restatement (Third) of Torts, § 33 ............................................................................................ 10

## PLAINTIFF'S TRIAL MEMORANDUM

In accordance with the Court's Order Setting Civil Case for Jury Trial, dated May 15, 2024, Plaintiff Lynnel Cox, as administrator of the Estate of Shayne R. Stilphen, hereby submits the following Trial Memorandum addressing foreseeable disputes concerning issues of law. These issues include: (1) whether the objective-reasonableness or deliberate-indifference standard applies to the § 1983 claims, (2) whether foreseeable intervening events break the chain of causation, and (3) what damages are available in this case.

## LEGAL ISSUES

**I.    Whether the officers' denial of Shayne's constitutional right to adequate medical care should be determined under the objective-reasonableness standard.**

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). With respect to pretrial detainees raising claims of excessive force, the Supreme Court has made clear that pretrial detainees need only show that the defendants' actions were "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Although the First Circuit has not yet considered whether this standard applies to all pretrial detainees, this Court should join the growing majority of circuit courts and apply the objective-reasonableness standard, rather than the deliberate-indifference standard, to Plaintiff's § 1983 claim.[1]

The Fourteenth Amendment's Due Process Clause governs pretrial detainees' claims, *see Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), and "provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates,"

---

[1] Plaintiff also raised this question at summary judgment, ECF No. 95 at 11-13. The Court determined "it need not attempt to resolve the issue" at the summary judgment phase "[b]ecause Cox could prevail under either standard." ECF No. 104 at 11.

*Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007). Under the Eighth Amendment, convicted prisoners must establish that they "face[d] a substantial" and objective "risk of serious harm" and that the defendant subjectively knew of and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 35-37 (1993) (discussing "the subjective and objective elements necessary to prove an Eighth Amendment violation"). The subjective "intent requirement" comes from "the Eighth Amendment itself, which bans only cruel and unusual *punishment*." *Wilson v. Seiter*, 501 U.S. 294, 300 (1991) (emphasis in original). Accordingly, "[i]f the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify" as cruel and unusual. *Id.* (emphasis omitted).

This focus on punishment, however, has no place in the pretrial context, given that "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kingsley*, 576 U.S. at 400. Indeed, "proof of intent (or motive) to punish" is not "required for a pretrial detainee to prevail on a claim that his due process rights were violated." *See id.* at 398. Instead, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 397. In other words, a pretrial detainee alleging excessive force "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. *Kingsley*'s objective standard is "consistent with [the Supreme Court's] precedent," which has recognized for decades that pretrial detainees may state a due process claim against "a variety of prison conditions," not solely excessive force, under an "objective standard." *Id.* at 397-98 (citing *Bell v. Wolfish*, 441 U.S. 520, 541-43 (1979)). In keeping with *Bell*'s application of an "objective standard to evaluate a *variety of prison conditions*," the Supreme Court in *Kingsley* noted that "a pretrial detainee can prevail by providing only objective evidence that the *challenged governmental action* is not rationally related

to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* (emphasis added).

The "Supreme Court's ruling in *Kingsley* … upends the assumption that Fourteenth Amendment Due Process Clause claims should be treated the same as Eighth Amendment claims." *Short v. Hartman*, 87 F.4th 593, 608 (4th Cir. 2023); *see also Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) ("*Kingsley* altered the standard for deliberate indifference claims under the Due Process Clause."). More specifically, *Kingsley*'s focus on how pretrial detainees cannot be punished at all and references to "challenged governmental actions" indicate that *Kingsley*'s objective-reasonableness standard applies more broadly than to solely excessive-force claims. *See Kingsley*, 576 U.S. at 398; *see also Short*, 87 F.4th at 605-06 ("The fact that *Kingsley* refers broadly to 'challenged governmental action' and speaks of claims under the Fourteenth Amendment generally, coupled with its heavy reliance on *Bell v. Wolfish*, demonstrate that *Kingsley*'s objective standard extends not just to excessive force claims; it applies equally to deliberate indifference claims."). Indeed, as the Fourth Circuit has recognized, "*Kingsley* is irreconcilable with precedent requiring pretrial detainees to meet a subjective standard to succeed on claims under the Fourteenth Amendment for prison officials' deliberate indifference to excessive risks of harm to the inmate." *Short*, 87 F.4th at 605; *see also id.* at 605 n.8 (noting that four other circuits "adopted *Kingsley*'s purely objective test, without considering the question en banc," meaning that "[t]hey thus recognized … that *Kingsley* mandates a departure from prior circuit precedent").

