# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

LYNNEL COX, as administrator of the Estate
of Shayne R. Stilphen,

        Plaintiff,

        v.

CITY OF BOSTON, ISMAEL ALMEIDA,
PAULMICHAEL BERTOCCHI, CATIA
FREIRE, and BRIAN PICARELLO,

        Defendants.

Civil Action No. 1:22-cv-11009-RGS

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A NEW TRIAL AND, IN THE ALTERNATIVE, MOTION FOR PARTIAL FINAL JUDGMENT AND STAY

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.    This Court Should Order a New Trial Because the Jury Was Instructed Under the Incorrect Legal Standard and Because of Several Erroneous Evidentiary Rulings. ..................................... 1

    A.    The Jury's Verdict as to the § 1983 Claim Should Be Set Aside Because The Jury Was Erroneously Instructed Under the Subjective Deliberate-Indifference Standard, Which Prejudiced Plaintiff. .......................................................................................................... 2

        1.    The Objective-Reasonableness Standard Applies to Pretrial Detainees' § 1983 Claims. ................................................................................................................................ 2

        2.    The Use of the Subjective Deliberate-Indifference Standard and Jury Instruction Under That Standard Prejudiced Plaintiff. ................................................................................. 4

    B.    The Jury's Verdict as to the § 1983 Claim Should Be Set Aside Because the Jury Was Not Fully Instructed as to Causation, Which Prejudiced Plaintiff. ............................................ 7

    C.    The Jury's Verdict as to the § 1983 Claim Should Also Be Set Aside Because of Several Evidentiary Errors. ................................................................................................................. 9

        1.    The Exclusion of Officer Lydon. ................................................................................ 9

        2.    The Exclusion of Officer Doolan's Form 26 Report and Testimony. ........................ 11

        3.    The Exclusion of Evidence as to Cristhian Geigel's Death at District 4. ................... 12

        4.    Testimony from Officers Bertocchi and Almeida. ..................................................... 13

II.    Alternatively, This Court Should Enter Final Judgment as to the Officers on the § 1983 and Wrongful Death Claims and Stay the Claims Against the City. ................................................... 14

    A.    This Court Should Enter Final Judgment Under Rule 54(b). .......................................... 14

        1.    The Jury Verdict Is Final With Respect to the Individual Officers. ........................... 16

        2.    There Is No Just Reason To Delay Entry of Final Judgment as to the Claims Against the Individual Defendants. ................................................................................................... 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Phila. Elec.*,
    521 F.2d 360 (3d Cir. 1975)................................................................................16

*Amyndas Pharm., S.A. v. Zealand Pharma A/S*,
    48 F.4th 18 (1st Cir. 2022)..........................................................................15, 17

*B2 Opportunity Fund, LLC v. Trabelsi*,
    2017 WL 8408404 (D. Mass. Nov. 30, 2017) ..............................................15, 17

*Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*,
    78 F.3d 698 (1st Cir. 1996)...............................................................................15

*Darnell v. Pineiro*,
    849 F.3d 17 (2d Cir. 2017).................................................................................3

*Davignon v. Clemmey*,
    322 F.3d 1 (1st Cir. 2003)..................................................................................2

*Doull v. Foster*,
    487 Mass. 1 (2021) ...........................................................................................8

*Farmer v. Brennan*,
    511 U.S. 825 (1994)...........................................................................................3

*Gaudreault v. Municipality of Salem*,
    923 F.2d 203 (1st Cir. 1990)..............................................................................2

*Gordon v. Cnty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ...........................................................................5

*Haverhill Gazette Co. v. Union Leader*,
    333 F.2d 798 (1st Cir. 1964).............................................................................16

*Kingsley v. Hendrickson*,
    576 U.S. 389 (2015)...................................................................................2, 3, 4

*Maldonado-Denis v. Castillo-Rodriguez*,
    23 F.3d 576 (1st Cir. 1994).........................................................................15, 16

*Marquis v. FDIC*,
    965 F.2d 1148 (1st Cir. 1992)...........................................................................17

*McDonough v. City of Quincy,*
  452 F.3d 8 (1st Cir. 2006) ................................................................2, 9

*Miranda-Rivera v. Toledo-Davila,*
  813 F.3d 64 (1st Cir. 2016) ..................................................................4

*New Balance Athletic Shoe, Inc. v. Converse, Inc.,*
  86 F. Supp. 3d 35 (D. Mass. 2015) .....................................................17

*Short v. Hartman,*
  87 F.4th 593 (4th Cir. 2023) ............................................................3, 5

*Spiegel v. Trs. of Tufts Coll.,*
  843 F.2d 38 (1st Cir. 1988) ...........................................................15, 16

*Teixeira v. Town of Coventry ex rel. Przybyla,*
  882 F.3d 13 (1st Cir. 2018) ..................................................................1

*United States v. Sineneng-Smith,*
  590 U.S. 371 (2020) ..............................................................................4

*Williams v. Drake,*
  146 F.3d 44 (1st Cir. 1998) ..............................................................9, 14

*Wilson v. Seiter,*
  501 U.S. 294 (1991) ..............................................................................3

