## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-11009-RGS

LYNNEL COX, as Administrator of the
Estate of Shayne R. Stilphen,

        Plaintiff,

v.

BOSTON POLICE DEPARTMENT,
ISMAEL ALMEIDA, PAULMICHAEL
BERTOCCHI, CATIA FREIRE and BRIAN
PICARELLO,

        Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL**

Defendants City of Boston (the "City"), Ismael Almeida, Paulmichael Bertocchi, Catia Freire, and Brian Picarello ("Defendants") and hereby oppose Plaintiff's Motion for a New Trial.

**I.**     **This Court Should Deny Plaintiff's Motion for New Trial.**

Under Fed. R. Civ. P. 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . " after a jury trial. A district court may override a jury verdict and order a new trial "if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *See Casillas-Dias v. Palau*, 463 F.3d 77, 81 (1st Cir. 2006).

**A.**   **The Motion for New Trial is Premature.**

Under Fed. R. Civ. P. 59(b), motions for new trial pursuant to Fed. R. Civ. P. 59(a) must be filed within 28 days after the entry of judgment. But no entry of judgment has entered in this case. One court in this district has noted that "[i]n the usual case, Rule 59 motions may be filed

1

prior to the entry of judgment simply because there is occasionally a delay between a court's memorandum opinion and the entry of judgment, which, pursuant to Rule 58, must be entered as a separate document." *Cox v. Massachusetts Dep't of Corr.*, No. 13-10379-FDS, 2018 WL 1586019, at *16 (Saylor, J.) (D. Mass. March 31, 2018). "In such cases," the court noted, "the judgment is effectively final even if, as a technical matter, judgment has not officially been entered." *Id.* The court contrasted that scenario with the situation in which "there is not yet any final judgment" because not all of the issues in the case had been resolved. *Id.*; *see also Hiebert Contracting Co. v. Trager*, 274 F. Supp. 801, 803 (D. Mass. 1967) ("The defendants have also filed and briefed a motion for a new trial. This motion is denied without prejudice because having been filed both prior to the entry of judgment and prior to the filing of any findings whatsoever on the issue of damages it is premature.").

Plaintiff presumably intends to file an immediate appeal if the Court denies the motion for new trial. There are no grounds to do so until final judgment enters. *See Peterman v. Indian Motorcycle Co.*, 216 F.2d 289, 290 (1st Cir. 1954). "Sometimes the losing party makes a motion for a new trial prior to the entry of judgment on the verdict." *Id*. "If the trial court denies the motion and then enters judgment, the order denying the motion for a new trial is an interlocutory order and as such is not appealable." *Id*. As the First Circuit noted in *Peterman*:

> But if the district court commits error of law in denying such motion for a new trial, such error necessarily infects the ensuing judgment entered in accordance with the verdict. Hence the losing party suffers no detriment through his inability to appeal from the interlocutory order denying a new trial, for his assertion of error will be presented to the appellate court by the taking of an appeal from the final judgment.

*Id*. at 290-291. Plaintiff seeks to put the cart before the horse – regardless of when the motion is considered, that decision will not be appealable until judgment enters.

Like the latter scenario envisioned by the court in the 2018 *Cox* decision, final judgment has not yet entered in the case because not all of the issues have been resolved. In particular, the two claims against the City have not yet been addressed. Accordingly, Plaintiff's motion for new trial is premature and should be denied.

**B.   The Court Correctly Applied the Deliberate Indifference Standard.**

Plaintiff's central argument in support of her motion for new trial is that the Court erred by applying the deliberate indifference standard to the § 1983 claims against the individual officers. This argument is without merit. The Court correctly noted that the two First Circuit cases decided after the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), involving claims of inadequate medical care for pretrial detainees have applied the Eighth Amendment deliberate indifference standard. *See Zingg v. Groblewski*, 907 F.3d 630, 634–635 (1st Cir. 2018); *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016). This Court's determination that the First Circuit continues to apply the deliberate indifference standard in pretrial detainee medical care cases even after *Kingsley* mirrors the reasoning of most other district courts in the Circuit. *See, e.g., Savino v. Souza*, 459 F. Supp. 3d 317, 329, n. 16 (D. Mass. 2020) (Young, J.) ("the First Circuit has continued to conduct the subjective inquiry in due process cases even after *Kingsley*"); *Johnson v. Hodgson*, 2015 WL 5609960, at *5 (D. Mass. Sept. 22, 2015) (Wolf, J.) (same); s*ee also Gomes v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 132, 147–148 (D.N.H. 2020) (summarizing cases).

