UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11009-RGS

LYNNEL COX,
as Administrator of the Estate of Shayne R. Stilphen

v.

CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI,
CATIA FREIRE, and BRIAN PICARELLO

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR A NEW TRIAL, AND, IN THE ALTERNATIVE, MOTION
FOR PARTIAL, FINAL JUDGMENT AND STAY

October 29, 2024

STEARNS, D.J.

Following a four-day trial, a jury found defendant Boston Police Department officers Ismael Almeida, Paulmichael Bertocchi, Catia Freire, and Brian Picarello, not liable for failing to provide adequate medical care to Shayne Stilphen while he was in police custody during the early morning hours of July 14, 2019, in derogation of Stilphen's Fourteenth Amendment right secured by 42 U.S.C. § 1983.  The jury also found the officers not liable for causing Stilphen's wrongful death, Mass. Gen. Laws ch. 229, § 2.  Plaintiff Lynell Cox, acting as administrator of Stilphen's Estate, asks the court to order a new trial pursuant to Fed. R. Civ. P. 59(a), or, in the alternative, to

enter separate and final judgment for the officers pursuant to Fed. R. Civ. P. 54(b).  She further asks that the court stay, pending an appeal, her claims against the City of Boston under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978) (failure to train), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (disability discrimination).  Dkt # 194 at 1.  For its part, the City of Boston asks that the court dismiss the remaining *Monell* and ADA claims.  Dkt #198 at 12.

For the reasons explained below, Cox's motion for a new trial will be denied, as will be her motion to enter separate and final judgment and to stay her claims against the City of Boston.  In its opposition to Cox's motion, the City of Boston has requested the dismissal of the *Monell* claim, as the jury found that the officers did not violate Stilphen's constitutional rights. Consistent with the jury's determination, the court will dismiss the *Monell* claim.

## BACKGROUND

The essential facts are as follows.[1]  On July 14, 2019, around 1 a.m., Stilphen was arrested by Boston Police Department officers for breaking into a motor vehicle parked in the vicinity of the drug-infested "Mass and Cass"

---

[1] These facts will be supplemented as appropriate in the later discussion of Cox's claims of trial error.

area of Boston.  He was taken by the arresting officers to District 4, where he was booked, and then at approximately 2:20 a.m. placed in an individual cell where he was offered a carton of milk and a sandwich.  During the booking process, Stilphen appeared visibly intoxicated but responsive to police commands.  While alone in his cell, Stilphen swallowed fentanyl-laced drugs that he had concealed on his body.[2]  At 5:51 a.m. during a cell check, Officer Sean Doolan found Stilphen slumped in his cell and unresponsive. Doolan, Almeida, and Bertocchi performed CPR and administered Narcan. EMS transported Stilphen to Tufts Medical Center.  He died en route to Tufts or shortly thereafter of a fentanyl overdose.

Cox filed this lawsuit in federal district court on June 27, 2022.  The court bifurcated the claims against the officers from those against the City of Boston.  The claims against the officers, after discovery and motions practice, proceeded to trial.  On August 19, 2024, a jury found the officers not liable on the claims against them.  On September 16, 2024, Cox filed the instant motion.

**LEGAL STANDARD**

---

[2] As police did not have legal authority to conduct a strip search of Stilphen, *see Commonwealth v. Prophete*, 443 Mass. 548, 553-554 (2005), Cox (appropriately) makes no claim that the officers were negligent in failing to find the drugs hidden on Stilphen's person.

3

A district court may grant a motion for a new trial "if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *Thomas & Betts Corp. v. New Albertson's, Inc.*, 915 F.3d 36, 60 (1st Cir. 2019), quoting *Teixeira v. Town of Coventry*, 882 F.3d 13, 16 (1st Cir. 2018); *see also* Fed. R. Civ. P. 59(a).  In deciding a Rule 59(a) motion, "[t]he court may, though it is not required to, weigh the evidence and credibility of the testimony."  *Mejías-Aguayo v. Doreste-Rodríguez*, 863 F.3d 50, 54 (1st Cir. 2017).

## DISCUSSION

### I.  *New Trial*

Cox bases her motion for a new trial on six asserted grounds of alleged error.  First, Cox objects to the court's adoption of the standard of deliberate indifference to her Fourteenth Amendment inadequate care claim.  Second, she contends that the court gave the jury a less than fulsome definition of proximate cause.  And third, she faults four evidentiary rulings that the court made during the trial.

