UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-11009-RGS

LYNNEL COX, as administrator of the
Estate of Shayne R. Stilphen,

        Plaintiff

v.

CITY OF BOSTON, ISMAEL ALMEIDA,
PAULMICHAEL BERTOCCHI, CATIA
FREIRE, and BRIAN PICARELLO,

        Defendants.

**CITY OF BOSTON'S BRIEF IN SUPPORT OF DISMISSAL OF COUNT II OF
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant City of Boston (the "City") hereby submits this brief regarding Plaintiff's

claim under Title II of the Americans with Disabilities Act ("ADA") (Count II), alleging

unlawful discrimination by the City against the decedent, Shayne Stilphen, on the basis of his

opioid use disorder.

    **I.**       **ARGUMENT.**

        **A.**     **As a Result of His Active Drug Use, Stilphen Was Not a Qualified
Individual With a Disability Under the Terms of the Americans
with Disabilities Act.**

Stilphen does not meet the ADA's definition of a "qualified individual with a disability"

under a straightforward reading of the statute.  To sustain a claim under Title II of the ADA,

Plaintiff must demonstrate that Stilphen (1) was a "qualified individual with a disability; (2) that

he was either excluded from participation in or denied the benefits of some public entity's

services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of Stilphen's disability." *Parker* v. *Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000). While substance use disorders that interfere with major life activities are a "disability" under the ADA, *see* 28 C.F.R. § 35.108(b)(2), a provision of the statute concerning "Illegal use of drugs" provides that "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. §12210(a); *see also* 42 U.S.C. § 12114(a) ("For purposes of this subchapter, a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."). In this case it is now beyond dispute that Stilphen was consuming illegal drugs in the hours leading up to his death on July 14, 2019. Accordingly, he is not a "qualified individual with a disability" and is not entitled to the protection of the ADA.

Moreover, 28 C.F.R. §35, a regulation whose stated purpose is "to implement subtitle A of title II of the Americans with Disabilities Act of 1990," 28 C.F.R. §35.101(a), also states that "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the public entity acts on the basis of such use." 28 C.F.R. §35.104. 28 C.F.R. §35, Appendix B, titled "Guidance on ADA Regulation on Nondiscrimination," elaborates on the reasoning behind distinguishing between current use of illegal drugs and drug addiction:

> A distinction is also made between the use of a substance and the status of being addicted to that substance. Addiction is a disability, and addicts are individuals with disabilities protected by the Act. The protection, however, does not extend to actions based on the illegal use of the substance. In other words, an addict cannot use the fact of his or her addiction as a defense to an action based on illegal use of drugs. This distinction is not artificial. Congress intended to deny protection to

people who engage in the illegal use of drugs, whether or not they are addicted, but
to provide protection to addicts so long as they are not currently using drugs.

28 C.F.R., Appendix B, § 35.131.

This case is substantially similar to *Ross* v. *City of Dallas*, No. 3:20-CV-01690-E, 2023 WL 8436060 (N.D. Tex. Dec. 4, 2023).  The decedent in *Ross*, a known drug user, had ingested illegal drugs prior to her arrest and subsequently died of an overdose from such illegal drugs after being taken into police custody.  *Id*. at *1.  The decedent's estate sued the city under the ADA, alleging, *inter alia*, that the city failed to instruct and train its officers in appropriate use of force with respect to those experiencing a possible drug overdose, failed to adopt a policy to protect the well-being of persons with drug disorders, and "discriminat[ed] against [the decedent], as a person with a substance abuse disorder, in the provision of services by the City's police department in an apparent overdose crisis situation, on the basis of her disability, by not accommodating her disability."  *Id*. at *4.  In granting the city's motion for summary judgment, the District Court for the Northern District of Texas applied 42 U.S.C. §12114(a) and 29 C.F.R. §1630.3(a) to first determine that the decedent was not a qualified individual with a disability. *Id*.  In *Ross*, as here, "the use of substances by [the decedent] is not in contention[;] rather the parties dispute whether the ADA applies to [the decedent] because of her use of such substances."  *Id*. at *5.  The court reasoned that "under the ADA, the illegal use of controlled substances does not constitute a disability when the claimant is currently using them."  *Id*. at *4 (citing *Garza* v. *City of Donna*, No. 7:16-CV-00558, 2017 WL 2861456, at *7 (S.D. Tex. July 5, 2017)).  Ultimately, the *Ross* court concluded that "[b]ecause [the decedent] was currently engaging in the use of illegal drugs–phencyclidine–and acted on the basis of such illegal drug– she died due to a drug overdose–she cannot be considered" a qualified individual within the meaning of the ADA.  *Id*. at *5.

