UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE, and BRIAN PICARELLO,<br><br>    Defendants. | Civil Action No. 1:22-cv-11009-RGS |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
IN SUPPORT OF NEITHER PARTY**

In response to the Court's request for supplemental briefing, the United States respectfully submits this Statement of Interest under 28 U.S.C. § 517[1] to assist the Court on the correct interpretation of the health services exception in the Americans with Disabilities Act (ADA) at 42 U.S.C. § 12210(c) and the Department of Justice (DOJ) regulations implementing that exception at 28 C.F.R. 35.131(b) ("Health Services Exception" or the "Exception"). As the agency charged with implementing and enforcing the ADA with respect to public entities, 42 U.S.C. §§ 12133-12134, the United States Department of Justice has a strong interest in ensuring that the statute and its implementing DOJ regulations, 28 C.F.R. Part 35, are properly and consistently applied.  The United States files this Statement of Interest solely to address the meaning of the Health Services Exception and its implementing DOJ regulations.  It files on

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court.  28 U.S.C. § 517.

1

behalf of neither party and takes no position on any factual disputes or any other legal issues in this case.

The Health Services Exception is an exception to the ADA's exclusion of individuals who currently illegally use drugs. It states that "an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services." 42 U.S.C. § 12210(c). The plain text of the statute, along with the ADA's broad coverage, makes crystal clear that the Exception applies to the provision of health services regardless of whether the health services are provided by a facility specifically focused on providing health care. Thus, the Exception applies to the denial of health services provided by any public entity covered by Title II of the ADA, including state and local police departments. Accordingly, a police department that provides emergency or life-saving health services cannot deny those services to an individual with a disability—such as an individual with Opioid Use Disorder ("OUD")—because of that individual's current illegal drug use.

## BACKGROUND

In 2022, more opioid-involved overdose deaths (81,806) were reported in the United States than in any previous year.[2] Treatment for Opioid Use Disorder ("OUD"), including timely use of naloxone, is critical to reducing this mortality.[3] To address this ongoing crisis, the United States has engaged in broad efforts to remove barriers to treatment for individuals with OUD.

This case is brought by the estate of Shayne Stilphen, who died of an opioid overdose

---

[2] Deborah Dowell et al., *Treatment for Opioid Use Disorder: Population Estimates — United States, 2022*, 73 Morbidity & Mortality Wkly. Rep. 567, 567 (June 27, 2024), https://www.cdc.gov/mmwr/volumes/73/wr/mm7325a1.htm.

[3] *See Reverse Opioid Overdose to Prevent Death*, Ctrs. for Disease Control & Prevention (May 8, 2024), https://www.cdc.gov/overdose-prevention/reversing-overdose/index.html.

while in overnight detention after being arrested by the Boston Police Department. Plaintiff argues that the Boston Police Department denied Stilphen medical care, in violation of the ADA, based on stereotypes of people living with OUD. Pl's Supp. Br. at 1, ECF No. 206. Defendant argues, in part, that Plaintiff's claim fails because the ADA excludes from its protection individuals who are currently engaging in the illegal use of drugs. Def.'s Supp. Br. at 1-2, ECF No. 205.

## DISCUSSION

Title II of the ADA prohibits public entities from discriminating based on disability in the provision of their "services, programs, or activities." 42 U.S.C. § 12132. Public entities include "any State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government," including correctional facilities and police departments. *Id.* § 12131(1)(A)-(B); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–12 (1998) (discussing the breadth of Title II's coverage). To fall within the ambit of Title II's protections, a person must be a "qualified individual with a disability," 42 U.S.C. § 12132, which can include someone with OUD, *see* 28 C.F.R. § 35.108(a)(1) (defining "disability" as a physical or mental impairment that substantially limits a major life activity, a record of such an impairment, or being regarded as having such an impairment); *id.* § 35.108(b)(2) (identifying "drug addiction" as a physical or mental impairment). However, the statute directs that a person is not an "individual with a disability"—and therefore not entitled to the ADA's protections—in situations where they are "currently engaging in the illegal use of drugs" and a public entity "acts on the basis of such use." 42 U.S.C. § 12210(a); 28 C.F.R. §§ 35.104, 35.131(a). But the Health Services Exception to this exclusion set forth in § 12210(a) clarifies that public entities shall not deny the individual medical care on the basis of the current

3

illegal use of drugs if the individual is otherwise entitled to such services. 42 U.S.C. § 12210(c); 28 C.F.R. § 35.131(b)(1).

