UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNEL COX, as Administrator of the Estate of Shayne R. Stilphen,<br><br>        Plaintiff,<br><br>v.<br><br>BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI, CATIA FREIRE and BRIAN PICARELLO,<br><br>        Defendants. | CIVIL ACTION NO. 1:22-cv-11009-RGS |

**THE CITY OF BOSTON'S MOTION TO AMEND THIS COURT'S ORDER [ECF 211] TO CERTIFY THE NON-DISMISSAL OF THE AMERICANS WITH DISABILITIES ACT CLAIM FOR IMMEDIATE APPEAL PURSUANT TO <u>28 U.S.C.A. § 1292(b) AND FED. R. APP. P. 5</u>**

The City of Boston (the "City") moves, pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3), to amend this Court's order of December 18, 2024 (the "Order") to allow the City to file a petition for an appeal by permission of the Court's denial of the entry of judgment in the City's favor on the claim of plaintiff Lynnel Cox, as Administrator of the Estate of Shayne R. Stilphen ("Plaintiff") under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132. The Court entered separate and final judgment in favor of the individual defendants and stayed the ADA claim during the appeal. The City seeks amendment of the Order because the ADA issue resolved by the Court meets each of the three criteria for certifying that issue to the First Circuit:

    (1)    the issue "involves a controlling question of law";

    (2)    the issue has "substantial ground for difference of opinion;" and

    (3)    "an immediate appeal … may materially advance the ultimate termination of the litigation."

For this reason, the City respectfully requests that the Order be amended to either expressly allow the City to petition the First Circuit for appeal by permission on the ADA issue or articulate that all three of the criteria of § 1292 have been met.  Plaintiff is opposed to this motion.

In short, the First Circuit should consider the legal question of the applicability of the ADA in this case now, while it considers an appeal of the judgments in favor of the individual defendants, where one possible outcome of that appeal would be an immediate termination of the case in its entirety.  As further grounds for this motion, the City states as follows:

### Relevant Procedural History

1. This case involves two claims against the individual police officers under 42 U.S.C. § 1983 for failure to render medical aid and under the Massachusetts Wrongful Death Statute, M.G.L. c. 229, § 2 and two claims against the City under *Monell* and the ADA.  Prior to trial, the defendants moved for summary judgment on all of the claims, including the ADA claim.  The City's position was that the ADA did not apply because at the time of his death, Stilphen was not a "qualified individual" under § 12132 by operation of 42 U.S.C. § 12114 due to the fact that he was "currently engaging in the illegal use of drugs."  The Court denied the motion, rejecting this argument by relying on the subsection of 28 C.F.R. § 35.131 which prohibits a public entity from denying health services "to an individual on the basis of that individual's current illegal use of drugs." ECF Doc. No. 104, n. 9.

2. At the June 18, 2024 conference at which the Court initially addressed the defendants' motion to continue the trial and motion to bifurcate, the Court acknowledged that "it's not an open and shut case as to whether the regulation covers episodic failure to provide medical treatment as opposed to failure to provide healthcare, which is and lies in many courts, directed to medical institutions, not police forces in terms of their duty."  The Court also stated: "I am not so

sure I'm with you on this if you don't show liability on the part of the officers, then any idea how you would ever prove an ADA case against the City." ECF Doc. No. 198-1.

3. On June 25, 2024, the Court granted the motion to bifurcate the claims against the individual officers from those against the City and scheduled trial on the claims against the individual officers of August 12, 2024. In so doing, the Court held that "[t]his, or course, does not foreclose a subsequent trial against the City should there be issues left to try." ECF Doc. No. 115.

4. The claims against the individual defendants were tried to a jury from August 12, 2024 to August 19, 2024. On August 19, 2024, the jury rendered a verdict in favor of each of the individual officers on both counts, including a finding that the officers were not deliberately indifferent to Stilphen's serious medical need. ECF Doc. No. 185.

5. On September 16, 2024, Plaintiff moved for a new trial on the claims against the individual defendants, and in the alternative, for separate and final judgment on those claims with a stay of the claims against the City. ECF Doc. Nos. 194 and 195. The defendants opposed the motion, arguing, *inter alia*, that rather than stay the claims against the City, the Court should instead dismiss them. The defendants renewed their argument that Stilphen was not covered by the ADA because he had been "currently engaging in the illegal use of drugs" and that the subregulation cited as an exception did not apply to episodic medical care by police officers of a pretrial detainee in custody. ECF Doc. No. 198.