The majority of Courts of Appeals to have expressly considered this question have recognized as much. In *Short*, the Fourth Circuit acknowledged that it had previously applied a "subjective deliberate indifference test for Fourteenth Amendment claims" but changed its approach because *Kingsley* "reiterated that a pretrial detainee may state a claim under the

Fourteenth Amendment by satisfying [the] objective standard." 87 F.4th at 608. The Seventh Circuit likewise highlighted *Kingsley*'s focus on the distinction between pretrial detainees and convicted prisoners and held that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective reasonableness inquiry identified in *Kingsley*," *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)—a holding that the Second, Sixth, and Ninth Circuits have similarly adopted. *See Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) ("A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc))); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (holding that objective-reasonableness standard applies to pretrial detainees' "claims for violations of the right to adequate medical care"); *Darnell*, 849 F.3d at 34-36 & n.9 ("[D]eliberate indifference should be defined objectively for a claim of a due process violation.").

The minority of circuit courts that have expressly cabined *Kingsley* to excessive-force claims and continue to apply a subjective deliberate-indifference standard to pretrial detainees' claims all fail to grapple with the core tenants of *Kingsley*. Three of these circuits—the Fifth, Eighth, and Eleventh—have only addressed *Kingsley* in footnotes "with minimal analysis."[2] *See Cope v. Cogdill*, 3 F.4th 198, 207 n.7 (5th Cir. 2021); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017).[3] The only other Court of Appeal that has considered *Kingsley* and rejected the

---

[2] *Brawner v. Scott Cnty.*, 14 F.4th 585, 593 (6th Cir. 2021) (discussing Fifth, Eighth, and Eleventh Circuits' contrary holdings)

[3] As one court has noted, "[e]ach of these cases contains a dearth of reasoning, whether it is the Eighth Circuit's assertion without reason that *Kingsley* is limited to excessive force claims, or the Fifth and Eleventh Circuits' rote application of a circuit rule." *Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 746 (E.D. Ky. 2019); *see also Short*, 87 F.4th at 610 n.9 (noting that these "[t]hree … circuits have retained the subjective test with little analysis or none at all").

objective reasonableness standard is the Tenth Circuit in *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020). Yet the Tenth Circuit's reasoning that the Supreme Court "said nothing to suggest it intended to extend that [objective] standard to pretrial detainee claims generally or deliberate indifference claims specifically," *Strain*, 977 F.3d at 991, ignores *Kingsley*'s extensive discussion of the differences between Fourteenth and Eighth Amendment claims and how the objective standard is "consistent with [the Supreme Court's] precedent." *See Kingsley*, 576 U.S. at 397-400.[4] Indeed, as the Fourth Circuit recognized, *Strain*'s reasoning is "spurious," "unpersuasive" and would incorrectly "reduce[] *Kingsley*'s reasoned judgment to an arbitrary fiat." *Short*, 87 F.4th at 610-611.

"*Kingsley* is clear: The Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 608-09 (quoting *Kingsley*, 576 U.S. at 398). "That test is 'solely an objective one.'" *Id.* at 609 (quoting *Kingsley*, 576 U.S. at 397). Although the First Circuit has not yet considered the application of *Kingsley* to claims involving medical care, the First Circuit has recognized, independent of *Kingsley*, that the deliberate-indifference standard represents the floor, not the ceiling, of protection for pretrial detainees. *See Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016) ("The boundaries of this duty [to provide medical care] have not been plotted exactly; however, it is clear that they extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner." (quoting *Gaudreault*, 923 F.2d at 208)).[5] This Court is accordingly

---

[4] *Strain*'s other arguments are equally flawed. *Cf. Short*, 87 F.4th at 610-11 (discussing and rejecting *Strain*'s rationale).