*Zingg v. Groblewski,*
  907 F.3d 630 (1st Cir. 2018) ................................................................4

**Statutes**

42 U.S.C. § 1983 .......................................................................................1

**Rules**

Fed. R. Civ. P. 54(b) ...........................................................................14, 15

Fed. R. Civ. P. 59(a) ..................................................................................1

**Other Authorities**

Restatement (Third) of Torts § 29 ..............................................................8

Wright & Miller § 2656 (4th ed.)..............................................................16

## INTRODUCTION

Plaintiff Lynnel Cox brought claims for relief under 42 U.S.C. § 1983 against Officers Almeida, Bertocchi, Freire, and Picarello and the City of Boston.  Plaintiff also sought relief under the Massachusetts Wrongful Death Statute as to the officers and under the Americans with Disabilities Act as to the City.  This Court bifurcated the claims: the claims against the officers went to trial in August, and the § 1983 and ADA claims against the City have not yet gone to trial. The jury concluded that the officers were not liable under § 1983 or the Wrongful Death Statute.

Although Plaintiff now moves for a new trial, *see infra* Section I, if this Court denies that motion, Plaintiff respectfully requests that the Court enter final judgment for the officers with respect to the § 1983 and wrongful death claims.  *See infra* Section II.  Plaintiff also requests that the Court stay pending appeal the claims against the City under § 1983 and the ADA.  There is no question that the jury's verdict is now final and nothing remains for this Court to do with respect to the officers.  As this Court previously recognized in bifurcating the claims, entering judgment for the officers would ensure a timely resolution of the case against them.  Moreover, both judicial administrative interests and equitable factors weigh in favor of granting final judgment now on the claims against the officers and staying pending appeal the remaining claims against the City.

## ARGUMENT

**I.  This Court Should Order a New Trial Because the Jury Was Instructed Under the Incorrect Legal Standard and Because of Several Erroneous Evidentiary Rulings.**

A court "may … grant a new trial on all or some of the issues" after a jury trial.  Fed. R. Civ. P. 59(a).  This "rule authorizes a district court to override a jury verdict and order a new trial if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice."  *Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13, 16 (1st Cir. 2018) (citation and quotation marks omitted).  A jury instruction "constitutes reversible error" if

it (1) "is misleading, unduly complicating, or incorrect as a matter of law" and (2) "cannot be considered harmless." *Davignon v. Clemmey*, 322 F.3d 1, 9 (1st Cir. 2003) (citation omitted). Similarly, an evidentiary ruling warrants a new trial where that ruling was not harmless error. *See McDonough v. City of Quincy*, 452 F.3d 8, 19-20 (1st Cir. 2006). This Court should order a new trial because (1) the jury was instructed under the deliberate-indifference standard, rather than the objective-reasonableness standard, (2) the jury was not completely instructed as to causation, and (3) several erroneous evidentiary rulings prejudiced Plaintiff.

A.      **The Jury's Verdict as to the § 1983 Claim Should Be Set Aside Because The Jury Was Erroneously Instructed Under the Subjective Deliberate-Indifference Standard, Which Prejudiced Plaintiff.**

On August 9, 2024, this Court ruled that Plaintiff's § 1983 claim would be governed by the subjective deliberate-indifference standard, rather than the objective-reasonableness standard laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). (ECF No. 170.) Plaintiff objected to the Court instructing the jury under the subjective deliberate-indifference standard. (8/19 Tr. 123:19-25; ECF No. 172 at 1-2.) Because the objective-reasonableness standard applies, the jury was instructed under the incorrect legal standard and a new trial is warranted.

1.      **The Objective-Reasonableness Standard Applies to Pretrial Detainees' § 1983 Claims.**

Given the Court's familiarity with and Plaintiff's extensive briefing of this issue, Plaintiff submits an abbreviated discussion of the objective-reasonableness standard's applicability. The Fourteenth Amendment's Due Process Clause governs pretrial detainees' claims. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990). In contrast, the Eighth Amendment governs claims of convicted prisoners who must establish that they "face[d] a substantial" and objective "risk of serious harm" and that the defendant subjectively knew of and "disregard[ed]

2

that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  The subjective "intent requirement" comes from "the Eighth Amendment itself, which bans only cruel and unusual *punishment*." *Wilson v. Seiter*, 501 U.S. 294, 300 (1991) (emphasis in original).  This focus on punishment, however, has no place in the pretrial context, given that "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kingsley*, 576 U.S. at 400.  Indeed, "proof of intent (or motive) to punish" is not "required for a pretrial detainee to prevail on a claim that his due process rights were violated." *See id.* at 398.  Instead, "the appropriate standard … is solely an objective one." *Id.* at 397.