Furthermore, at least one Circuit has analyzed in great detail the reasons why the excessive force claim in *Kingsley* should be treated differently from deliberate indifference: (1) the fact that *Kingsley* turned on considerations unique to excessive force, such as "whether the use of force amounted to punishment, not on the status of the detainee"; (2) the fact that "the

nature of a deliberate indifference claim infers a subjective component"; and (3) principles of stare decisis weigh against overruling Circuit precedent to extend a Supreme Court holding to a new category of claims. *Strain v. Regalado*, 977 F.3d 984, 991 (10th Cir. 2020) (emphasis added).

Plaintiff asserts that the Court's application of the deliberate indifference standard was prejudicial. Specifically, Plaintiff contends that without the intent requirement of the deliberate indifference standard, "there was sufficient evidence in the trial record for the jury to conclude that Defendants acted objectively unreasonably." (Mot. 4–5). However, Defendants emphasize that the issue of whether to apply the deliberate indifference or objective reasonableness standard bears only on the cases of one or at most two of the four individual defendants. Indeed, upon hearing the individual officers' oral motion for a judgment notwithstanding the verdict, the Court stated that it would almost certainly grant a judgment notwithstanding the verdict in favor of Officers Bertocchi and Freire, and perhaps even in favor of Officer Picarello, because Plaintiff had failed to meet her burden with respect to the first, objective prong of the deliberate indifference standard for those defendants:

> I will tell you now that it's almost 100 percent certain that I'm going to allow, if [the jury returns a verdict against the individual officers], a judgment, notwithstanding the verdict, with respect to Officers Bertocchi and Freire. I'm even open-minded to hear an argument about Officer Picarello, but the first two officers, they were gone before, from what I can see, that anything would have alerted them to any, as you said, serious medical need that required their intervention in that state . . . .

(Tr. VI, at 31). This was supported by the testimony of the one medical doctor to testify in this case, Dr. Ross MacDonald. He testified that Stilphen was merely showing signs of intoxication prior to being placed in his cell, and that he didn't show any signs of overdose until 4:48 a.m. (Tr. II, at 53). He also testified that the fact that Stilphen took fentanyl in his cell in the interim

"looms large in this case" and "would play heavily in an analysis of what caused Shayne's death." (Tr. II, at 58-59). Other than Officer Bertocchi's role in rendering CPR, neither he nor Officer Freire saw Shayne at any point after he had started taking the fentanyl. And the one time that Officer Picarello passed by Stilphen's cell after he had overdosed, it was not for a regular cell check, but to provide the prisoners with breakfast.[1] Regardless of what standard applies, Plaintiff failed to prove the element of an objective risk of serious harm with respect to Officer Bertocchi, Office Freire, and possibly Officer Picarello. Accordingly, the judge's instructions did not cause her prejudice for her claims against those defendants.

### C.  The Court Properly Instructed the Jury on Causation.

Next, Plaintiff argues that a new trial is warranted because "the jury was not fully instructed with respect to proximate cause." (Mot 7–8).

The Court instructed the jury on proximate cause as follows:

> Proximate cause means that there must be a causal connection between a defendant's actions and a plaintiff's injuries. An act or omission is a proximate cause if it was a substantial factor in bringing about or causing an injury, or stated another way, that the injury was a reasonably foreseeable consequence of a defendant's acts or failure to act.

(Tr. VI, at 116). In her suggested edits to the jury instructions, Plaintiff proposed adding language to the Court's instruction on proximate cause:

> In other words, a defendant's actions or inactions are the proximate cause of the injury if the injury arose from the same general type of danger that was among the

---

[1] Plaintiff contrasts the actions of Officer Doolan to the actions of Defendants by suggesting that Doolan immediately rendered aid when he saw Stilphen in the hinged position he had been in on and off throughout his time in custody. Doolan repeatedly testified that it was the lack of responsiveness, and not the hinged position, that caused him to call for the key to the cell. As seen on the video, Doolan passes by the cell the first time and sees Stilphen in the hinged position but takes no further action.  Had Stilphen responded in any way to his knock on the door, Doolan "would have continued on." "If I got some type of response, good enough for me." (Tr. V, at 67). In other words, had Stilphen responded to stimuli as he did earlier in the night with Defendants, he would not have gone into the cell or rendered medical aid.