### a. *Deliberate-Indifference Standard*

Cox argues that the court erred in ruling that it was bound by prior First Circuit decisions in refusing to apply the objective-reasonableness standard that the Supreme Court adopted in § 1983 Fourteenth Amendment

excessive force cases in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).[3]  As the court pointed out, the First Circuit in *Zingg v. Groblewski*, 907 F.3d 630, 634-635 (1st Cir. 2018), and *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016), despite the *Kingsley* holding, had adhered to the deliberate-indifference standard in non-excessive force cases involving the Fourteenth Amendment rights of pretrial detainees.

While the Supreme Court in the nine years since the *Kingsley* decision has chosen not to extend the objective-unreasonableness standard beyond its facts, the argument that it should do so is not frivolous.  Indeed, the Circuits since *Kingsley* have found themselves at odds over the issue, with the Second, Seventh, and Ninth Circuits aligned with the objective test, while the First, Fifth, Eighth, and Eleventh Circuits have held *Kingsley* to be confined to excessive force claims.[4]  Whatever the merits of the debate, and

---

[3] More specifically, in *Kingsley*, the Supreme Court held that a pre-trial detainee asserting an excessive force claim under the Fourteenth Amendment need only show that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-397.

[4] *See Estate of Vallina v. Cnty. of Teller Sheriff's Off.*, 757 F. App'x 643, 646 (10th Cir. 2018), citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 34-35 (2d Cir. 2017); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419-420 (5th Cir. 2017).

accepting Cox's argument that the First Circuit in *Zingg* and *Miranda-Rivera* did not explicitly reject *Kingsley's* objective-unreasonableness test, in the absence of a squarely binding Supreme Court decision mandating a divergence, it is not within the authority of a district court to blaze trails contrary to existing First Circuit precedent.[5]

### b. Proximate Cause Jury Instruction

Cox next contends that a new trial is warranted because the jury was not fully instructed on the issue of proximate cause with respect to her wrongful death claim. The court instructed the jury on proximate cause as follows:

> An act or omission is a proximate cause if it was a substantial factor in bringing about or causing an injury, or stated another way, that the injury was a reasonably foreseeable consequence of a defendant's acts or failure to act.

Tr. Day 6 at 116:13-19.

Cox would have preferred that the jury be instructed that:

> Defendants' actions or inactions are the proximate cause of the injury if the injury arose from the same general type of danger among the risks the defendant should have taken steps to avoid and the defendant does not need to have been able to foresee the precise sequence of

---

[5] Most other district courts in this Circuit have been of the same mind. *See, e.g., Gomes v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 132, 147 (D.N.H. 2020); *Savino v. Souza*, 459 F. Supp. 3d 317, 329, n.16 (D. Mass. 2020); *Johnston v. Hodgson*, 2015 WL 5609960, at *5 (D. Mass. Sept. 22, 2015).

events as they unfolded so long as [the] injury was a[m]ong the same general kind of harm that was a foreseeable risk causing conduct.

Tr. Day 6 at 125:3-11; Dkt. # 195 at 12.

Cox's parsing of her proposed instruction in the factual context of Stilphen's case is difficult to follow, but in essence she seems to argue that, under her choice of definitions, the jury would have been able to find the officers liable for failing to anticipate the eventuality that all arrestees, Stilphen included, posed a risk of succumbing to an overdose and for failing to take the appropriate precautions.  This liability attaches regardless of any actions the officers took or failed to take with regard to Stilphen himself.  In other words, the officers should be held liable for failing to confront "the risk that [Stilphen] would overdose, regardless of whether that overdose occurred because of drugs [Stilphen] ingested before or after being taken into District 4's custody."  Dkt. # 195 at 12.

A jury instruction "constitutes reversible error only if it (i) is misleading, unduly complicating, or incorrect as a matter of law" and "(ii) cannot be considered harmless, *viz.*, as adversely affecting the jury verdict and the substantial rights of the objecting party." *Davignon v. Clemmey*, 322 F.3d 1, 9 (1st Cir. 2003) (internal quotation marks and citation omitted).  A court has considerable discretion in crafting an instruction; it need only "advert[ ] to the critical issues and instruct[ ] the jurors on the general legal

framework applicable to those issues." *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 80 (1st Cir. 2001).  "Clear, easily understood jury instructions are vitally important in assuring that jurors grasp subtle or highly nuanced legal concepts." *United States v. DeStefano,* 59 F.3d 1, 4 (1st Cir. 1995).