As a current user of illegal drugs, Stilphen was not entitled to the protection of Title II of the ADA.  For this reason, the ADA claim against the City fails.

**B.      The Health and Drug Rehabilitation Services Exception Does Not Apply.**

Plaintiff asserts that the exception set forth in 42 U.S.C. §12210(a), is itself subject to an exception that should apply in this case.  Specifically, Plaintiff references a subregulation, 28 C.F.R. § 35.131(b)(1), which provides that "[a] public entity shall not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services." To the City's knowledge, however, 28 CFR § 35.131(b), has only ever been referenced in two previous federal decisions, both allowing motions to dismiss of pro se plaintiffs' complaints and offering no interpretation of the regulation's provisions.  *See Faircloth v. Timme*, 2013 WL 1232310 (D. Colo. March 27, 2013); *Thorne v. Hale*, 2009 WL 890136 (E.D. Va. Marc 26, 2009).  Further, by its own terms, § 35.131(b) applies only to entities that provide health or drug rehabilitation services, as the title of the subsection is "Health and drug rehabilitation services," and the text of the regulation deals with the denial of "health services, or services provided in connection with drug rehabilitation." 28 CFR § 35.131(b)(1).  Likewise, Appendix B to Part 35 does not contemplate that the regulation applies to any setting outside of a health care facility or rehabilitation program, let alone to overnight or weekend detention at a police station:

> Paragraph (b) provides a limited exception to the exclusion of current illegal users of drugs from the protections of the Act. It prohibits denial of health services, or services provided in connection with drug rehabilitation to an individual on the basis of current illegal use of drugs, if the individual is otherwise entitled to such services. A **health care facility, such as a hospital or clinic**, may not refuse treatment to an individual in need of the services it provides on the grounds that the individual is illegally using drugs, but it is not required by this section to provide services that it does not ordinarily provide. For example, a **health care facility that specializes in a particular type of treatment, such as care of burn**

**victims**, is not required to provide drug rehabilitation services, but it cannot refuse to treat a individual's burns on the grounds that the individual is illegally using drugs.

Some commenters pointed out that abstention from the use of drugs is an essential condition of participation in some **drug rehabilitation programs**, and may be a necessary requirement in **inpatient or residential settings**. The Department believes that this comment is well-founded. Congress clearly intended to prohibit exclusion from **drug treatment programs** of the very individuals who need such programs because of their use of drugs, but, once an individual has been admitted to a program, abstention may be a necessary and appropriate condition to continued participation. The final rule therefore provides that a **drug rehabilitation or treatment program** may prohibit illegal use of drugs by individuals while they are participating in the program.

28 C.F.R. § 35 app. B (2010) (emphasis added).

The regulation cited by Plaintiff is substantially similar to another provision of the ADA, 42 U.S.C. §12110(c), concerning "Health and other services," which states: "Notwithstanding subsection (a) and section 12211(b)(3) of this title, an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services." 42 U.S.C. § 12110(c). One federal district court has narrowly interpreted this statutory provision, observing that "[t]he clear purpose of [§ 12110(c)] is to prevent covered entities from discriminating in their providing drug rehabilitation services to current drug users." *Baustian v. State of La.*, 929 F. Supp. 980, 982 (E.D. La. 1996). That court went on to speculate that such discrimination "could be in the form of unlawfully denying rehabilitation services to certain categories of drug users, i.e., treating heroin or cocaine addicts, but refusing to treat alcoholics [or] in the treatment center's accepting only those drug users who have the highest chances of successful rehabilitation." *Id.* at 982 n.3. Thus, neither the explicit text of the regulation, nor the regulation's appendix, nor case law interpreting a similar provision lends any support to

plaintiff's assertion that the health and drug rehabilitation services exception applies to pre-trial detainees in police custody.