For the reasons explained below, this provision applies to Title II entities that provide health services.

### I. The Plain Text of the ADA Protects Individuals in Need of Health Services Provided by Any Public Entity.

In construing a statute, the court "begin[s] with the text itself." *Penobscot Nation v. Frey*, 3 F.4th 484, 490 (1st Cir. 2021) (en banc). "[W]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992).

Here, the ADA's plain text speaks for itself. Section 12210(c) clarifies that despite the exclusion from the ADA's protections in § 12210(a), "***an individual shall not be denied health services, or services provided in connection with drug rehabilitation,*** on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services." 42 U.S.C. § 12210(c) (emphasis added). Section 12210(c), by its terms, speaks of types of *services*—both health services and services provided in connection with drug rehabilitation—not services provided in particular locations or by particular categories of covered entities. Nothing in the text of § 12210(c) imposes such a restriction, and to read in such a limitation would "narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) (citation omitted). Congress's broad phrasing of "services provided in connection with drug rehabilitation" rather than simply "services provided by drug rehabilitation or treatment centers," or something similar, reinforces Congress's intent to focus on the services at issue, not

4

who is providing them.

This focus on the type of services, rather than where they are provided or who is providing them, also comports with the broad remedial purpose of the ADA. *See, e.g.*, 42 U.S.C. § 12101(a)(3) (finding discrimination in health services as a reason for enacting the ADA); *id.* § 12101(b)(1), (4) (codifying Congress's intent for the ADA to comprehensively eliminate discrimination). And after a series of court decisions narrowing the reach of the ADA, Congress amended the statute in 2008 to expressly provide that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Exceptions to this definition, as a result, are properly read "narrowly in order to preserve the primary operation" of this instruction. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731-32 (1995) (quoting *Comm'r v. Clark*, 489 U.S. 726, 739 (1989)); *cf. Doe v. Mass. Dep't of Corr.*, CIVIL ACTION NO. 17-12255-RGS, 2018 WL 2994403, at *8 (D. Mass. June 14, 2018) ("It is virtually impossible to square the exclusion of otherwise bona fide disabilities with the remedial purpose of the ADA . . . ."). Section 12210(a) operates to exclude certain individuals from the ADA's protections, to which § 12210(c) then creates an exception. If there were any doubt as to the meaning of the plain text, § 12102(4)(A) would require that the exclusion in § 12210(a) be interpreted narrowly and that the exception to that exclusion in § 12210(c) be interpreted broadly.

The Department of Justice's Title II regulation reinforces the plain language meaning of the statute and has done so since the regulation was first promulgated in 1991. *See* Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 Fed. Reg. 35694, 35719 (July 26, 1991) (28 C.F.R. § 35.131(b) included in initial regulation

implementing the ADA). Section 12210 applies to more than one title of the ADA, and 28 C.F.R. § 35.131 implements § 12210 in the context of Title II. *Cf.* 28 C.F.R. § 36.209 (implementing § 12210 in the context of Title III). Section 35.131(b)(1) of the regulation adopts the text of § 12210(c) almost exactly, stating: "A public entity shall not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services."

In addition, at least one court has applied § 12210(c) to health services in a carceral setting under Title II of the ADA. In *Taylor v. Wexford Health Sources, Inc.*, CIVIL ACTION NO. 2:23-cv-00475, 2024 WL 2978782 (S.D.W.V. June 13, 2024), the plaintiff alleged he was denied Medications for Opioid Use Disorder ("MOUD") while incarcerated in the county jail after his arrest. *Id.* at *4. The defendant state corrections department argued that the ADA's protections did not apply to him because of his current illegal use of drugs under § 12210(a). *Id.* at *13. The court rejected the state's argument, relying on § 12210(c), in part because "health services and drug rehabilitation services, which would include the MOUD [the plaintiff] sought, cannot be denied based on current illegal drug use." *Id.*; *see also Rokita v. Pa. Dep't of Corr.*, 273 A.3d 1260, 1273 (Pa. Cmmw. Ct. 2022) (overruling a motion to dismiss a prisoner's ADA claim related to denial of Medication Assisted Treatment while incarcerated, noting that even if the prisoner had been using illegal drugs at the time, § 12110(c) could apply).