6. On October 29, 2024, the Court denied the motion for new trial and dismissed the *Monell* failure to train claim because the jury's finding that the officers did not violate Stilphen's constitutional rights necessitated dismissal. On the ADA issue, the Court sought "further assistance from the parties in resolving this claim" and on October 30, 2014, entered an order establishing a schedule for additional briefing on the issue. ECF Doc. Nos. 202, 203. The parties

each submitted briefs and responses, with the City again seeking dismissal of the ADA claim because Stilphen was not covered by the ADA and the subregulation did not apply. ECF Doc. Nos. 205, 206, 208 and 209. The Department of Justice ("DOJ") filed an amicus brief on the issue. ECF Doc. No. 207.

7. In the Order, the Court declined to dismiss the ADA claim, and determined that the subregulation applied and that the cases cited by the City to the contrary were distinguishable. The Court then allowed the motion for separate and final judgment, entering judgment in favor of each of the officers and staying the ADA claim against the City pending the outcome of the inevitable appeal. ECF Doc. Nos. 211, 212, 213, 214, 215 and 216.

### Argument

8. This is not a straightforward denial of a motion to dismiss for which, as a general rule, the First Circuit does not grant interlocutory appeals, even where the order is certified under § 1292(b). *See*, *e.g.*, *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005). The First Circuit has "repeatedly emphasized that 'interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'" *Caraballo-Seda*, 395 F.3d at 9 (quoting *Palandjian v. Pahlavi,* 782 F.2d 313, 314 (1st Cir.1986); *see also McGillicuddy v. Clements*, 746 F.2d 76, 77, n. 1 (1st Cir. 1984). In adopting § 1292(b), Congress provided "the district courts circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995).

9. The procedural posture of this case is an "exceptional circumstance" warranting interlocutory certification and review. This case does not involve a standard denial of a motion to

4

dismiss such as those in *Caraballo-Seda* or *McGillicuddy,* where the case would proceed normally in the absence of immediate appeal. Instead, it involves the denial of dismissal of the sole remaining claim against the sole remaining defendant that will be stayed pending the appeal of separate and final judgments entered in favor of the other defendants. This case is going up on appeal to the First Circuit and will be on hold under the stay in the District Court. There is no good reason not to have the ADA issue heard at the same time as the appeal of the judgments in favor of the individual defendants. Certification of the denial of dismissal of the ADA claim does not implicate the First Circuit's "policy preference against piecemeal litigation" or its "prudential concern" about "lengthy appellate proceedings." *Caraballo-Seda*, 395 F.3d at 9. These are exceptional procedural circumstances that warrant certification under § 1292(b) and an immediate permissive appeal of the ADA issue.

10.     Read together with Fed. R. App. P. 5(a)(3), § 1292(b) provides a mechanism by which a party may request that a district judge grant permission to petition the First Circuit for immediate review of an interlocutory order not otherwise appealable under the other subsections of § 1292. Here, § 1292(b) is the City's only recourse for seeking interlocutory appeal. That provision provides, in relevant part, that where a district judge "shall be of the opinion that such order [1] ***involves a controlling question of law*** as to which there is [2] ***substantial ground for difference of opinion*** and that an immediate appeal from the order may [3] ***materially advance the ultimate termination of the litigation***, he shall so state in writing in the order." 28 U.S.C. § 1292(b) (emphasis and numbers added). The First Circuit would then have jurisdiction and may, "in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days of the entry of the order." *Id*.

11. Fed. R. App. P. 5(a)(3) provides that if "a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement." In such circumstances, the ten-day period for the petition to the First Circuit runs from the entry of the amended order. *See id*. Here, the Court's Order denying dismissal of the ADA claim did not certify the question to the First Circuit or contain a statement that the three elements of § 1292(b) had been met. The City respectfully requests that the Court issue an order amending its Order to include the required permission and/or statement for the City to petition for an immediate appeal by permission.

### *The Order Involves a Controlling Question of Law*

12. The requested amendment is warranted here, where each of the three requirements of § 1292 is met. First, there is no question that the order on the ADA claim involves a controlling issue of law. "A question of law is 'controlling' if reversal would terminate the action." *Waters v. Day & Zimmermann NPS, Inc.*, 2020 WL 4754984, at *2 (D. Mass. Aug. 14, 2020) (controlling requirement "closely tied" to the third requirement of § 1292). "[A] controlling question typically implicates a pure legal principle that can be resolved without extensive consultation to the record and commonly involves 'a question of the meaning of a statutory or constitutional provision.'" *Id*. (certifying case whether recent Supreme Court case applied to statutory FLSA claim); *see also Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004) (denial of summary judgment on question of whether harbor pilots could be considered employees of the Puerto Rico Ports Authority for purposes of the ADEA certified and accepted by First Circuit); *Republic Maximal LLC v. Romulus Cap. Partners II, LLC*, 2024 WL 3169798, at *6 (D. Mass. June 25, 2024) (certifying case under § 1292(b) for applicability of § 10(b) of the Exchange Act). "'[W]hat

6

the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of pure law, matters the court of appeals can decide quickly and cleanly without having to study the record.'" *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016) (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)). The interpretation of the ADA and its regulations presents such a question. This is a fundamental question of law – whether Stilphen could bring his claim under the ADA in the first place. *See Caraballo-Seda*, 395 F.3d at 9 (issue of whether statute expressly or implicitly foreclosed § 1983 suits held to be a "controlling issue of law" under § 1292(b)).