[5] District Courts in this circuit have been divided on which standard to apply. *Compare e.g.*, *Yanes v. Martin*, 464 F Supp. 3d 467, 469 n.3 (D.R.I. 2020) ("[T]he *Kingsley* standard of 'objective

not bound by the deliberate-indifference standard and should join the growing majority of circuit courts in applying the objective-reasonableness standard to this case.

## II. This case presents a potential for juror misunderstanding of principles of causation that warrants particular attention.

Because this case presents potential for juror confusion regarding the legal requirements for causation, in this section Plaintiff addresses some considerations for instructing the jury.

### A. The applicable principles of causation demonstrate that Shayne's consumption of drugs in cell 19 negates neither factual cause nor scope of liability.

This is a case in which the jurors' colloquial understanding of what it means to 'cause' something—particularly, a death by overdose—might significantly differ from the legal requirements of 'causation' that must be applied in determining liability. Jurors might understand an overdose death to be 'caused,' in a lay sense, only by the consumption of drugs. And Defendants may intend to make arguments that would reinforce that lay understanding by stating, as they did at summary judgment, that "Shayne Stilphen's death was caused by one person – Shayne Stilphen." ECF No. 85 at 2; *see also id.* at 3 ("Stilphen's decision to take drugs in the cell was *the* cause of his death . . . ." (emphasis added)), 20 ("Shayne Stilphen caused his own death when he surreptitiously ingested the drugs that killed him while he was in the cell.").[6]

An important focus of Defendants' arguments about causation, and an area of potential confusion for the jury, is the impact of Shayne's consumption of drugs in cell 19 on the causation analysis in this case. Defendants contend that it was the drugs that Shayne consumed in cell 19,

---

reasonableness' is the appropriate one to be applied to an action like this brought by civil detainees …."), *with Couchon v. Cousins*, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018) (acknowledging that "there is much to be said for the reasoning of the Second and Ninth Circuits" but explaining that "in the absence of a Supreme Court decision squarely on point, this court is bound by existing precedent in the First Circuit").

[6] Plaintiff is also submitting a motion in limine to preclude argument to the jury that is inconsistent with the law of causation.

and not the drugs that he had consumed prior to his arrest, that killed him. ECF No. 85 at 20. On that basis, they argue that the consumption of drugs in cell 19 was an "intervening event[]" and there was "no causation between any act of a BPD Officer and Stilphen's death from a drug overdose." *Id.* (quotation marks and citations omitted). This argument rests on a disputed fact, as Plaintiff's medical expert has testified that Shayne's intoxication at booking could have progressed to overdose for a range of reasons, only one of which was ingesting additional drugs. ECF Nos. 96 at 68 ¶ 82; 97-17 at 84:19-85:3. But more importantly, under the applicable principles of causation explained below, Shayne's consumption of drugs in cell 19—even if they were determined to be the drugs that killed him—does not negate the 'factual cause' or 'scope of liability' components of causation.

Causation in § 1983 claims is "based on basic notions of tort causation," and "may be fleshed out with reference to state tort law principles." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997). That analysis has two parts: a defendant's conduct must be a factual cause of the harm, and that harm must be within the "scope of liability" for a defendant's conduct (sometimes referred to as "proximate cause"). *See* Restatement (Third) of Torts: Phys. & Emot. Harm §§ 26, 29 (Am. L. Inst. 2010) (June 2024 update); *see also Doull v. Foster*, 487 Mass. 1, 7 (2021).[7]

**Factual Cause**: The first component of causation, factual cause, is satisfied when a defendant's action or failure to act was a but-for cause of his death. "[T]here is no requirement that a defendant must be the *sole* factual cause of a harm." *Doull*, 487 Mass. at 12 (emphasis added).

---

[7] These same components of causation are required for Plaintiff's wrongful death claim. *See* ECF No. 104 at 18-19 & n.14 (Court will instruct in accordance with involuntary manslaughter); *Kligler v. Att'y Gen.*, 491 Mass. 38, 51 (2022) (ordinary standards of causation apply in involuntary manslaughter).