The "Supreme Court's ruling in *Kingsley* … upends the assumption that Fourteenth Amendment Due Process Clause claims should be treated the same as Eighth Amendment claims." *Short v. Hartman*, 87 F.4th 593, 608 (4th Cir. 2023); *see also Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017).  *Kingsley*'s focus on how pretrial detainees cannot be punished at all and references to "challenged governmental actions" indicate that *Kingsley*'s objective-reasonableness standard applies more broadly than solely to excessive-force claims.  *See Kingsley*, 576 U.S. at 398; *see also Short*, 87 F.4th at 605-06.  Indeed, "*Kingsley* is irreconcilable with precedent requiring pretrial detainees to meet a subjective standard to succeed on claims under the Fourteenth Amendment for prison officials' deliberate indifference to excessive risks of harm to the inmate." *Short*, 87 F.4th at 605 & n.8 (noting that four other circuits in addition to the Fourth Circuit "adopted *Kingsley*'s purely objective test, without considering the question en banc," meaning that "[t]hey thus recognized … that *Kingsley* mandates a departure from prior circuit precedent").  Accordingly, this irreconcilability required that the objective-reasonableness standard apply to this case, even though the First Circuit had not yet weighed in on this issue.  *But see* ECF No. 170 (stating that this Court "is constrained by pre-Kingsley First Circuit precedent unless and until the First Circuit

indicates otherwise").

The two First Circuit cases this Court identified (ECF No. 170) as applying the deliberate-indifference standard post-*Kingsley*—*Zingg v. Groblewski*, 907 F.3d 630 (1st Cir. 2018), and *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64 (1st Cir. 2016)—do not require the use of that standard in this case.  Although the Court in *Miranda-Rivera* discussed *Kingsley* with respect to the excessive-force claim at issue there, the Court did not consider whether the objective-reasonableness standard applies outside of the excessive-force context.  *See Miranda-Rivera*, 813 F.3d at 74.  And the Court in *Zingg* never referenced, let alone discussed, *Kingsley*.  *See generally Zingg*, 907 F.3d 630.  In both cases, neither party raised whether *Kingsley* applied outside of the excessive-force context,[1] and the First Circuit accordingly had no reason to consider or decide it.  *See United States v. Sineneng-Smith*, 590 U.S. 371, 376-77 (2020) (courts "normally decide only questions presented by the parties").  This Court accordingly was not bound by either case and should have instructed the jury under the objective-reasonableness standard.

### 2.   The Use of the Subjective Deliberate-Indifference Standard and Jury Instruction Under That Standard Prejudiced Plaintiff.

Plaintiff is entitled to a new trial on her § 1983 claim because the Court's erroneous instruction was prejudicial.    Unlike the deliberate-indifference standard, the objective-reasonableness standard does not require a showing that Defendants subjectively knew of and disregarded the risk of Shayne's overdose.  Under the objective-reasonableness standard, there is no intent requirement.  All that is required is that Defendants' action (or inaction) was objectively

---

[1] *See* Br. of Pl.-Appellant Jenna Zingg, *Zingg*, No. 17-2115 (1st Cir. Feb. 15, 2018); Br. of Defs,-Appellees, *Zingg*, No. 17-2115 (1st Cir. Apr. 17, 2018); Reply Br. of Pl.-Appellant Jenna Zingg, *Zingg*, No. 17-2115 (1st Cir. May 1, 2018); Pls./Appellants' Br., *Miranda-Rivera*, No. 14-1535 (1st Cir. Apr. 6, 2015); Response Br. for Appellees, *Miranda-Rivera*, No. 14-1535 (1st Cir. May 18, 2015); Pls./Appellants' Reply Br., *Miranda-Rivera*, No. 14-1535 (1st Cir. July 3, 2015).

unreasonable—in other words, "the defendant should have known" "of the detainee's serious medical condition" and the "risk that [the defendant's] action or failure to act would result in harm" and "acted accordingly." *See Short*, 87 F.4th at 611; *see also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (similar). Instructing the jury under the higher deliberate-indifference standard necessarily prejudiced Plaintiff by inserting an additional intent element and thus increasing Plaintiff's burden of proof. Without that additional element, there was sufficient evidence in the trial record for the jury to conclude that Defendants acted objectively unreasonably.

For instance, Plaintiff's expert, Dr. Michael Lyman, testified that a "reasonable officer" in Defendants' position, having observed what Defendants observed, would not have left Shayne alone without taking further action. (*See, e.g.*, 8/13 Tr. 140:12-16, 143:23-144:5; 8/14 Tr. 7:25-8:16, 9:13-10:1.) Defendants provided no expert to rebut this testimony. Additionally, as Officer Higgins testified, Defendants were trained to recognize the signs of opioid intoxication and overdose and how to respond to each situation. (8/13 Tr. 81:23-25, 82:23-25, 83:19-21, 84:23-85:1.) More specifically, Defendants were trained that someone who is "really high" may display "slurred or slow speech" or "nodding" and that they should "stimulate" these individuals. (8/13 Tr. 87:12-15, 88:16-21.) Officer Higgins taught Defendants that people who are really high should not be left alone because they could slip into an overdose. (8/13 Tr. 93:19-94:9.) Given this evidence, the deliberate-indifference instruction was not harmless.