> risks the defendant should have taken steps to avoid. The defendant does not need
> to have been able to foresee the precise sequence of events as they unfolded, so
> long as the injury was among the same general kind of harm that was a
> foreseeable consequence of the defendant's risk-creating conduct.

(Plaintiff's Proposed Edits to Jury Instructions, 19 – 20). The Court did not adopt the proposed

language, characterizing it as a "re-description of proximate cause" and stating that it was

"impressed with the verbiage but I don't understand it, and if I don't understand it, I don't know

how a jury would understand it." (Tr. VI, at 33–34). After the Court read its instructions to the

jury, Plaintiff raised the following objection:

> [W]e object to the jury not being instructed that defendants' actions or inactions
> are the proximate cause of the injury if the injury arose from the same general
> type of danger among the risks the defendant should have taken steps to avoid and
> the defendant does not need to have been able to foresee the precise sequence of
> events as they unfolded so long as an injury was along the same general kind of
> harm that was a foreseeable risk causing conduct.

(Tr. VI, at 125). The Court stated in response: "If we have time later, you can explain what that

means, but I think I basically said that." (Tr. VI, at 125).

There was no error in the instruction on proximate cause. Not only did the proposed

instruction suffer from the deficiencies identified by the Court, but Plaintiff has also failed to cite

any authority standing for the proposition that the Court's instruction was erroneous as given to

the jury. By its own terms, Section 29 of the Restatement (Third) of Torts is a restriction on a

defendant's liability, being titled "Limitations On Liability For Tortious Conduct," and stating

that "[a]n actor's liability is limited to those harms that result from the risks that made the actor's

conduct tortious." In this case, Plaintiff sought to use the Restatement language not to limit but to

expand the scope of proximate causation. Likewise, in *Doull v. Foster*, 487 Mass. 1 (2021), a

Massachusetts state case dealing with instructions for negligence cases involving multiple

alleged causes of harm, the Supreme Judicial Court observed that proving that a defendant was

6

the proximate cause of a harm means that the harm must have been "within the scope of the foreseeable risk arising from the negligent conduct," *id*. at 8 (quoting *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 45 (2009)), language that is substantially similar to the instruction given by the Court.

### D.  The Various Evidentiary Issues Raised by Plaintiff Do Not Furnish Grounds for a New Trial.

In addition to her arguments about the Court's instructions to the jury, Plaintiff raises a number of evidentiary issues in support of her motion for new trial. These arguments are also without merit.

#### 1.  The Court Properly Excluded Officer Lydon's Testimony

First, Plaintiff argues that the Court erred by allowing Defendants' motion to exclude the testimony of Officer James Lydon. She notes that Officer Lydon "was expected to testify that he instructed recruits that they must evaluate every arrestee and assess whether they are presently under the influence of drugs or alcohol," and that "he instructs that officers performing cell checks are required to gauge a prisoner's well-being, which includes looking for signs of breathing, such as by evaluating a prisoner's chest rise and fall." (Mot. 10). However, the Court properly determined that any probative value from Officer Lydon's testimony would be substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  First, given that Officer Almeida was not trained by Officer Lydon and Officers Bertocchi and Freire did not conduct any of Stilphen's cell checks, Officer Lydon's testimony would only have relevance to Officer Picarello. Second, the Court properly determined that if Officer Lydon had been allowed to testify, the jury might be led to believe that the standard is whether Officer Picarello adhered to Boston Police Rule 318, or worse yet, whether Officer Picarello heeded

Officer Lydon's particular teachings in the one five-hour booking class that he received as part of his six-month training. *See Boveri v. Saugus*, 113 F.3d 4, 7 (1st Cir. 1997) ("[A] regulatory violation, like a violation of state law, is not inherently sufficient to support a §1983 claim.")

Moreover, the prejudice to Plaintiff resulting from the exclusion of Officer Lydon was minimal. Plaintiff's counsel had Officer Freire admit that she was trained that the booking officer should walk down the cellblock every fifteen minutes and make sure that the prisoners are okay in their cell. (Tr. III, at 43). Plaintiff's counsel also asked Officer Bertocchi extensive questions about the trainings he received in the course of his career, such as those on opioid addiction and intoxication, the administration of CPR and Narcan, when to seek medical assistance, and information about the D4 district. (Tr. III, at 107–108, 109–111). Most notably, Plaintiff's counsel directly asked Officer Picarello, over defense counsel's objection, whether he was trained to look into the cell when conducting a cell check, and whether he was trained to see if the prisoner is breathing to make sure he is still alive. (Tr. IV, at 29–30). Any testimony that Plaintiff wanted to obtain from Office Lydon she was able to—or at least had to the opportunity to—elicit directly from the defendant officers.