Cox's proposed instruction adds very little to the one given, other than a lot of words and a potential for juror confusion in its attempt to anchor causation in a *Palsgrafian* universe.  *See Zimmeran*, 262 F.3d at 80 (noting "[t]here is simply no legal requirement that a judge, called upon to instruct a jury in a complicated case, be precise to the point of pedantry").  The court's proximate cause instruction constituted a correct statement of law and reflected language that the Massachusetts Supreme Judicial Court (SJC) endorsed in *Doull v. Foster*, 487 Mass. 1, 8 (2021), a case both Cox and the City of Boston cite.  In that medical malpractice case involving jury instructions for negligence claims with multiple alleged causes of harm, the SJC determined that, to establish that a defendant's actions or omissions were a proximate cause, or legal cause of the harm, "the harm must have been 'within the scope of the foreseeable risk arising from the negligent conduct.'"

*Id.* at 8, quoting *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 45 (2009).[6]

Such language is consistent with the court's explanation to the jury that

---

[6] Cox cites *Doull* in support of her contention that this court's instruction "prevented the jury from having the full definition of proximate causation, as defined in the Restatement (Third) of Torts and adopted by Massachusetts state courts, particularly in light of this Court's reference to an act needing to be 'a substantial factor' to be a proximate cause." Dkt. # 195 at 12, citing *Doull*, 487 Mass. at 7. The SJC in *Doull* iterated that causation traditionally involved two separate components: a defendant had to be both a factual cause (or a cause in fact) and a legal cause of the harm (or a proximate cause). *Id.* at 7. The SJC held that for *factual causation* in negligence cases involving multiple alleged causes of harm, a but-for standard, rather than a substantial factor standard, is appropriate. *Id.* at 2. Here of course, there was only one alleged cause of harm – the failure of the defendants to properly monitor Stilphen while he was alone in his cell. The SJC determined that for *proximate cause*, or legal cause of harm, the proper standard requires the harm to have been "within the scope of the foreseeable risk arising from the negligent conduct." *Id.* at 8, quoting *Leavitt*, 454 Mass. at 45. The court mentioned the term "substantial factor" when it referred to proximate cause in its jury instructions. *See* Restatement (Third) § 29 comment a ("The 'substantial factor' requirement . . . in the Second Restatement of Torts has often been understood to address proximate cause, although that was not intended."). Although the Restatement (Third) of Torts and *Doull* recommend that going forward the substantial factor test should no longer be used in the context of factual causation, *Doull*, 487 Mass. at 9, the court's jury instruction adequately acquainted the jurors with the proper law, and if use of the word "substantial" amounted to error at all, the error at best was harmless. The word was juxtaposed with a "very clear and explicit statement" advising the jury that an injury is a proximate cause if it is a "reasonably foreseeable consequence of a defendant's acts or failure to act." *Cf. Hopkins v. Jordan Marine, Inc.* 271 F.3d 1, 4 (1st Cir. 2001) (holding "no harm was done" by the court's slip-of-the-tongue references to "the" proximate cause because they were juxtaposed with a "very clear and explicit statement" advising the jury that negligence playing "any part, no matter how small" was enough); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 569 (1st Cir. 1989) (holding that there was no error in the court's proximate

liability attached where an "injury was a reasonably foreseeable consequence of a defendant's acts or failure to act."  Tr. Day 6 at 116:13-19; *see Kibbe v. City of Springfield*, 777 F.2d 801, 810 (1st Cir. 1985) (noting a party "is not entitled to any specific words of instruction, but only to instructions that properly convey the applicable law of the case").

### c. Objections to Evidentiary Rulings

A district court evaluates post-verdict challenges to pretrial evidentiary rulings under, among other considerations, the harmless error standard of Fed. R. Civ. P. 61.  Erroneous evidentiary rulings "are harmless if it is highly probable that the error did not affect the outcome of the case*." McDonough v. City of Quincy*, 452 F.3d 8, 19-20 (1st Cir. 2006).

Cox first argues that the court erred in granting the City of Boston's motion *in limine* to exclude the testimony of Officer James Lydon.  Lydon was the Police Academy instructor who taught booking and cell check procedures to Bertocchi, Freire, and Picarello, who were all newly graduated police recruits at the time of Stilphen's death.  According to Cox, Lydon was expected to testify that in his five-hour course module, he customarily instructed recruits to evaluate arrestees for signs of drugs or alcohol

---

cause instruction, even though it did not use a term endorsed by the Supreme Court and employed by the First Circuit).

intoxication and to assess an arrestee when conducting a cell check for any signs of distress.