### C.        The City's Reading of the ADA Does Not Produce Absurd Results.

In the face of the various authorities cited by the City, Plaintiff's final contention is that the City's interpretation of the ADA is "alarming" and "non-sensical." She argues in her reply to the City's opposition to her motion for new trial that if the health and drug rehabilitation services exception did not apply to overnight detention at a police station, police officers would be free to deny emergency medical care on the basis of someone's drug use. In an earlier pleading, Plaintiff argued that the City's interpretation of the statute "would ratify as non-discriminatory even a blanket policy to refuse to administer Narcan to anyone experiencing an overdose caused by illegal drugs, which would almost always be the case." ECF No. 95 at 34. In response to these hypotheticals, the City continues to maintain that, subject to the narrow and inapplicable exception of health or drug rehabilitation services, individuals who are actively using drugs fall outside the scope of the ADA. The comprehensive scheme of the ADA and its regulations quite consciously draws a distinction between "provid[ing] protection to addicts so long as they are not currently using drugs" and "deny[ing] protection to people who engage in the illegal use of drugs, whether or not they are addicted." *See* 28 C.F.R., Appendix B, § 35.131. At the same time, there is nothing alarming or dangerous about this interpretation of the ADA, because a pre-trial detainee's right to adequate medical care is protected by the Fourteenth Amendment of the Constitution: a blanket policy of denying Narcan could constitute a *Monell* violation under 42 U.S.C. § 1983. But crucially, not every violation of the Fourteenth Amendment is a violation of the ADA.

6

Tellingly, Plaintiff's reading of the ADA fails to provide satisfactory answers to her own hypotheticals. As Plaintiff would have it, a police officer could be found liable under the ADA for denying medical care to a prisoner experiencing an overdose, but only if the prisoner suffers from opioid use disorder. If the prisoner overdosed after ingesting drugs for the first time, or if the prisoner was a recreational drug user, the police officer could not be found liable for denying medical care under Plaintiff's reading of the ADA, because the prisoner was not a "qualified individual with a disability." Similarly, a police department's policy of refusing to administer Narcan to anyone experiencing an opioid overdose would run afoul of Plaintiff's reading of the ADA only if the individuals who were denied Narcan suffered from opioid use disorder. Thus, it is Plaintiff's—and not the City's—reading of the statute that produces non-sensical results.

Plaintiff's choice of hypotheticals reveals that the supposed harm that her ADA claim seeks to redress has to do with the denial of medical care when an individual has a serious medical need, not discrimination on the basis of Stilphen's status as someone with opioid use disorder. And indeed, Plaintiff brought a § 1983 claim against the City and the four individual defendants for alleged violations of Stilphen's constitutional right to adequate medical care. But after a six-day trial, a jury found in favor of the four individual officers on the constitutional violation, prompting the later dismissal of the claim against the City. The jury did so by applying the deliberate indifference standard, which is the same standard applied in cases under the ADA for disability discrimination. *See Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023). Plaintiff should not be permitted to relitigate the denial of care issue under the aegis of a statute that explicitly exempts active drugs users from its protections. For these reasons, the ADA claim should be dismissed.

**II.     CONCLUSION.**

WHEREFORE**,** the City respectfully request that this Honorable Court enter an order dismissing the claim under the Americans with Disabilities Act and grant such other and further relief as it deems just and proper.

Dated: November 20, 2024                     Respectfully submitted:

**DEFENDANT CITY OF BOSTON**

By its attorneys:
ADAM N. CEDERBAUM
Corporation Counsel

/s/ Randall F. Maas
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Randall Maas (BBO#684832)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4045
(617) 635-4042
edward.whitesell@boston.gov
Randall.maas@boston.gov

**CERTIFICATE OF SERVICE**

I, Randall F. Maas, hereby certify that I served a true copy of the above document upon all parties of record via this court's electronic filing system on November 20, 2024.

Dated: November 20, 2024                     /s/ *Randall F. Maas*
                                                                     Randall F. Maas

8