**II.    Defendant's Arguments Do Not Support Departing from the Plain Text.**

Defendant's textual arguments do not support departure from the plain language. *See* Def.'s Supp. Br. at 4-6, ECF No. 205. Defendant does not address the statutory language, but rather focuses on the title of the subsection of the regulation— "Health and drug rehabilitation services." 28 C.F.R. § 35.131(b). But this language, which barely differs from the statutory text of "health services or services provided in connection with drug rehabilitation," focuses on the

6

*type of services* that cannot be denied and does not address the *types of public entities* that may or may not be involved in the denial. Defendant also focuses on the preamble to the 1991 regulation, which explains how § 35.131(b) might function in the context of a "health care facility, such as a hospital or clinic," or "a health care facility that specializes in a particular type of treatment." *See* Def.'s Supp. Br. at 4-5; 28 C.F.R. pt. 35, app. B, § 35.131 (2023). However, nothing in the preamble's text suggests that this provision applies *only* to services provided by health care facilities. These examples merely illustrate how the provision might function and do not alter or amend the plain meaning of the statutory and regulatory text.

Defendant appears to rely on language in *Baustian v. Louisiana*, 929 F. Supp. 980 (E.D. La. 1996), to argue that § 12110(c) should not apply to it. *See* Def.'s Supp. Br. at 5-6. Nothing in that opinion, however, refutes the conclusion that § 12110(c) can apply to a Title II entity's provision of health services in non-health care settings. In *Baustian*, the court discussed § 12110(c) in the context of health services provided by a public employer to its employees. An employee claimed that he was denied access to his employer's Employee Assistance Program (EAP) because of his current illegal use of drugs and raised § 12210(c). 929 F. Supp., at 983. The court rejected this claim not because the defendant employer was not a health care facility, but because the plaintiff had not met other requirements to participate in the EAP. *Id. Baustian* is, therefore, inapposite.

Finally, *Ross v. City of Dallas*, Civil Action No. 3:20-CV-01690-E, 2023 WL 8436060 (N.D. Tex. Dec. 4, 2023), another case cited by Defendant, Def.'s Supp. Br. at 3, also does not address whether § 12210(c) applies to health services in carceral settings. In that case, which alleged Title II and Rehabilitation Act claims, the court erroneously applied a section in Title I of the ADA concerning employment, 42 U.S.C. § 12114, which has different statutory language

7

that does not contain a health services exception.[4]  The court did not consider or address § 12210(c).  *Ross*, 2023 WL 8436060, at *4-5.

## CONCLUSION

Public entities operating carceral settings commonly provide health care to individuals with disabilities and the ADA's nondiscrimination mandate applies to that activity.[5]  Section 12210(c) makes clear that Title II entities providing medical care may not deny that care based on an individual's current illegal use of drugs.

The United States requests that the Court consider this Statement of Interest expressing the Department of Justice's position that a public entity should not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services.

Date: December 3, 2024

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

REBECCA B. BOND, Chief
ELIZA DERMODY, Special Litigation Counsel
AMANDA MAISELS, Deputy Chief

---

[4] Defendant has also sometimes erroneously based its argument on 42 U.S.C. § 12114.  *See, e.g.*, Def.'s Mem. Law Supp. Summ. J. at 4-8, ECF No. 87.  As noted above, that provision has no relevance to this case.

[5] *See, e.g.,* 28 C.F.R. pt. 35, app. A, § 35.152 (2023) ("Inmates [in State and local correctional and detention facilities] cannot leave the facilities and must have their needs met by the corrections system, including needs relating to a disability.  If the detention and correctional facilities fail to accommodate prisoners with disabilities, these individuals have little recourse, particularly when the need is great . . . .  It is essential that corrections systems fulfill their nondiscrimination . . . obligations by adequately addressing the needs of prisoners with disabilities, which include, but are not limited to, proper medication and medical treatment . . . .").

8

/s/ Rebecca Guterman
REBECCA GUTERMAN, Trial Attorney
D.C. Bar ID: 90009374
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – 4CON
Washington, D.C.  20530
Telephone: 202-718-3104
Email: Rebecca.Guterman@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

      I, Rebecca Guterman, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants and paper copies will be sent to those indicated as non-registered participants.

<u>/s/ Rebecca Guterman</u>
Rebecca Guterman, Trial Attorney

Dated: December 3, 2024