### *There is Substantial Ground for Difference of Opinion on the Applicability of the ADA*

13.  There is substantial ground for difference of opinion on the issue of whether the ADA applies where Stilphen was currently engaging in the illegal use of drugs at the time of his death. In particular, there is substantial ground for difference of opinion as to whether, under 42 U.S.C. § 12210(c) and 28 C.F.R. § 35.1313(b)(1)[1], a police officer alleged to have made a one-off decision not to pursue prompt medical attention for a pretrial detainee because of discriminatory animus toward opioid use disorder ("OUD"), constitutes a denial of "health services, or services

---

[1] As noted in the procedural background, the City initially relied on 42 U.S.C. § 12114 in moving for summary judgment. In its amicus brief, the DOJ noted that this provision was inapplicable, as it applies to Title I of the ADA covering requirements for employers. Prior to the filing of the DOJ brief, however, the City had already shifted the focus of its argument in the ADA briefing to 42 U.S.C. § 12210, which applies to Title II, covering requirements for state and local government. The application of § 12114 likely originates from the Northern District of Texas' similar application of § 12114 rather than § 12210 in one of the very few decisions touching on these issues. *See Ross v. City of Dallas*, 2023 WL 8436060 at *1 (N.D. Tex., Dec. 4, 2023). Regardless, the language of subsection (a) of each statute is virtually identical in relevant part. Moreover, although § 12114 does not contain the health services exception that is in § 12110(c), the City has always properly considered the applicability of that exception in analyzing the appropriate Title II regulation, 28 C.F.R. § 35.131, and in subsequent briefing analyzing the issue under § 12210. The outcome remains the same.

provided in connection with drug rehabilitation." There is substantial ground for difference of opinion on whether the subregulation applies and whether "health services" were implicated at a police station on the morning of July 14, 2019 when Stilphen was arrested and booked, and took fentanyl and overdosed in custody.

14. One substantial source of the difference of opinion on the ADA issue is the actual language of the relevant statutes and regulatory provisions and guidance. For example, the DOJ at the time of the drafting of guidance on this regulation in Appendix B to Part 35 appears to support the City's interpretation of the subregulation. The guidance in Appendix B discusses paragraph (b)'s "*limited* exception to the exclusion of current illegal users of drugs from the protections of the Act." 28 C.F.R. § 35 app. B (2010) (emphasis added). Elaborating on the meaning of the provision, the DOJ focused on "a health care facility, such as a hospital or clinic," "drug rehabilitation programs," and "inpatient or residential settings," and used the specific example of a specialized "health care facility" such as one for burn victims that may not refuse to treat a victim's burns on the grounds that he is illegally using drugs. The DOJ guidance on the provision offers no example of where it might be applicable outside of a traditional healthcare setting. The present DOJ, however, took the position in its amicus brief that it is the services and not the setting that controls, and focused on cases involving the denial of medication for incarcerated individuals with OUD – something more akin to regular health services than an emergency response. ECF Doc. No. 207, pp. 4-6 (citing *Taylor v. Wexford Health Sources, Inc.*, 2024 WL 2978782 (S.D.W.V. June 13, 2024). The same is true of Plaintiff's and the DOJ's reliance on *Rokita v. Pa. Dep't of Corrs.*, 273 A.3d 1260 (Pa. Commw. Ct. 2022).

15. What caselaw exists on this issue also reflects substantial ground for difference of opinion on the issue. At the outset, the issue is a relative blank slate, with a dearth of case law,

even at the district court level, elaborating on whether the health services exception applies to police officers rendering emergency services to an individual suffering from OUD that takes fentanyl and overdoses while in their custody. Although the Court was persuaded by the DOJ's position that they were distinguishable, reasonable individuals could be of the opinion that *Salcido ex. rel K.L. v. Harris County*, 2018 WL 4690276, at *51 (S.D. Tex. Sept. 28, 2018) (health services exception inapplicable where ADA claim based on "failure to accommodate Lucas's disabilities during his cell extraction, not for denying him health services or services provided in connection with drug rehabilitation"); *Ross v. City of Dallas*, 2023 WL 8436060, at *4-5 (N.D. Tex. Dec. 4, 2023) (ADA did not apply to individual with substance use disorder that was arrested while using illegal drugs and died of an overdose in custody)[2] and *Baustian v. Louisiana*, 929 F. Supp. 980 (E.D. La. 1996) ("The clear purpose of this provision [§ 12210(c)] is to prevent covered entities from discriminating in their providing drug rehabilitation services to current drug users") support the City's position and that cases cited by Plaintiff and the DOJ involving in-custody denial of medication for OUD are inapposite.