Instead, the question is "whether, in the absence of a defendant's conduct, the harm still would have occurred." *Id.* at 12-13.

Factual cause is "not a high bar."  *Id.* at 13. If any Defendant had responded to Shayne's signs of intoxication during booking by summoning medical care or monitoring Shayne for signs of overdose, Shayne would not have died. Similarly, had either of the Defendants who saw Shayne overdosing after 4:48 AM (Almeida or Picarello) intervened to check on Shayne and administer Narcan, Shayne would not have died. *See* ECF No. 97-22 at 39 ¶ 123. Because the Defendants' conduct need only be "*a* factual cause" of harm, "the existence of other causes"—including Shayne's own consumption of drugs—"does not affect" the factual cause analysis. *See* Restatement (Third) of Torts, § 26, Comment c.

**Scope of Liability**: The second component of causation, scope of liability, is satisfied when the harm a plaintiff suffered "result[ed] from the risks that made [a defendant's] conduct tortious." *Id.* § 29; *see also Doull*, 487 Mass. at 7. If a plaintiff's harm "arose from the same general type of danger," that defendants should have (and did not) take steps to avoid, then it is within the scope of liability for the defendant's conduct. Restatement (Third) of Torts § 29, Reporters' Note, Comment b. Scope of liability must be given particularly broad meaning when a defendant's conduct is reckless or wanton, rather than merely negligent. *See id.* § 33, Comment a; *Johnson v. Summers*, 411 Mass. 82, 89 (1991); *Davis v. United States*, 670 F.3d 48, 56 (1st Cir. 2012).[8]

Here, if the jury finds that any of the Defendants acted in a tortious matter, then Shayne's overdose would readily fall within the Defendants' scope of liability. For example, if the jury finds that Shayne's intoxication at booking was a serious medical need and that the Defendants' failure

---

[8] The deliberate indifference standard—to the extent the Court finds it applies here—is akin to recklessness. *See* ECF No. 104 at 12; *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

to provide care or monitoring was objectively unreasonable (or deliberately indifferent) in light of that need, that finding would necessarily be based, at a minimum, on the Defendants' insufficient response to the danger that Shayne would overdose—the very harm that occurred. So too with regard to the failure of Officers Picarello and Almeida to intervene to save Shayne when they saw him after 4:48 AM in the position in which he ultimately died. If a jury concludes that their failure to intervene was objectively unreasonable (or deliberately indifferent), that finding would necessarily be based on the risk that Shayne was overdosing, or otherwise in medical distress. Because in either scenario Shayne's death "arose from the same general type of danger" that the jury found rendered the Defendants' conduct objectively unreasonable (or deliberately indifferent), it is readily within the scope of liability for that conduct.

Defendants contend Shayne's consumption of drugs in cell 19 is an "intervening event[]." ECF No 85 at 20 (quotation marks and citations omitted).  But although Shayne's consumption of drugs was "intervening" in a temporal sense with regard to officers at booking, the scope of liability analysis is exactly the same. As the Restatement makes clear, the scope of liability inquiry is not altered even when another factual cause comes later in time. Restatement (Third) of Torts §§ 29, 34. Instead, the scope of liability question remains whether Shayne's death "result[ed] from the risks that made [a Defendant's] conduct tortious." *Id.*

Even if the jury determines that the drugs Shayne had in his body at the time of booking were not the drugs that killed him, therefore, this does not mean that plaintiffs would need to establish that it was foreseeable that Shayne would take more drugs in cell 19. While Plaintiff anticipates that the evidence will amply show the foreseeability of Shayne's drug use in cell 19, including because of the recent death of Cristhian Geigel, such a demonstration is sufficient, but not necessary, to establish scope of liability. Scope of liability would be established even if

Shayne's additional drug use were not specifically foreseeable, if the jury determines that one of the risks that rendered the defendants' actions tortious at booking was a danger of overdose, and that Shayne's death resulted from that same general type of risk. Restatement (Third) of Torts §§ 29, 34; *Jupin v. Kask*, 447 Mass. 141, 149 n.8 (2006). Plaintiff anticipates the answer to that question will manifestly be yes.