Defendants' own testimony likewise shows how the Court's instruction was not harmless error. Officer Freire testified that the level of opioid use around District 4 was "overwhelming," that Shayne "appears as though he was falling asleep" while standing up during fingerprinting, and that Shayne struggled to stand up straight and was wobbling while his booking photos were being taken. (8/14 Tr. 44:23-25, 48:6-8, 49:15-23.) Despite making these observations, Officer Freire

did not discuss Shayne with any officer or suggest that he should be monitored.  (8/14 Tr. 52:1-9.)

Meanwhile, Officer Bertocchi observed that Shayne was lethargic and thought Shayne may have taken drugs that day.  (8/14 Tr. 118:7-19.)  He saw Shayne struggle to stand up straight but dismissed any concerns because "he never fell over."  (8/14 Tr. 126:20-22, 128:15-18.)  Officer Bertocchi observed Shayne in a hinged position on three occasions.  (8/14 Tr. 123:9-14, 134:17-22, 135:5-136:4.)  But he failed to inform anyone about Shayne's condition (8/14 Tr. 136:5-16), despite also knowing that Cristhian Geigel had passed away in District 4 just seven weeks prior.  (8/14 Tr. 114:10-115:2.)  Given Officer Bertocchi's observations, knowledge of Mr. Geigel's death, and failure to inform others of the need to monitor Shayne, applying the deliberate-indifference standard was not harmless error.

Similarly, Officer Picarello testified that he thought Shayne showed signs of being addicted to opioids and that Shayne was nodding and speaking with a slurred tone.  (8/15 Tr. 34:15-35:1, 37:16-20.)  Officer Picarello observed Shayne in the hinged position in cell 19 and testified that this position is common for people with "fentanyl problems."  (8/15 Tr. 46:7-11.)  As Officer Picarello testified, "[a]t 5 in the morning in a cell, they could be on anything."  (8/15 Tr. 46:7-21.)  Despite observing Shayne remain in the hinged position on multiple occasions and fail to respond to stimuli (8/15 Tr. 47:21-48:14), Officer Picarello never entered Shayne's cell and never told anyone that he thought Shayne was addicted to opioids or that he saw Shayne in the hinged position (8/15 Tr. 37:21-38:2, 47:11-20).  Given Officer Picarello's recent training and observations of Shayne (see 8/13 Tr. 84:15-85:1), instructing under the deliberate-indifference standard was not harmless error.

Lastly, Officer Almeida testified that he recognized Shayne from the Mass and Cass area (8/15 Tr. 93:19-94:4), and that people in custody overnight are "using all types of substances" and

"could have drugs secreted somewhere in their body," particularly given that officers are "limited to what type of search [they] can do" (8/15 Tr. 141:21-23, 143:7-10).  Officer Almeida repeatedly saw Shayne in the hinged position in Cell 19 and did not attempt to check if Shayne responded to stimuli.  (*See, e.g.*, 8/15 Tr. 118:19-119:19, 125:11-126:4, 128:11-130:2, 131:4-21.)  Officer Almeida was aware at the time of Shayne's death that Mr. Geigel had also passed away while in District 4's custody, and Officer Almeida had actually conducted numerous cell checks without realizing that Mr. Geigel had died.  (8/15 Tr. 92:13-93:6; 8/16 Tr. 19:8-9.)  Because Officer Almeida was aware of Mr. Geigel's death, recognized Shayne from an area of high drug usage, and observed Shayne in the hinged position, instructing under the deliberate-indifference standard and not the objective-reasonableness standard was not harmless error.

In stark contrast to Defendants' failure to act, Officer Doolan observed Shayne in the hinged position and attempted to help.  Officer Doolan testified that his "attention was just drawn to Shayne."  (8/16 Tr. 53:9-15.)  Officer Doolan "kicked on the door" and "called out Shayne's name a couple of times," but he "did not get any response from Shayne" and immediately "called for Officer Almeida" to open Shayne's cell.  (8/16 Tr. 53:16-21.)  Given that the jury heard how Officer Doolan acted immediately upon seeing Shayne in the hinged position—despite his involvement in the Joseph Perry incident, which Defendants pointed to as purported justification for their non-action—while Defendants failed to adequately monitor Shayne and failed to act when seeing Shayne in that exact same position, unmoving for an hour, instructing under the deliberate-indifference standard was not harmless error.  The Court's decision to instruct the jury under the subjective deliberate-indifference standard was thus prejudicial and warrants a new trial.

### B.     The Jury's Verdict as to the § 1983 Claim Should Be Set Aside Because the Jury Was Not Fully Instructed as to Causation, Which Prejudiced Plaintiff.

A new trial is also warranted because the jury was not fully instructed with respect to

proximate cause.  The Court instructed the jury that:

> An act or omission is a proximate cause if it was a substantial factor in bringing about or causing an injury, or stated another way, that the injury was a reasonably foreseeable consequence of a defendant's acts or failure to act.

(8/19 Tr. 116:15-19.)  Plaintiff objected to the jury not being further instructed that, in other words, "defendants' actions or inactions are the proximate cause of the injury if the injury arose from the same general type of danger [that was] among the risks the defendant should have taken steps to avoid" and that "the defendant does not need to have been able to foresee the precise sequence of events as they unfolded so long as [the] injury was a[m]ong the same general kind of harm that was a foreseeable risk" of the conduct.  (8/19 Tr. 125:3-11.)