### 2. Officer Doolan's Form 26 Is Inadmissible Hearsay

Next, Plaintiff takes issue with the Court's exclusion of Officer Doolan's Form 26 Report concerning Stilphen's death. The Court properly determined that it is inadmissible hearsay.[2] There is no dispute that the Form 26 is an out-of-court statement or that it was offered at trial for

---

[2] Defense counsel did not initially object to the attempt to enter Officer Doolan's Form 26 for the same reason that its omission from evidence is not prejudicial – Doolan intended to and did testify to its contents on direct examination.  The key parts of the Form 26 for Plaintiff – that Doolan described the hinged position as one of extreme discomfort and that other prisoners were awake – elicited in the very next questions asked after the Court sustained the objection. Moreover, counsel asked him to leave the document out so that she could refresh his recollection if necessary.

the truth of the matter asserted.  The Form 26 is not an admission of a party opponent, as neither Doolan nor the City of Boston was a party to this trial.  Plaintiff's only argument for admission of Officer Doolan's Form 26 is as a record of a regularly conducted activity – or business record - under Fed. R. Evid. 803(6).  Relevant here, in order to qualify as a business record, the Court was required to find that Officer Doolan's Form 26 was kept in the course of a regularly conducted activity of the Boston Police Department and "making the record was a regular practice of that activity."  As Officer Doolan testified, Form 26s are written when an officer needs to provide specific and detailed information that cannot be put into the publicly disseminated report or as an interdepartmental report for other departments such as Homicide. (Tr. V, at 56-57). Officer Almeida testified the prior day that a Form 26 is an internal department form that you fill out or prepare when there has been an incident of some kind.  (Tr. IV, at 135). Officer Picarello testified that he would write a Form 26 when instructed by a boss.  (Tr. IV, at 39). Doolan's testimony was that it's "not a regular occurrence." (Tr. V, at 56).  Based on this testimony regarding the use of the Form 26, the Court properly concluded that "It's not a usual occurring event," and thus not a business record.

Further, even if the Form 26 were a business record, the Court's ruling was not prejudicial, as the contents of Officer Doolan's Form 26 that Plaintiff wished to highlight were elicited through live testimony at trial. Officer Doolan admitted that when he first came upon Stilphen in his cell, "he was in a position that [Officer Doolan] would describe as being one of extreme discomfort." (Tr. V, at 58). Officer Doolan also admitted that "other prisoners [were] awake that night when he walked up and down the hallway. (Tr. V, at 58).

### 3.  The Court Properly Limited The Evidence Related To Geigel

Plaintiff also challenges the Court's rulings on testimony about the death of Cristhian Geigel. Plaintiff argued in her motion *in limine* to admit evidence of the Geigel incident that it was critical to show that Officer Almeida had "first-hand knowledge that Mr. Geigel had recently died of an overdose in his cell while Officer Almeida and others walked by, and where Officer Almeida had purportedly assumed Mr. Geigel was asleep." (ECF No. 140 at 3). In response to the parties' motions *in limine*, the Court initially ruled that "Cox may introduce evidence regarding the Geigel incident (this evidence is admissible under Rule 404(b) to show the knowledge of Officers Almeida and Bertocchi)." (ECF No. 159). On the third day of trial, the Court clarified its ruling and stated that with respect to Officer Almeida, it would allow questions about his involvement in the Geigel incident and that he knew of Geigel's death; with respect to Officer Bertocchi, the Court would allow questions about his knowledge of Geigel's death and how he came by that knowledge. (Tr. III, at 74–75).