The court excluded Lydon's testimony under Fed. R. Evid. 403 as being only marginally relevant, needlessly time consuming, and cumulative of the officers' own testimony. Lydon's testimony would have applied to only one of the defendants, Picarello, as neither Bertocchi nor Freire were assigned to conduct cell checks the night of Stilphen's death, and Lydon did not train the much more senior Almeida. Moreover, had Lydon testified as Cox expected, the jury might have been led erroneously to believe that the correct standard of care was established by Boston Police Department prisoner care regulations and not by whether Picarello knew that Stilphen had a serious medical need and ignored it. *Cf. Boveri v. Saugus*, 113 F.3d 4, 7 (1st Cir. 1997) (holding regulatory violations are not "inherently sufficient to support a § 1983 claim").[7]

---

[7] Cox's counsel was permitted to question Picarello about the training he had received regarding Narcan administration and opioid intoxication recognition. Tr. Day 4 at 29:10-25. Counsel also confirmed with Picarello that he had been trained to look directly into the cell when conducting a cell check to see if the prisoner was breathing normally. Tr. Day 4 at 30:1-11. Similarly, Cox's counsel asked Freire if she had been trained by the Boston Police Department to conduct cell checks every 15 minutes and to make sure that prisoners are okay in their cells. Tr. Day 3 at 43:17-23. Finally, Cox's counsel asked Bertocchi numerous questions about the various trainings he received during his career, including those on opioid addiction and intoxication, CPR and Narcan administration, drug classifications, and signs

Cox next contends that Officer Sean Doolan's Form 26 incident report regarding Stilphen's death, while hearsay, should nonetheless have been admitted as a business record. Cox argues that Boston Police Department Form 26 reports are prepared when there has been an incident of some kind "at the request of superiors as within the officers' duties in the course of their work." Dkt. # 195 at 15. Hearsay consists of unsworn and uncross-examined out-of-court statements offered by a party for their truth. *See* Fed. R. Evid. 801(c). Hearsay is inadmissible unless it fits within a recognized exception. *See* Fed. R. Evid. 802; *Bradley v. Sugarbaker*, 891 F.3d 29, 34 (1st Cir. 2018). To qualify under Fed. R. Evid. 803(6), a record must be "kept in the course of a regularly conducted activity of a business" and "making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(B); 803(6)(C). Doolan's Form 26 report fails the exception in all respects. The Form 26 report was not a record kept in the regular course of business because, as Cox admits and the defendant officers confirmed, preparation of the Form 26 report by a line officer was a matter left to the discretion of a superior officer.[8]

---

for when medical assistance for an inmate is required. Tr. Day 3 at 107:3-25, 108:1-20, 110-113.

[8] Doolan testified that a Form 26 is "not a regular occurrence. Form 26's are — they're more — they're essentially if you're trying to provide specific and detailed information that you can't put into a police report." Tr. Day 5 at 56:20-23. Almeida attested that a Form 26 report is an internal department form that one prepares when there has been an [unusual]

And thankfully, the death of a detainee confined in a police cell is not a usually occurring event.  *See Hiram Ricker & Sons v. Students Int'l Meditation Soc.,* 501 F.2d 550, 554 (1st Cir. 1974) (noting the business-records exception does not extend to activity that is "casual or isolated"), quoting 5 Wigmore, Evidence § 1525 (3d ed. 1940).

Cox next maintains that despite the court's *in limine* ruling — in which it allowed Cox to introduce evidence of the prior death of a District 4 detainee, Cristhian Geigel — as probative of the knowledge of Almeida, who had conducted cell checks on Geigel before his death, and that of Bertocchi, who knew of Geigel's death — she "was not allowed to bring forth evidence concerning the factual circumstances of Mr. Geigel's death, including that Mr. Geigel had also secreted drugs into his cell, overdosed, and lain dead in his cell for fourteen hours."  Dkt. # 195 at 17.   The City of Boston fairly responds that "it is unclear what [Cox's] complaint is" because she was allowed to elicit testimony about Almeida's knowledge of and involvement in the Geigel incident and did just that.  Dkt. # 198 at 11.[9]  The court agrees with

_____

incident of some kind.  Tr. Day 4 at 135:2-4.  Picarello testified that he would write a Form 26 report whenever he was instructed by his boss.  Tr. Day 4 at 39:23-24.