16. Finally, the procedural history of this issue reveals that there is substantial ground for difference of opinion on the applicability of the ADA here. Although the Court did deny the

---

[2] As discussed in footnote 1, the DOJ distinguished the *Ross* decision by noting that the Northern District of Texas misapplied § 12114, which does not contain the health services exception, rather than § 12210, which contains the exception, and thus did not consider the issue of the applicability of the exception to a case where a known drug user ingested illegal drugs prior to his arrest and then died of a subsequent overdose while in custody. There is no indication one way or the other whether the *Ross* Court would have applied the exception had it considered it, but it did in fact dismiss a Title II ADA claim in circumstances very similar to those here. In *Salcido*, the Southern District of Texas did properly apply § 12210 and rejected an argument that the health services exception applied to support an ADA claim where a decedent had illegally obtained and ingested Xanax while incarcerated and then died during a cell extraction while corrections officers ignored the decedent's complaints that he could not breathe. 2018 WL 4690276, at *51. The *Salcido* Court properly determined that those facts supported a § 1983 claim for failure to provide medical care, but not an ADA claim. *Id*. The same is true here.

9

summary judgment motion, at a subsequent hearing the Court expressed skepticism that Plaintiff could prove an ADA claim in the absence of liability on the part of the officers and stated that "it's not an open and shut case as to whether the regulation covers episodic failure to provide medical treatment as opposed to failure to provide healthcare, which is and lies in many courts, directed to medical institutions, not police forces in terms of their duty." And although the Court ultimately decided the issue in Plaintiff's favor in refusing to dismiss the ADA claim, it did so only after a series of additional briefs from the parties and the intervention of the DOJ. This case is directly contrasted by the finding in *Caraballo-Seda* that the second requirement of § 1292(b) was not met where two other district court judges in the same district had previously arrived at the same holding. *Caraballo-Seda*, 395 F.3d at 9.

### *Immediate Appeal from the Order may Materially Advance the Ultimate Termination of the Litigation*

17. Due to this case's unique procedural posture, an immediate appeal from the order may materially advance the ultimate termination of the litigation. Without intermediate review, the ADA claim will be tried and subject to a subsequent appeal once the appeal of the judgments in favor of the officers has been resolved and the stay lifted. If the Court and First Circuit were to allow an immediate appeal of the ADA issue, however, there is a distinct possibility that the result of the two appeals would be an advanced termination of the case. Should the judgments against the individual officers be affirmed and the ADA ruling overturned, the case would be over. If the ADA ruling is not overturned (regardless of the outcome of the appeal of the judgments against the individual officers), the parties and the Court are in no different position that they are at present with the case stayed until the outcome of the appeal. Immediate appeal can do nothing but advance the ultimate termination of the litigation or maintain the status quo. This is not a case like *Caraballo-Seda*, 395 F.3d at 9, or *McGillicuddy*, 746 F.2d at 77, where parties failed to meet the

third § 1292 requirement because they sought immediate appeal of a partial dismissal while the case continued with other claims and/or parties.  Here, the City seeks immediate appeal of the last remaining claim in conjunction with the appeal of the rest of the case.  Judicial efficiency weighs strongly in favor of interlocutory appeal in these circumstances.

**WHEREFORE**, the City respectfully requests that this Honorable Court: (1) grant this motion; (2) grant permission for the City to file a permissive appeal of the denial of dismissal of the ADA claim; (3) amend the Order to certify the ADA issue to the First Circuit and find that the three criteria for immediate appeal under § 1292 have been met; and (4) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**CITY OF BOSTON,**
By its attorneys:

ADAM CEDERBAUM
Corporation Counsel

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Randall Maas (BBO# 684832)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4045 (Whitesell)
(617) 635-4042 (Maas)
edward.whitesell@boston.gov
randall.maas@boston.gov

Dated:  January 17, 2025

**Certificate of Compliance with Local Rule 7.1(a)(2)**

I, Edward F. Whitesell, Jr., hereby certify that, in accordance with Local Rule 7.1(a)(2), counsel for the parties conferred by telephone on January 14, 2025 and by electronic mail on January 17, 2025 and attempted in good faith to resolve or narrow the issues raised by this motion but were unable to do so.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.

**Certificate of Service**

I, Edward F. Whitesell, Jr., hereby certify that on January 17, 2025, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.