Defendants' argument appears to be that Shayne's death would be within the scope of liability *only* if it was caused by the drugs that Shayne had consumed prior to booking, and not any others. But that fine parsing of their scope of liability finds no support in the law. As the Supreme Judicial Court explained employing the rubric of reasonable foreseeability used to analyze the "scope of liability" in negligence cases, a plaintiff need not show "the precise sequence of events or manner of injury [was] foreseeable." *Jupin*, 447 Mass. at 149 n.8. Instead, "[i]t is sufficient that the same general kind of harm was a foreseeable consequence of the defendant's risk-creating conduct." *Id.* If such reasoning applies to the narrower scope of liability in negligence cases, then it is amply sufficient under the broader scope of liability for deliberate indifference or reckless and wanton conduct that the Defendants' objectively unreasonable conduct (and their deliberate indifference) created a foreseeable risk that Shayne would die of an overdose and Shayne suffered that same "general kind of harm." *Id.*

Finally, Shayne's consumption of drugs in his cell was not in any sense "intervening" as to the conduct of Officers Almeida and Picarello *after* 4:48 AM. At that point, Shayne had already taken the additional drugs, the Defendants do not dispute that Shayne had a serious medical need, ECF No. 85 at 14, and Officers Almeida and Picarello walked by or saw Shayne a combined five times without taking any steps to provide him aid. If a jury finds that their conduct was objectively unreasonable (or deliberately indifferent) and a factual cause of Shayne's death, scope of liability

is satisfied because Shayne's death arose from the identical dangers that made their conduct unreasonable (or deliberately indifferent).

> **B.    Instruction on causation consistent with the Restatement (Third) of Torts will aid the jury in overcoming potential confusion regarding how to determine whether Defendants' failure to take appropriate action caused Shayne's overdose death.**

This case involves a significant risk that jurors' could apply their pre-existing, colloquial understanding of what a 'cause' is rather than the legal requirements of causation for Plaintiff's claims. Because the juror's lay understanding of the 'cause' of an overdose death might not encompass the legal idea that officers could have 'caused' an overdose death by failing to take action to prevent it, proper and careful instruction on causation is vital. Massachusetts courts and the First Circuit have repeatedly relied on the Restatement of Torts to analyze causation in tort and § 1983 cases.[9] Plaintiffs has proposed jury instructions consistent with the Restatement (Third) of Torts, which provides a useful framework for avoiding these pitfalls and providing the clearest instruction to the jury on matters of causation.

First, any instruction should reflect the broader scope of liability for reckless and wanton conduct that is at issue in this case. Restatement (Third) of Torts, § 33. "[A]n actor who intentionally or recklessly causes harm is subject to liability for a broader range of harms than the harms for which that actor would be liable if only acting negligently." *Id.* § 33 & Comment e. *See Johnson*, 411 Mass. at 89 (citing Restatement (Second) of Torts for proposition that, "misconduct in reckless disregard of another's safety is to be taken into account in determining whether a jury case on causation has been made out"); *Davis*, 670 F.3d at 56 ("[t]he fact that the actor's

---

[9] *See Doull*, 487 Mass. at 16-17 & n.21 (noting Supreme Judicial Court of Massachusetts relies on the Restatement "not because it is fashionable to do so," but because of the American Law Institute's thoughtful inquiry into questions of causation); *Johnson*, 411 Mass. at 89; *Davis*, 670 F.3d at 56.

misconduct is in reckless disregard of another's safety rather than merely negligent is a matter to be taken into account in determining whether a jury may reasonably find that the actor's conduct bears a sufficient causal relation to another's harm to make the actor liable therefor.") (quoting Restatement (Second) of Torts § 501 (Am. L. Inst. 1965)).

Second, a scope of liability instruction should avoid language that asks a jury to determine whether the Defendants' conduct was a "proximate cause" of Shayne's death, or produced his death "in a natural and continuous sequence." As the Restatement has emphasized, the term "proximate cause" is "unfortunate" and "confusing" because it wrongly "implies that there is but one cause" and erroneously suggests a preference for causes that are "nearest in time." *Id.*; *see also id.* § 29, Reporters' Note, Comment b (citing studies demonstrating juror confusion with the term "proximate cause"). Similarly, requiring a "natural and continuous sequence" misses the "essential concern" of a scope of liability inquiry, *i.e.*, the relatedness of the ultimate harm to the danger that rendered a defendant's conduct tortious. *See id.* at § 29, Reporters' Note, Comment b. Both terms should be avoided because they are readily subject to being interpreted in a way that is inconsistent with the actual legal requirements for causation. And given the Defendants' likely focus on Shayne's consumption of drugs in cell 19, language suggesting a need for proximity and/or continuity would be particularly likely to confuse the jury.[10]

---

[10] The "natural and continuous sequence" language appears in Massachusetts' model jury instructions on involuntary manslaughter as a description of the scope of liability component of causation. *Model Jury Instructions on Homicide*, mass.gov/law-library/model-jury-instructions-on-homicide (2018). Although the Plaintiff takes no position on whether the "natural and continuous sequence" language could be an appropriate limitation on *criminal* liability, in the civil context the phrase has "no apparent reason other than historical anomaly" and does not accurately express tort law principles of causation. Restatement (Third) of Torts, § 29, Reporters' Note, Comment b.

Third, any language asking jurors to evaluate an "intervening" cause should clarify the appropriate scope of this inquiry. As the Restatement notes, instructions asking the jury to determine the foreseeability of an "intervening" event "risk[] being misunderstood" because they "deflect[s]" the jury's attention away from the "crux" of the scope of liability inquiry. *Id.* § 29 Comment j. As articulated above, Plaintiff anticipates that the evidence will amply show the foreseeability of Shayne's drug use in cell 19, *see supra*, but focusing the jury's attention on that foreseeability question risks unduly limiting the scope of liability for the Defendants' conduct. The relevant legal question is whether the *harm* was "the same general kind of harm [that] was a foreseeable consequence of the defendant's risk-creating conduct," not whether the specific *intervening event* was foreseeable. *See Jupin*, 447 Mass. at 149 n.8 ("sequence of events" and "manner of injury" need not be foreseeable).

## III.   Whether hedonic damages are included in the suite of compensatory damages available for Plaintiff's Section 1983 claim.

Plaintiff claims that Shayne lost his life as a result of Defendants' actions and inactions depriving Shayne of his rights under the federal Constitution.  If the jury agrees and finds for Plaintiff on her § 1983 claim, Plaintiff should be permitted to recover monetary damages designed to capture the value of what was lost: Shayne's life. Damages for loss of enjoyment of life are often referred to as "hedonic damages." Black's Law Dict. 446 (9th ed. 2009).  Because hedonic damages further § 1983's core purposes, they should be available on such claims.[11]

---

[11] If hedonic damages are not provided as an avenue of relief, Plaintiff's compensatory damages award on her § 1983 claim would be limited to the damages articulated in the Massachusetts Wrongful Death Act, including loss of consortium, reasonable funeral and burial expenses, and loss of Shayne's reasonably expected net income, Mass. Gen. Laws ch. 229, § 2, the last of which could be as low as approximately $100,000, reflecting Shayne's lost earnings net of taxes and the amount Shayne would have spent on himself over the course of his life.

Although Massachusetts does not recognize post-death hedonic damages as a matter of state law, other states do,[12] and there should be no dispute that the statutory framework for § 1983 claims permits this Court to award hedonic damages on Plaintiff's federal claim here. The Act is clear that state law should provide the framework for damages "only if it is not inconsistent with the Constitution and laws of the United States." *Burnett v. Grattan*, 468 U.S. 42, 48 (1984). In other words, given "the predominance of the federal interest," state laws that are consistent with the purposes of § 1983 can apply, but those that conflict with its purposes should not. *Id.* Although the First Circuit has not yet expressly weighed in on the availability of such damages in § 1983 claims, at least one judge in this District has already approved of an award of hedonic damages in such a case. *See Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 106 n.10 (D. Mass. 1996). This Court should join *Gonsalves*, as well as the Seventh and Ninth Circuits, and hold that hedonic damages are included in the suite of compensatory damages available for Plaintiff's federal claim. To hold otherwise would conflict with § 1983's central purposes to "compensat[e]" people "injured by deprivation of federal rights" and "prevent[] abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978).

Here, denying recovery for Shayne's loss of enjoyment of life would conflict with § 1983's dual purposes of compensation and deterrence. *See Robertson*, 436 U.S. at 590-91. Indeed, both the Seventh and Ninth Circuits have reached just this conclusion when refusing to incorporate Wisconsin and California state law prohibitions on hedonic damages into § 1983 claims. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1239 (7th Cir. 1984), *overruled in part on other grounds by*

---

[12] *See, e.g.*, Arkansas (*Durham v. Marberry*, 156 S.W.3d 242, 248 (Ark. 2004)), Connecticut (*Kiniry v. Danbury Hospital*, 439 A.2d 408, 414 (Conn. 1981)), Hawaii (*Ozaki v. Ass'n of Apartment Owners of Discovery Bay*, 954 P.2d 652, 671 (Haw. Ct. App. 1998)), New Hampshire *(Marcotte v. Timberlane/Hampstead Sch. Dist.*, 733 A.2d 394, 399 (N.H. 1999)), and New Mexico (*Romero v. Byers*, 872 P.2d 840, 846 (N.M. 1994)).

*Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101-03 (9th Cir. 2021)[13]; *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1506 (10th Cir. 1990) (rejecting an Oklahoma state law that limited survival damages to property loss and lost earnings as inconsistent with § 1983); *McFadden v. Sanchez*, 710 F.2d 907, 911 (2d Cir. 1983) (holding the same for a New York law barring punitive damages in § 1983 survival actions). As *Bell* explained, "if Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure." 746 F.2d at 1239; *see also Valenzuela*, 6 F.4th at 1102 ("Prohibiting loss of life damages would run afoul of Section 1983's remedial purposes."). The only circuit to come out the other way on this issue, the Sixth Circuit, failed to grapple with the fundamental arguments underlying the decisions of the other Courts of Appeal. *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 601 (6th Cir. 2006).

Because Massachusetts's bar on hedonic damages is inconsistent with § 1983's core goals, this Court should not apply this provision of state law to Plaintiff's § 1983 claim. Instead, if the jury finds in favor of the Plaintiff on her § 1983 claim, she should be allowed to recover damages for Shayne's loss of life along with the full suite of compensatory damages under the Massachusetts Wrongful Death Act.

---

[13] Indeed, in *Valenzuela*, the Ninth Circuit found that a $9.6 million award for pre-death pain and suffering was insufficient to, without the benefit of an additional $3.6 million loss of life award, adequately compensate the victim's damages. *Valenzuela*, 6 F.4th at 1103.

July 29, 2024                    Respectfully submitted,

*/s/ Robert Frederickson III*

Robert Frederickson III (BBO #670111)
Nicholas Franco III (BBO #703423)
Emma L. Murray (BBO #713477)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570-1000
rfrederickson@goodwinlaw.com
nfranco@goodwinlaw.com
emurray@goodwinlaw.com

Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO #680210)
Isabel Burlingame (BBO #710027)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
Tel.: (617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
iburlingame@aclum.org

Alexandra D. Valenti* (*Pro hac vice*)
Christine Potkay* (*Pro hac vice*)
Gabriella Montes* (*Pro hac vice*)
Wrenne Bartlett* (*Pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 459-7351
avalenti@goodwinlaw.com
cpotkay@goodwinlaw.com
gmontes@goodwinlaw.com
wbartlett@goodwinlaw.com

Matthew Ginther* (*Pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
mginther@goodwinlaw.com

*Attorneys for Plaintiff Lynnel Cox, as administrator of the estate of Shayne R. Stilphen*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 29, 2024, I served the foregoing document on all parties by filing it via the Court's CM/ECF system and that a copy will be sent via the CM/ECF system electronically to all counsel of record.

<u>/s/ Robert Frederickson III</u>
Robert Frederickson III (BBO #670111)

18