This Court's instruction prevented the jury from having the full definition of proximate causation, as defined in the Restatement (Third) of Torts and adopted by Massachusetts state courts, particularly in light of this Court's reference to an act needing to be "a substantial factor" to be a proximate cause.  *See Doull v. Foster*, 487 Mass. 1, 7 (2021).  As the Restatement explains, a defendant's scope of liability "is limited to those harms that result from the risks that made the actor's conduct tortious."  Restatement (Third) of Torts § 29.  That includes, in this case, the risk that Shayne would overdose, regardless of whether that overdose occurred because of drugs Shayne ingested before or after being taken into District 4's custody.  Given that Shayne also ingested drugs while in Cell 19, Plaintiff's instruction would have more fully explained to the jury that Shayne's action did not absolve Defendants of liability.  Indeed, Officers Almeida and Picarello testified that they knew overnight detainees could be on drugs and could try to sneak drugs into District 4's cells.  (*See* 8/15 Tr. 46:7-21, 141:21-23, 143:7-10.)  Officer Almeida acknowledged that, because officers are limited in what searches they can conduct, detainees "could have drugs secreted somewhere in their body."  (8/15 Tr. 141:21-23, 143:7-10.)  But despite this knowledge, Officers Almeida and Picarello failed to adequately monitor Shayne.  Likewise,

Officers Bertocchi and Freire observed Shayne struggling to stand, a sign of intoxication, but failed to inform any other officer of the need to appropriately monitor Shayne.  *See supra* pp. 5-6.  Given that Defendants were all trained that people who are really high "should not be left alone because they may slip into an overdose," (8/13 Tr. 93:19-94:9 (Higgins)), that risk of overdose is what made Defendants' conduct—their failure to adequately monitor Shayne—tortious.  The risk of overdose remains the same, regardless of whether that overdose occurred because Shayne "slip[ped] into an overdose" due to drugs he ingested prior to his arrest or because Shayne ingested additional drugs in Cell 19.  In other words, failing to instruct the jury fully on the scope of proximate causation was not harmless error, given that the full instruction would have made clear that Defendants' inaction could be a proximate cause of Shayne's death if Shayne's overdose was the same risk that made their failure to monitor Shayne throughout the night tortious.

**C.    The Jury's Verdict as to the § 1983 Claim Should Also Be Set Aside Because of Several Evidentiary Errors.**

An evidentiary ruling warrants a new trial where that ruling is not harmless.  *McDonough*, 452 F.3d at 19-20.  "Erroneous evidentiary rulings are harmless if it is highly probable that the error did not affect the outcome of the case."  *Id.* (citation omitted).  Several evidentiary errors in the pre-trial orders and at trial were not harmless.  Although each error alone was of sufficient importance to affect the outcome, the errors also have "an aggregate effect that impugns the fairness of the proceedings and thus undermines the trustworthiness of the verdict."  *Williams v. Drake*, 146 F.3d 44, 49 (1st Cir. 1998) (citation omitted).  For these reasons, Plaintiff is entitled to a new trial.

**1.    The Exclusion of Officer Lydon.**

The Court's granting (ECF No. 156) of Defendants' motion *in limine* to exclude Officer James Lydon (ECF No. 122) is reversible error.  Similar to the testimony of Officer Higgins (*supra*

p. 5), Officer Lydon's testimony was relevant to what the officers knew or would have recognized when evaluating and monitoring Shayne during the early hours of July 14, 2019.  Officer Lydon is a 29-year veteran of the Boston Police Department and the Academy instructor responsible for teaching the procedures for booking prisoners and conducting cell checks.  (Ex. 3, Lydon Dep. Tr. at 21:3-9, 24:19-23, 37:1-2.)  Officer Lydon personally trained Defendants Bertocchi, Freire, and Picarello. (*Id*. at 18:11-18, 21:12-13, 118:2-119:3.) Officer Lydon was expected to testify that he instructed recruits that they must evaluate every arrestee and assess whether they are presently under the influence of drugs or alcohol.  (*Id*. at 89:1-14, 92:5-11.)  He instructs that officers performing cell checks are required to gauge a prisoner's well-being, which includes looking for signs of breathing, such as by evaluating a prisoner's chest rise and fall.  (*Id*. at 67:17-21, 68:15-24, 69:12-17, 70:10-18, 72:22-25.)  He further instructs that where an officer observes during a cell check that a prisoner might be in distress, they should take steps such as tapping on the glass to rouse the prisoner, entering the cell for closer inspection, and summoning aid of additional officers and EMS if needed.  (*Id*. at 61:20-25, 69:18-70:1.)

If the jury had been allowed to hear Officer Lydon's testimony, they could have reasonably concluded that Defendants knew they needed to assess Shayne's condition and, instead of taking such measures, elected to deliberately disregard the evidence of Shayne's serious medical need. This evidence is especially trenchant with respect to the credibility of Defendants' testimony that they did not perceive anything wrong with Shayne during their cell checks, even after Shayne ceased moving entirely.  (8/15 Tr. 71:2-10, 111:18-23; 8/16 Tr. 28:25-29:3.)

A jury could have further understood from Officer Lydon's testimony that Defendants' suggestion that they were not as well-trained as Officer Doolan in conducting cell checks (8/16 Tr. 68:14-71:3; 8/17 Tr. 64:19-25) was inaccurate.  Officer Lydon's training was substantially the

same as Officer Doolan's training from the sheriff's department, including what to look for in a cell, checking for chest rise and fall, and taking appropriate next steps. (*Id.*) Testimony from Officer Lydon directly contradicts Defendants' comments regarding their training and their alleged inability to perceive that Shayne was in distress and would have undermined the credibility of these assertions. The exclusion of Officer Lydon's testimony, therefore, was not harmless.

### 2. The Exclusion of Officer Doolan's Form 26 Report and Testimony.

The Court's improper exclusion of Officer Sean Doolan's Form 26 report and relevant testimony is reversible error. Although Defendants did not originally object to the admission of the Form 26 report, the Court suggested they should, and Defendants withdrew their non-objection and objected. (8/16 Tr. 57:20-58:5.) The Court sustained the objection and excluded the Form 26 report because "[p]olice reports are hearsay" and "[j]ust because you write it down doesn't make it a business record. It's not a usual occurring event." (*Id*. 57:20-58:11.) The Court also sustained an objection regarding Officer Doolan's testimony as to why all the prisoners, except for Shayne, were awake while Officer Doolan checked cells at 5:50 AM. (*Id*. at 58:22-59:3.)

Evidence at trial established that the report qualifies as a business record. Officer Doolan testified it "is an internal document … to later be worked on by the detectives." (8/16 Tr. 55:6-21.) Officer Doolan testified that he wrote it several hours after Shayne's death as part of his work as a police officer, and that Form 26 reports generally include details, are accurate, and are relied on by detectives. (*Id*. at 56:2-16, 56:24-57:8.) Other testimony corroborated that Form 26 reports are "internal administrative document[s] within the Boston Police Department" (8/14 Tr. 137:5-14) and are prepared when there has been an incident of some kind (8/15 Tr. 134:25-135:4) at the request of superiors as within the officers' duties in the course of their work. (*Id*. at 39:16-40:4.)

Officer Doolan's Form 26 report and testimony concerning the status of all other prisoners

when he conducted his first cell check that evening was essential to counter Defendants' self-serving narrative.  First, Defendants attempted to elicit testimony and argued in closing arguments that Officer Doolan was not concerned about Shayne's position. (8/16 Tr. 67:16–18; 8/19 Tr. 64:12–13.)  While Officer Doolan agreed in his testimony that Shayne's position was one of "extreme discomfort," the jury was not permitted to see the evidence that these were Officer Doolan's own words in the immediate aftermath of Shayne's death.  Specifically, Officer Doolan wrote in his Form 26 that he "observed a prisoner, Shayne STILPHEN (08/09/1990), in Cell 19, resting in a position that looked as if it would be of extreme discomfort for most individuals." (Ex. 2, Doolan Form 26.)  Second, as Plaintiff attempted to establish in her direct examination, Officer Doolan wrote in his Form 26 report and previously testified that all of the prisoners were awake at 5:50 AM because of earlier events at District 4.  (*See* Ex. 2, Doolan Form 26; Ex. 1, Doolan Dep. Tr. 188:18-189:6.)  This calls into question the credibility of Officers Almeida's and Picarello's testimony that they believed Shayne was sleeping despite all of the other prisoners being awake due to the commotion caused by the Perry incident.  (8/15 Tr. 71:8-10; 8/16 Tr. 17:22-24.) Therefore, excluding the Form 26 report and Officer Doolan's testimony was not harmless error.

### 3.    The Exclusion of Evidence as to Cristhian Geigel's Death at District 4.

Both Defendants (ECF No. 127) and Plaintiff (ECF No. 140) filed a motion *in limine* concerning evidence relating to an incident at District 4 involving the death of another inmate, Cristhian Geigel, due to opioid overdose.  The Court ruled that Plaintiff was allowed to introduce evidence to demonstrate the knowledge of Officer Almeida, who conducted cell checks while Mr. Geigel lay dead in his cell, and Officer Bertocchi, who was informed of Mr. Geigel's death.

At trial, Officer Bertocchi testified that he did not recall being told that Mr. Geigel died of an overdose.  (8/14 Tr. 113:19-114:2.)  Officer Almeida testified that he has "never seen the

paperwork" when asked if he knew whether Mr. Geigel had died of an overdose (8/15 Tr. 92:10-18), but later testified that Mr. Geigel had died several hours before Officer Almeida had come on shift. (8/16 Tr. 19:5-9.) Unlike Officers Bertocchi and Almeida's testimony, Officer Doolan testified that he had learned shortly after Mr. Geigel's death through other officers or communications from superiors that it was an overdose death. (8/16 Tr. 45:20-46:1.) In contrast to the leeway that Defendants were given to testify to facts underlying another incident at District 4 the night of Shayne's death involving the arrest of Mr. Perry and despite the Court's *in limine* ruling, Plaintiff was not allowed to bring forth evidence concerning the factual circumstances of Mr. Geigel's death, including that Mr. Geigel had also secreted drugs into his cell, overdosed, and lain dead in his cell for fourteen hours. This was both highly probative and circumstantial evidence of the Defendants' own knowledge of these details, and its exclusion was not harmless error.

### 4. Testimony from Officers Bertocchi and Almeida.

Finally, Officers Bertocchi and Almeida should not have been permitted to testify regarding events about which they had no direct knowledge or memory. First, Defendants spent significant time discussing the incident with Mr. Perry. Officers Almeida and Bertocchi testified extensively, despite having limited involvement, particularly about irrelevant details concerning what happened before Mr. Perry arrived at District 4. Of note, Officer Bertocchi testified that he was "not specifically involved" in Mr. Perry's arrest but was "in the area." (8/15 Tr. 14:3-4.) Over Plaintiff's objection, Officer Bertocchi nevertheless detailed how Mr. Perry was placed in handcuffs, although that happened before Officer Bertocchi had even arrived. (*Id*. at 14:11-25.) Officer Bertocchi should not have been allowed to testify to events of which he had no firsthand knowledge. This was not harmless error: such testimony likely confused the jury and improperly suggested that Officer Bertocchi had greater involvement in the Perry incident than he did.

Defendants also elicited testimony from Officer Almeida about the bail process, emphasizing that Shayne did not request a phone call and therefore did not make bail and implying that Shayne's death was his own fault.  However, Officer Almeida testified:  "I don't remember doing it, but I would have definitely encouraged [Shayne] to make a phone call to get out of there." (8/15 Tr. at 151:24-152:8.)  After testifying to his lack of memory, Officer Almeida in the very next question was prompted by Defendants' counsel to testify that he encourages every prisoner that comes in the station to get bail.  (*Id*. at 152:9-24.)  The Court's basis for overruling Plaintiff's objection was that "these things happen."  (*Id*.)  Officer Almeida's testimony was improper and related to the significant issue of his state of mind, and therefore was not harmless.

In sum, Plaintiff has established that each of these errors, and certainly the totality of these errors, "cast a shadow upon the integrity of the verdict."  *Williams*, 146 F.3d at 49 (citation omitted).  Plaintiff is therefore entitled to a new trial.

## II.    Alternatively, This Court Should Enter Final Judgment as to the Officers on the § 1983 and Wrongful Death Claims and Stay the Claims Against the City.

Defendants moved to bifurcate the claims against the officers and City, which this Court granted (ECF No. 115).  The § 1983 and wrongful death claims against the officers proceeded to trial, while the § 1983 and ADA claims against the City have not yet proceeded to trial.  Because an appeal would clarify, among other things, the governing standard for pretrial detainees' Fourteenth Amendment claims under § 1983 and because there is no just reason for delay, if the Court denies Plaintiff's motion for a new trial, Plaintiff requests that the Court enter final judgment pursuant to Federal Rule of Civil Procedure 54(b) for the officers on the § 1983 and wrongful death claims.  Plaintiff also requests that the claims against the City be stayed pending appeal.

### A.    This Court Should Enter Final Judgment Under Rule 54(b).

When an action, like this one, "presents more than one claim for relief … or when multiple

parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b). In other words, Rule 54(b) "permits a district court to issue a partial final judgment that is immediately appealable as to particular claims or parties when those claims or parties can be sufficiently separated from other claims or parties in the case." *Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 28 (1st Cir. 2022). Partial final judgment is appropriate where "the court supportably determines both that its decision regarding a claim or party is sufficiently final and that 'there is no just reason for delaying' an immediate appeal." *Id.* (quoting Fed. R. Civ. P. 54(b)) (alteration omitted).

The "First Circuit uses a two-step approach in determining whether entry of separate and final judgment is appropriate." *B2 Opportunity Fund, LLC v. Trabelsi*, 2017 WL 8408404, at *1 (D. Mass. Nov. 30, 2017). "First, the ruling underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally." *Id.* (quoting *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 579 (1st Cir. 1994)). The "finality requirement is satisfied as long as the 'trial court action underlying the judgment disposed of all the rights and liabilities of at least one party as to at least one claim.'" *Amyndas Pharm.*, 48 F.4th at 28 (quoting *Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996)).

Second, the court must determine whether "'there is no just reason for delay' in entering judgment." *B2 Opportunity Fund*, 2017 WL 8408404, at *1 (quoting *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 43 (1st Cir. 1988)). Courts consider, among other factors, "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or

absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Allis-Chalmers Corp. v. Phila. Elec.*, 521 F.2d 360, 364 (3d Cir. 1975) (footnotes omitted); *Spiegel*, 843 F.2d at 43 & n.3 (referring to *Allis-Chalmers* factors as "a general compendium, helpful as a guide"). If "the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order." *Spiegel*, 843 F.2d at 43.

### 1.     The Jury Verdict Is Final With Respect to the Individual Officers.

This Court should enter a Rule 54(b) judgment because, if the Court denies Plaintiff's new trial motion, the jury verdict for the officers on the § 1983 and wrongful death claims "is final in the sense that it disposes completely … of all claims against a given defendant." *See Maldonado-Denis*, 23 F.3d at 580; *see also* Wright & Miller § 2656 (4th ed.) ("[A] final judgment may be entered on jury verdicts …."). The "fact that separate trials have been ordered under Rule 42(b) does not affect the finality of the judgment entered following each separate trial for purposes of Rule 54(b)." Wright & Miller § 2656 (citing *Haverhill Gazette Co. v. Union Leader*, 333 F.2d 798, 803 (1st Cir. 1964)) (footnotes omitted).

### 2.     There Is No Just Reason To Delay Entry of Final Judgment as to the Claims Against the Individual Defendants.

Final judgment is appropriate because the need for review will not be mooted by future developments in the district court, the First Circuit will not be "obliged to consider the same issue a second time," and entering partial final judgment will decrease the likelihood of multiple trials. *See Allis-Chalmers*, 521 F.2d at 364. Whether the officers' conduct under the Fourteenth Amendment should be governed by the objective-reasonableness or deliberate-indifference standard, among other § 1983-related legal and evidentiary issues, is a question that will not be

affected by the outcome of the ADA claim and accordingly will not be re-reviewed by the First Circuit. Additionally, finality on the claims against the individual officers will also prevent the possibility of needing multiple trials. If the Court waits to enter final judgment until after the resolution of all claims against the City, a trial against the City on the ADA claim would be needed before any appeal could proceed. Then, if Plaintiff appeals and obtains a reversal as to at least the § 1983 claims against the individual officers, the parties would potentially have to conduct two more additional trials, one against the officers under the correct legal standard and, if successful, another against the City. Accordingly, because the issues for appeal "are ripe for review and distinct from the merits of the claim[] remaining against [the City]" under the ADA, *see Amyndas Pharm.*, 48 F.4th at 29, this "case presents the paradigmatic example of where a decision in a multi-claim action should be sent upstairs immediately," *B2 Opportunity Fund*, 2017 WL 8408404, at *3.

In addition to entering partial final judgment, this Court should stay the claims against the City pending appeal. *See Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992) ("federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention"); *New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 36 (D. Mass. 2015) ("[e]very court is vested with the power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Given that entering partial final judgment will mitigate the likelihood of multiple trials, staying proceedings on the claims against the City until a First Circuit decision on the claims against the officers will respect both the "time and effort" for the court and litigants. *See New Balance*, 86 F. Supp. 3d at 36. This Court should accordingly enter final judgment for

the individual defendants on the § 1983 and wrongful death claims while staying the § 1983 and ADA claims against the City.

## CONCLUSION

For these reasons, this Court should grant Plaintiff's motion for a new trial.  Alternatively, this Court should enter final judgment for the individual defendants on the § 1983 and wrongful death claims while staying the § 1983 and ADA claim against the City pending appeal.

Dated: September 16, 2024                    Respectfully submitted,

                                             */s/ Robert Frederickson III*
                                             Robert Frederickson III (BBO #670111)
                                             GOODWIN PROCTER LLP
                                             100 Northern Avenue
                                             Boston, Massachusetts 02210
                                             Tel.: (617) 570-1000
                                             rfrederickson@goodwinlaw.com

                                             Jessie J. Rossman (BBO # 670685)
                                             Adriana Lafaille (BBO #680210)
                                             Isabel Burlingame (BBO #710027)
                                             American Civil Liberties Union
                                             Foundation of Massachusetts, Inc.
                                             One Center Plaza, Suite 850
                                             Boston, MA 02108
                                             Tel.: (617) 482-3170
                                             jrossman@aclum.org
                                             alafaille@aclum.org
                                             iburlingame@aclum.org

                                             Alexandra D. Valenti* (*Pro hac vice*)
                                             Christine Potkay* (*Pro hac vice*)
                                             Gabriella Montes* (*Pro hac vice*)
                                             Wrenne Bartlett* (*Pro hac vice*)
                                             GOODWIN PROCTER LLP
                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, NY 10018
                                             Tel.: (212) 459-7351
                                             avalenti@goodwinlaw.com
                                             cpotkay@goodwinlaw.com
                                             gmontes@goodwinlaw.com

                                             Matthew Ginther* (*Pro hac vice*)
                                             Rohiniyurie Tashima* (*Pro hac vice*)
                                             GOODWIN PROCTER LLP
                                             1900 N Street, NW
                                             Washington, DC 20036
                                             Tel.: (202) 346-4000
                                             mginther@goodwinlaw.com
                                             rtashima@goodwinlaw.com

                                             *Attorneys for Plaintiff Lynnel Cox, as administrator of
                                             the estate of Shayne R. Stilphen*

19

## **RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiff conferred with counsel for Defendants about the above motion on September 13, 2024, and the conference failed to resolve the disputes at issue.  Defendants oppose both the motion for a new trial and motion for partial final judgment.

/s/ Robert Frederickson III
Robert Frederickson III


## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2024, a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent via the CM/ECF system electronically to all counsel of record.

/s/ Robert Frederickson III
Robert Frederickson III