Now Plaintiff protests that she was "not allowed to bring forth evidence concerning the factual circumstances of Mr. Geigel's death, including that Mr. Geigel had also secreted drugs into his cell, overdosed, and lain dead in his cell for fourteen hours." (Mot. 13). The final contention is false given that Officer Almeida admitted that Geigel died before his overnight shift and was found dead much later. (Tr. IV, at 92; V/32). Beyond this, it is unclear what Plaintiff's complaint is: she was allowed to elicit testimony about Officer Almeida's knowledge of and involvement in the Geigel incident, and she did just that. To the extent that she contends she should have been allowed to introduce extrinsic, substantive details about Geigel's death, such evidence would have gone far beyond testimony regarding the officers' knowledge—the

only basis on which the court allowed her to introduce testimony. Such evidence could be offered for no other purpose but as inadmissible propensity evidence under Fed. R. Evid. 404(b).

### 4. The Testimony Of Officers Almeida And Bertocchi Regarding The Perry Incident and Bail Was Properly Admitted.

Plaintiff also argues that the Court erred by allowing Officer Bertocchi to testify about what happened to Joseph Perry before he was brought to the D4 station. There was no error, given that Officer Bertocchi was at the arrest scene when Perry was placed in the wagon. (Tr. IV, at 14–15). Moreover, Officer Bertocchi's testimony did not cause prejudice to Plaintiff, as Officer Doolan, who indisputably was at the arrest scene when Perry was arrested, also testified in detail about how Perry was placed in handcuffs and leg shackles. (Tr. V, at 84–85). Finally, the Court correctly allowed Officer Almeida to testify about his general practice of informing arrestees about bail, even if he did not specifically remember doing so in the case of Stilphen. Any deficiency in Officer Almeida's testimony on this topic was squarely before the jury and went to the weight they accorded to the testimony rather than to its admissibility.

## II. Rather than Granting Plaintiff's Motion for Final Judgment with Respect to the Individual Officer and a Stay of the Claims Against the City, this Court Should Dismiss the _Monell_ and ADA Claims and Enter Final Judgment for the Defendants on All Counts.

As an alternative to the motion for new trial, Plaintiff requests that the Court enter final judgment for the officers on the § 1983 and wrongful death claims pursuant to Fed. R. Civ. P. 54(b) while the claims against the City are stayed on appeal. Partial final judgment is appropriate where "the court supportably determines both that its decision regarding a claim or party is sufficiently final and that 'there is no just reason for delaying' an immediate appeal." _Amyndas Pharm., S.A. v. Zealand Pharma A/S_, 48 F.4th 18, 28 (1st Cir. 2022) (quoting Fed. R. Civ. P. 54(b)) (alteration omitted). "The process, tilted from the start against fragmentation of appeals, is

necessarily case-specific." *Spiegel v. Trustees of Tufts Coll.*, 843 F.2d 38, 43 (1st Cir. 1988).

Plaintiff contends that the various issues raised in the first part of its motion are questions that

"will not be affected by the outcome of the ADA claim and accordingly will not be re-reviewed

by the First Circuit." (Mot. 16–17). While Defendants agree that the verdict is final with respect

to the individual officers, they disagree that this Court should enter a separate judgment for the

officers and stay the remaining claims against the City. Instead, this Court should take the

opportunity presented by consideration of this motion to dismiss the remaining claims against the

City. *See*, *e.g.*, *Cox*, 2018 WL 1586019, at *16 (although new trial motion was premature, as it

was filed before resolution of sovereign immunity and equitable relief, District Court reached the

issues because it had the power to act and the issues had been briefed in full). Contrary to the

argument of Plaintiff, denial of the Rule 54(b) motion would not create the specter of three

additional trials rather than two. Rather, based on the defense verdict in favor of the individual

officers, the Court can and should dispose of the claims against the City without any need for an

additional trial.

　　　　First, the dismissal of the *Monell* claim follows naturally from the verdict in favor of the

individual officers. In order to prove her § 1983 claim against the City, Plaintiff must present

facts sufficient to meet the *Monell* standard, according to which municipalities may be held

liable under § 1983 when the "execution of a government's policy or custom . . . inflicts [an]

injury." 436 U.S. 658, 694 (1978). A foundational element of a municipal liability claim under

§ 1983 is the occurrence of an underlying "constitutional deprivation." *See City of Canton, Ohio

v. Harris*, 489 U.S. 378, 389 (1989); *see also Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902

(1st Cir. 1988). But where the jury determined that there was no underlying constitutional

deprivation committed by the individual officers, there can be no claim under § 1983 against the City.

Second, this Court should dismiss the ADA claim against the City. Whether Plaintiff may bring an ADA claim against the City for Stilphen's death is a pure issue of law that would most efficiently be considered by the First Circuit at the same time as the standard for the § 1983 claims against the individual officers. Indeed, the City continues to maintain that the ADA claim is barred by the express language of the statute, according to which a person "currently engaging in the illegal use of drugs" does not meet the definition of a "qualified individual with a disability." *See* 42 U.S.C. 42114(a). To the City's knowledge, 28 CFR§ 35.131(b), the subregulation quoted by the Court in its Order denying the City's motion for summary judgment on the ADA claim, has only ever been referenced in two previous federal decisions, both allowing motions to dismiss of pro se plaintiffs' complaints and offering no interpretation of the regulation's provisions. *See Faircloth v. Timme*, 2013 WL 1232310 (D. Colo. March 27, 2013); *Thorne v. Hale*, 2009 WL 890136 (E.D. Va. Marc 26, 2009). By its own terms, § 35.131(b) applies only to entities that provide health or drug rehabilitation services, as the title of the subsection is "Health and drug rehabilitation services," and the text of the regulation deals with the denial of "health services, or drug rehabilitation services." *See* 28 CFR § 35.131(b)(1). Likewise, Appendix B to Part 35 does not contemplate that the regulation applies to any setting outside of a health care facility or rehabilitation program, let alone to overnight or weekend detention at a police station:

> Paragraph (b) provides a limited exception to the exclusion of current illegal users of drugs from the protections of the Act. It prohibits denial of health services, or services provided in connection with drug rehabilitation to an individual on the basis of current illegal use of drugs, if the individual is otherwise entitled to such services. **A health care facility, such as a hospital or clinic**, may not refuse treatment to an individual in need of the services it provides on the grounds that

the individual is illegally using drugs, but it is not required by this section to provide services that it does not ordinarily provide. For example, **a health care facility that specializes in a particular type of treatment, such as care of burn victims**, is not required to provide drug rehabilitation services, but it cannot refuse to treat a individual's burns on the grounds that the individual is illegally using drugs.

Some commenters pointed out that abstention from the use of drugs is an essential condition of participation in some **drug rehabilitation programs**, and may be a necessary requirement in **inpatient or residential settings**. The Department believes that this comment is well-founded. Congress clearly intended to prohibit exclusion from drug treatment programs of the very individuals who need such programs because of their use of drugs, but, once an individual has been admitted to a program, abstention may be a necessary and appropriate condition to continued participation. The final rule therefore provides that a **drug rehabilitation or treatment program** may prohibit illegal use of drugs by individuals while they are participating in the program.

28 C.F.R. § 35 app. B (2010) (emphasis added).

At a June 18 status hearing, the Court expressed skepticism about the applicability of § 35.131(b) to recent arrestees detained at a police station, noting that "it's not an open and shut case as to whether the regulation covers episodic failure to provide medical treatment as opposed to failure to provide healthcare, which really is and lies in many courts, directed to medical institutions, not police forces in terms of their duty." (June 18 Hrg. at 7). The Court also cast doubt on the idea that the ADA claim could survive if the Plaintiff failed to prove her § 1983 claim against the individual officers: "I am not so sure I'm with you on this if you don't show liability on the part of the officers, then any idea how you would ever prove an ADA case against the City." (June 18 Hrg. at 7–8). Given the jury verdict in favor of the individual officers and the paucity of case law on the subregulation cited by the Plaintiff, dismissal of the ADA claim would be appropriate. In the alternative, the City would be willing to submit a renewed motion for summary judgment on the ADA claim if the Court were to invite such a motion.

### III. Conclusion.

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's

Motion for New Trial and Motion for a Final Judgment with respect to the individual officers.

<div style="margin-left: 40%;">

Respectfully submitted,

**CITY OF BOSTON, ISMAEL
ALMEIDA, PAULMICHAEL
BERTOCCHI, CATIA FREIRE and
BRIAN PICARELLO**
By their attorneys:

ADAM CEDERBAUM
Corporation Counsel

/s/ Randall F. Maas
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Randall Maas (BBO# 684832)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4045 (Whitesell)
(617) 635-4042 (Maas)
edward.whitesell@boston.gov
randall.maas@boston.gov

</div>

Dated:  September 30, 2024

### Certificate of Service

I, Randall F. Maas, hereby certify that on September 30, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to any non-registered participants.

<div style="margin-left: 40%;">

/s/ Randall F. Maas
Randall F. Maas

</div>