    [9] On the third day of trial, the court amplified its prior ruling by stating that, with respect to Almeida, it would allow questions about his involvement in the Geigel incident and what he knew of the cause of Geigel's death; with respect to Bertocchi, it would allow questions about his knowledge of Geigel's

the City of Boston that, to the extent that Cox contends that she should have been allowed to introduce extrinsic, substantive details about Geigel's death, such evidence would have gone far beyond testimony regarding the officers' knowledge and could have been offered for no other purpose but as inadmissible propensity evidence.

Cox finally alleges that the court erred by allowing Bertocchi and Almeida to testify about the distracting conduct of a violent arrestee, Joseph Perry, who was also taken into District 4 custody the night of Stilphen's death.  She suggests that neither officer had direct knowledge or memory of the Perry incident.  Dkt. # 195 at 17.  While not a focus of testimony at trial, Cox's claim that Bertocchi and Almeida were not percipient witnesses to the incident is belied by the record, *see, e.g.*, Tr. Day 4 at 15:1-11, and does not bear further discussion.   Cox also objects to the fact that Almeida was permitted to testify about his general practice of informing detainees about the bail process, because he could not recall specifically so informing Stilphen.  Dkt. # 195 at 18.  Fed. R. of Evid. 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in

_____

death and how he came by that knowledge.  Tr. Day 3 at 74:22-25, 75:3-5. The court declined to admit Cox's extrinsic exhibits about Geigel's death, ruling that they added nothing of independent value.  Tr. Day 3 at 74:25, 75:1.

accordance with the habit or routine practice." Fed. R. Evid. 406. Such is the case here. Any failure of credibility on Almeida's part was a matter for the jury to weigh. *Cf. Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 14 (1st Cir. 2022) (noting "the unsettled question of when an issue as to the sufficiency of the habitual conduct is raised, whether the judge should make a preliminary determination of admissibility, or if it should be left for the jury to weigh"), quoting 23 Charles Alan Wright & Arthur B. Miller, *Federal Practice & Procedures* § 5277 (2d ed. 2022).

## II. Remaining Claims Against the City of Boston

### a. The Monell Failure to Train Claim

The City of Boston has requested in its opposition to Cox's motion for a new trial to dismiss the *Monell* failure to train claim. Because the jury found that the officers did not violate Stilphen's constitutional rights, the court will dismiss the *Monell* claim. Dkt. # 198 at 11-12. A municipality may be held liable under § 1983 for a failure to properly train its officers "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where such failure to provide proper training causes a "constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 388-389 (1989). The specific deficiency in training must be the "moving force" behind a constitutional injury. *Id.* at 389,

quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981); *Monell*, 436 U.S. at 694.  It follows that a "[c]ity cannot be held liable absent a constitutional violation by its officers." *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996), citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (per curiam). In other words, "[w]ithout a finding of a constitutional violation on the part of a municipal employee, there cannot be a finding of section 1983 damages liability on the part of the municipality." *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *see DiRico v. City of Quincy*, 404 F.3d 464, 469 (1st Cir. 2005) (reasoning because the jury determined that the officer did not violate plaintiff's constitutional rights, the § 1983 failure to train claim against the City "necessarily fails, as it cannot be said that any action on the part of the City caused" plaintiff's injuries); *see also Calvi v. Knox Cnty.*, 470 F.3d 422, 429 (1st Cir. 2006) (noting "[i]t follows that the inadequate training of a police officer cannot be a basis for municipal liability under section 1983 unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior").

Here, because the jury determined that the officers did not violate Stilphen's constitutional rights, the § 1983 claim against the City necessarily fails, and the request to dismiss the *Monell* claim must be allowed.

    *b.  The ADA Claim against the City of Boston*

16

The court seeks further assistance from the parties in resolving this claim and will enter an order establishing a briefing schedule with a view to a further hearing on the issue.

## ORDER

For the foregoing reasons, Cox's motion for a new trial and, in the alternative, motion for partial final judgment and entry of a stay is <u>DENIED</u>. The *Monell* failure to train claim against the City of Boston is dismissed. The ADA claim against the City of Boston is taken under advisement. The Clerk will enter forthwith a further briefing schedule on this issue.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE